# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA – OAKLAND

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 288-5605

Email: atpg-tech@charter.net

**FILED**

**NOV 18 2022**

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE



---

LARRY GOLDEN,

        Plaintiff,

        V.

GOOGLE LLC

        Defendants.

---

CIVIL CASE NO: 4:22-cv-05246-HSG

**JURY TRIAL DEMANDED**

**(Direct Patent Infringement),
(Contributory Patent Infringement),
(Joint Patent Infringement)**

November 17, 2022

---

## PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGEMENT

Proving patent infringement in this District Court case requires Plaintiff to prove two broad elements: 1- ownership and validity of the patent(s), and 2- infringement of the patent(s) by the defendant.

Plaintiff's third mechanism for proving patent infringement in this case is the decision of a Three-Judge Panel, at the United States Court of Appeals for the Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267.

> Three-Judge Panel: "DISCUSSION. 'Under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a court must dismiss a complaint if it fails to allege "enough facts to state a claim

to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 ... [T]his standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). A plaintiff must allege facts that give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted) ... this court has explained that a plaintiff need not "plead facts establishing that each element of an asserted claim is met," ... but must plead "'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."

"[I]n the Google case, the district court again concluded that Mr. Golden's complaint was frivolous. Here, however, Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189. The district court discounted this claim chart because it "contains the exact same language as the claim charts previously rejected by the Federal Circuit [in the 2019 case], although Google Pixel 5 Smartphone appears in the far-left column instead of Apple." Dist. Ct. Op. at 4. But to the extent that the chart includes the "exact same language" as previously rejected charts, it is simply the language of the independent claims being mapped to. The key column describing the infringing nature of the accused products is not the same as the complaint held frivolous in the 2019 case. It attempts—whether successfully or not—to map claim limitations to infringing product features, and it does so in a relatively straightforward manner ...[W]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart. On remand, the district court should allow the complaint to be filed and request service of process. Our decision does not preclude subsequent motions to dismiss by the defendant for failure to state a claim or for summary judgment. We express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."

## No Genuine Dispute as to any Material Fact Regarding the Validity of Plaintiff's Patents

On June 9, 2011, the Supreme Court in *Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. ___ (2011), held that a party seeking to establish the invalidity of a patent must prove such invalidity by clear and convincing evidence. Slip op. 1. The Court emphasized, however, that the standard may be more easily met when the evidence of invalidity presented in court was not considered by the Patent and Trademark Office ("PTO") in issuing the patent. *Id.* at 17.

2

Section 282 provides that "[a] patent shall be presumed valid" and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." Acknowledging that § 282 "includes no express articulation of the standard of proof," slip op. 6, the Court focused its analysis on Congress's use of the term "presumed valid." According to the Court, that term had a "settled meaning at common law," id. at 7, under which it "encompassed not only an allocation of the burden of proof but also an imposition of a heightened standard of proof," id. at 8. On the assumption that Congress intended to codify the common-law presumption when it enacted § 282, the Court concluded that § 282 requires an invalidity defense to be proved by clear and convincing evidence. *Id.* at 9.

As it stands, Plaintiff's patents asserted in this case are presumed valid. The Defendant, who has had multiple opportunities to challenge the validity of Plaintiff's patents; and to put this Court on notice that the Defendant has a patent(s) that antedates Plaintiff's patents, has failed to present any invalidity defense; that, on the heightened standard of "clear and convincing evidence" will invalidate Plaintiff's patents.

Plaintiff has presented evidence [the presumed as valid patents asserted in this case], that the Defendant has "no genuine dispute as to any material fact" regarding the validity of Plaintiff's patents. Under Rule 56, Plaintiff is entitled to summary judgement as a matter of law.

## No Genuine Dispute as to any Material Fact Regarding the Infringement of Plaintiff's Patents

The final sub-element in establishing infringement requires a close examination of the patent claims. The language of a claim is important. Courts typically use the plain-language meanings of the terms used in a patent claim, unless the patent provides more specific definitions.

For each claim asserted in this case that has allegedly been infringed, Plaintiff has made known how the Defendant's invention or product infringes that claim. The comparable elements do not need to be identical. The "doctrine of

3

equivalents" states that infringement occurs when each element of a patented invention is equivalent to an element in the allegedly infringing invention. See *Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 30 (1997).*

Plaintiff, has satisfied his burden of proving by a "preponderance of the evidence" (that it is more likely than not) that the Defendant (Google) has either directly infringed at least one claim of each of the asserted patents; contributed to another's infringement; induced another to infringe; or jointly infringed [with Apple and Qualcomm] Plaintiff's patents.

Additional evidence presented in this case comes from a Three-Judge Panel, at the United States Court of Appeals for the Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267, who stated:

> "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … It attempts, [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner …[W]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart."

Plaintiff has presented evidence that the Defendant has "no genuine dispute as to any material fact" regarding the infringement of Plaintiff's patents. Under Rule 56, Plaintiff is entitled to summary judgement as a matter of law.

## No Genuine Dispute as to any Material Fact Regarding the Preponderance of the Evidence Presented in this Case

A party that alleges patent infringement bears the burden of establishing the infringement by a preponderance of the evidence. Under the preponderance of evidence standard of proof, the party must show that it is more likely than not that there is an infringement. *Microsoft v. i4i,* --- S. Ct. ----, 2011 WL 2224428 (June 9, 2011). Plaintiff bears the burden of proof to show that the defendant infringed the

patent. The plaintiff must prove infringement by a preponderance of the evidence. This standard means that the greater weight of the evidence must show that the patent is infringed.

The Google Pixel 5 smartphones are equipped with a Qualcomm's SM7250 Snapdragon 765G CPU-Chipset: Snapdragon is a suite of system on a chip (SoC) semiconductor product for mobile devices designed and marketed by Qualcomm Technologies Inc. Qualcomm announced it was developing the Scorpion central processing unit (CPU) in November 2007. The Snapdragon system on chip (SoC) was announced in November 2006 and included the Scorpion processor. The Snapdragon's central processing unit (CPU) uses the ARM architecture.

A single SoC may include multiple CPU cores; a Snapdragon wireless modem; and, other software and hardware to support a smartphone's global positioning system (GPS), camera, video, and audio. As such, Qualcomm often refers to the Snapdragon as a "mobile platform" (e.g., Snapdragon 765 5G Mobile Platform). Snapdragon semiconductors are embedded in devices of various systems, including Android devices (i.e., Google Pixel 5, 6, 7, & 8 smartphones).

Plaintiff has alleged "joint infringement between Google and Qualcomm: "[A]ccording to a Qualcomm press release (2020), "Qualcomm Technologies, Inc. and Google announced their collaboration to enhance and extend Project Treble with the goal of enabling more devices with Qualcomm® Snapdragon™ mobile platforms CPUs to run the latest Android OS."

The CPU, which controls all Programmable Logic Controllers (PLCs) consists of two basic sections: the central processing unit (CPU) and the input/output interface system. The input/output system is physically connected to field devices (e.g., sensors, etc.) and provides the interface between the CPU and the information providers (inputs) and controllable devices (outputs). To operate, the CPU "reads" input data from connected field devices through the use of its

input interfaces, and then "executes", or performs the control program that has been stored in its memory system. The CPU processes instructions in order to carry out certain functions that make the device operate properly. The CPUs are often described as the brain of computers, smartphones and tablets because of the central role they play in the functioning of your devices.

All of the different components that make up a computer's processor have to be condensed to fit in the smartphone, where they exist as a mobile application processor, or a System-on-a-Chip (SoC). Mobile application processors are found in many different mobile devices, such as smartphones, and tablets.

Claim 5 of the '287 patent asserted in this case, has been review by the Three-Judge Panel, at the United States Court of Appeals for the Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267.

> "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart."

Claim 5 of the '287 patent illustrates how each element that is comprised by the monitoring device (i.e., smartphone), is interconnected or integrated with the devices' CPU. Claim 5 of the '287 patent is below:

> 5.   A monitoring device, comprising:
>       at least one central processing unit (*CPU*);
>       at least one temperature sensor in communication with the at least one *CPU* for monitoring temperature;
>       at least one motion sensor in communication with the at least one *CPU*;
>       at least one viewing screen for monitoring in communication with the at least one *CPU*;
>       at least one global positioning system (GPS) connection in communication with the at least one *CPU*;
>       at least one of an internet connection or a Wi-Fi connection in communication with the at least one *CPU*;
>       at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one *CPU*;
>       at least one locking mechanism in communication with the at least one *CPU* for locking the communication device, the at least one locking mechanism configured to at

least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device;

at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device;

at least one biometric sensor in communication with the at least once *CPU* for providing biometric authentication to access the communication device;

at least one sensor for chemical, biological, or human detection in communication with the at least one *CPU*;

one or more detectors in communication with the at least one *CPU* for detecting at least one of chemical, biological, radiological, or explosive agents;

at least one radio-frequency near-field communication (NFC) connection in communication with the at least one *CPU*; and,

at least one of a transmitter or a transceiver in communication with the at least one *CPU* configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or send signals to detect at least one of a chemical biological, radiological, or explosive agent such that the communication device is capable of communicating, monitoring, detecting, and controlling.

The following outline and charts that aligns with claim 5 of the '287 patent, further describes how smartphones are assembled; and, how the CPU is considered the "brains" of the smartphone. They also provide the Court with enough evidence to support Plaintiff's alleged induced and contributory infringement claims.

I. Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., smartphone) – Claim 23 of the '439 Patent
II. Central Processing Units for CMDC Device – Claim 5 of the '287 Patent
III. Camera CBR Sensor(s) for CMDC Device – Claim 4 of the '189 Patent
IV. Smartwatch CBR Detector for CMDC Device – Claim 19 of the '439 Patent
V. Embedded CBRN Sensors for CMDC Device – Claim 16 of the '439 Patent
VI. Interchangeable Sensors for CMDC Device – Claim 20 of the '439 Patent
VII. NFC CBR Tag for CMDC Device – Claim 21 of the '439 Patent
VIII. Remote/Electrical Lock for CMDC Device – Claim 125 of the '990 Patent
IX. Pre-Programmed Lock for CMDC Device – Claim 1 of the '287 Patent
X. Fingerprint / Face Recognition for CMDC Device – Claim 1 of the '619 Patent
XI. Stall, Stop, Slowdown for CMDC Device – Claim 11 of the '891 Patent
XII. Vehicle Monitoring with CMDC Device – Claim 44 of the '891 Patent
XIII. Connect Vehicle with CMDC Device – Claim 4 of the '287 Patent
XIV. Internet-of-Things (IoTs) with CMDC Device – Claim 11 of the '619 Patent

## I. Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., smartphone) – Claim 23 of the '439 Patent



**Claim 14 of the '439 Patent** "Monitoring equipment of at least one of the products grouped together by common features in the product groupings category of design similarity (i.e., computer terminal, personal computer (PC), laptop, desktop, notebook, handheld, cell phone, PDA or smart phone) interconnected to a product for communication therebetween …

**Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., smartphone)**

**Claim 23 of the '439 Patent**: "A cell phone comprising: a central processing unit (CPU) for executing and carrying out the instructions; … whereupon the cell phone is interconnected to the cell phone detection device to receive signals or send signals to lock or unlock doors, to activate or deactivate security systems … multi-sensor detection systems, or to activate or deactivate the cell phone detection device;

"In addition, the basic monitoring terminal or PC 114, as shown in FIGS. 5 and 15, can be adapted and incorporated to include desktop PCs, notebook PCs, laptops, cell phones, LCD monitors, and satellite monitoring… computers, laptops, notebooks, PC's, and cell phones for the receipt and transmission of signals

Product grouping 4 (monitoring & communication devices) include, but are not limited to, mobile communication devices, …, wireless communication devices, monitoring sites, monitoring terminals, web servers, desktop personal computers (PCs), notebook personal computers (PCs), laptops, satellite phones, cell phones, … handhelds;

## II. Central Processing Units (CPUs) for CMDC Device – Claim 5 of the '287 Patent



Example: The Google Pixel 5 System-on-a-chip (CPU) is Qualcomm's SM7250 Snapdragon 765G CPU: Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver)

**Central Processing Units (CPUs) for Smartphone**

**Claim 5 of the '287 Patent**: A monitoring device, comprising: at least one central processing unit (CPU) … at least one of a transmitter or a transceiver in communication with the at least one CPU configured to … send signals to control components of a vehicle, … or send signals to detect … chemical, biological, radiological, or explosive agent such that the communication device is capable of communicating, monitoring, detecting, and controlling. [**See also claims 4 & 6 of the '287 patent; and, claims 1 & 11 of the '619 patent**].

The "smartphone processor (CPU), also known as chipset, is a component that controls everything going on in your smart-phone and ensures it functions correctly. You can compare it to the brain of the human body. Every action you perform on your smartphone goes straight to the processor." https://www. coolblue.nl/en/advice/smartphone-processors. html. "[T]oday's smartphones all have processors or CPUs. A smartphone CPU (central processing unit) is the brains of the entire device. Without one, no smartphone would be able to function" (smartphonedomain.com., 2021).

## III. Camera CBR Sensor(s) for CMDC Device – Claim 4 of the '189 Patent







**Camera CBR Sensor(s) for Smartphone**

Camera Sensor for Radiological Detection: How can a cell phone detect radioactivity? Cell phones have cameras and camera sensors react to radioactivity. High energy particles strike a sensor array and register as small bright pinpoints or thin streaks of light. An app … works well enough to alert users to dangerous levels of radiation.

Camera Sensor for Biological Detection: "In the diagnostic test, a patient sample is mixed with CRISPR Cas13 proteins (purple) and molecular probes (green) which fluoresce, or light up, when cut. Coronavirus RNA present, CRISPR proteins snip the molecular probes, whole sample to emit light. Fluorescence detected with a cell phone camera." (Image: Science at Cal).

Camera Sensor for Chemical Detection: The sensor *Rhevision* and UC San Diego responds to different chemicals by changing color; a single chip with many tiny pores, each respond to a different chemical; a standard cell-phone camera can detect them; the phone's camera watches the chip for color changes.

**Claim 4 of the '189 Patent**: A built-in, embedded multi sensor detection system … sensor array or fixed detection device into the product that detects agents …

## IV. Smartwatch CBR Detector for CMDC Device – Claim 19 of the '439 Patent



Homeland Security's Smartwatch Will Detect Nuclear Bombs https://www.popular-mechanics.com/military/research/a18161/homeland-security -smartwatch-detect-nuclear-bombs/

**Smartwatch CBR Detector for Smartphone**

**Claim 19 of the '439 Patent**: A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, radiological agent, or compound, comprising: a plurality of sensors … capable of being disposed within, on, upon or adjacent a multi-sensor detection device.

The US Military's Latest Wearables [Smart Watch] Can Detect Illness Two Days Before You Get Sick https://www.defenseone.com/technology/2020/09/militarys-latest-wearables-can-detect-illness-two-days-you-get-sick/168664/

Studies reveal smartwatch biometrics can detect COVID-19: "smartwatches and other wearables measuring biometrics like heart-rate variability have the ability to detect if a person is COVID-19 positive" https://www.biometricupdate.com/202101/studies-reveal-smartwatch-biometrics-can-detect-covid-19-before-symptoms-surface

9

## V. Embedded CBRN Nanosensors for CMDC Device – Claim 16 of the '439 Patent



**Embedded CBRN Sensors for Smartphone (NASA)**

**Claim 16 of the '439 Patent**: A built-in, embedded multi sensor detection system … a cell phone, a smart phone

A silicon-based sensing chip, which consists of 64 nanosensors can turn a cell phone into a *portable poison detector*. (NASA). "can turn your cellphone into a *portable "silent killer" detector* https://www. foxnews.com/tech/smartphones-take-on-silent-killers-as-portable-danger-detectors & Nuclear Radiation Nanosensors and Nanosensory Systems https://link.springer. com/book/10.1007/978-94-017-7468-0

## VI. Interchangeable Sensor Device for CMDC Device – Claim 20 of the '439 Patent



**Plurality of Interchangeable Sensor Device for Smartphone: (NASA & Subtractor George Yu)**

**Claim 20 of the '439 Patent**: A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, radiological agents…

The system he developed with NASA for the DHS Cell-All project, George Yu of Genel Systems Inc., created his NODE+ platform. A cylinder that transmits data from sensors to smart-phone. The NODE+ is compatible with Android and Apple smart devices.

## VII. NFC CBR Tag for CMDC Device – Claim 21 of the '439 Patent



MIT-- wirelessly detect hazardous gases by using a simple sensor made from near-field communication (NFC) tags that can be read by a smartphone… detect gaseous ammonia, hydrogen peroxide, and cyclohexanone, and other gases… Sensors. Retrieved from: https://phys.org/news/ 2014-12-cheap-sensor-transmit-hazardous-chemicals.html

**Near-Field Communication (NFC) CBR Tag for Smartphone (Safer than RFID tag)**

**Claim 21 of the '439 Patent**: A multi-sensor detection system … at least one tag that is read by the monitoring equipment that is capable of wireless near-field communication

In November 2007, two Defense Department contractors, and a U.S. city's bomb squad demonstrated how an RFID tag could send a signal to … detonated a small amount of explosives in a container a simple emission of a radio signal traveling on the approved RFID 433 MHz frequency. Officials from the Defense Department and DHS observed the demonstration. https://www.nationaldefense-magazine.org/articles/2011 /2/1/2011february-military-supply-chain-tracking-system-both-inefficient-and-dangerous

10

## VIII. Remote/Electrical Lock Disabler for CMDC Device – Claim 125 of the '990 Patent



**Remote/Electrical Lock Disabler for Smartphone (Gov. Contractor iControl's MATTs & mLOCK)**

**Claim 125 of the '990 Patent**: A multi-sensor detection system … whereupon detection causes a signal to be sent to the at least one communication device followed by communicating with the internal or external remote/electrical lock disabler.

Marine Asset Tag Tracking System (MATTS) is a DHS initiative for "Smart Container". MATTS "gateway": a wireless electronic device that communicates with a sensor array; the communication device; and locking mechanism for locking status and GPS location. Internal /external sensors are interconnected to operate with the MATTS device and can detect gas concentrations, radiation, humidity and moisture, atmospheric pressure, etc. The mLOCK communicates bi-directionally using encrypted messages between the lock and the MATTs readers or mobile devices (i.e., smartphone)

## IX. Pre-Programmed Lock Disabler for CMDC Device – Claim 1 of the '287 Patent





"Monitoring equipment being capable of sending signals to engage (lock), disengage (unlock), or disable (make unavailable) at least one of a remote lock, an electrical lock, a mechanical lock, or automatic lock…"

**Pre-Programmed Lock Disabler for Smartphone**

Security feature: After several unsuccessful log-in attempts using a passcode or fingerprint, an Android or iOS device automatically locks itself up. If unable to log in after the security layers, the only option is to have the device unlocked. The wrong pin will launch to Account Login. On an Android or Apple Phone, multiple attempts (usually five attempts or more) with an unknown or a wrong pin will go either into a delay before further attempts are allowed …

FBI Failed Attempts to Unlock Phone: The FBI recovered an Apple iPhone 5C—owned by the San Bernardino County, California government—that had been issued to its employee Syed Rizwan Farook, one of the shooters involved in the December 2015 San Bernardino attack. The attack killed 14 people and seriously injured 22. The two attackers died four hours after the attack in a shootout with police ... Authorities were able to recover Farook's work phone, but could not unlock its four-digit passcode, and the phone was programmed to automatically delete all its data after ten failed password attempts (an anti-theft measure on smartphones).

**Claim 1 of the '287 Patent**: Monitoring equipment that is at least one … a lock disabling mechanism that is able to engage (lock), or disengage (unlock), or disable (make unavailable) the monitoring equipment after a specific number of tries;

11

## X. Fingerprint and Face Recognition for CMDC Device – Claim 1 of the '619 Patent



**Fingerprint and Face Recognition for Smartphone**

**Claim 1 of the '619 Patent**: A communication device that is at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, comprising at least a central processing unit (CPU), capable of: processing instructions to authenticate or identify a user by at least one of biometric fingerprint recognition, biometric facial recognition, biometric iris recognition, or biometric retina recognition

## XI. Stall, Stop, or Vehicle Slowdown for CMDC Device – Claim 11 of the '891 Patent



Driverless car smartphones, authorizes the phone to control functions. Smartphones and driverless technology: instant braking for autonomous cars; sensors detect interference, obstacles and oncoming cars; instant braking to avoid collisions.

**Stall, Stop, or Vehicle Slowdown for Smartphone**

**Claim 11 of the '891 Patent**: A vehicle adapted for receipt of a signal from a remote location to control the vehicle's stall-to-stop means or vehicle slowdown means, comprising: at least one of a brake, a foot peddle, a radar, a camera, a navigational system, a light, a speed control, an ignition system, a steering wheel, a transmission, a fuel system, and a motor;

Remote Vehicle Shutdown is a system of remotely shutting down the connected vehicle, using radio pulses; intended for police, military and security use. Remotely find and disable stolen vehicles; ability to prevent engine start; prevent movement of a vehicle; stop or slow an operating vehicle; gradually decelerate a vehicle by downshifting, limiting the throttle capability; and, improve security of carriers of high-risk cargo, like hazardous materials. Security features that Remote Vehicle Shutdown provides. https://www.globenewswire.com/en/news-release/2019/12/17/1961557/0/en/Remote-Vehicle-Shutdown

## XII. Vehicle Monitoring with CMDC Device – Claim 44 of the '891 Patent



**Autonomous and Driverless Vehicle Monitoring with Smartphone**

**Claim 44 of the '891 Patent**: A vehicles' stall-to-stop system or vehicle slowdown system in signal communication with a pre-programmed automated system is adapted, modified, or designed to control the vehicles' stall-to-stop means or vehicle slowdown means … (Dep. 55) … 44, further can be adapted, modified or designed to include a vehicle designed to perform as a driverless or autonomous vehicle … in operation with or without a user, driver or operator inside the vehicle.

12

## XIII. Connect Vehicle with CMDC Device – Claim 4 of the '287 Patent



**Connect Vehicle with Smartphone**

**Claim 4 of the '287 Patent**: A monitoring device, comprising: at least one central processing unit (CPU) … at least one of a transmitter or a transceiver in communication with the at least one CPU configured to … send signals to lock or unlock doors, send signals to control components of a vehicle, … or send signals to detect … chemical biological, radiological, or explosive agent such that the communication device is capable of communicating, monitoring, detecting, and controlling.

**CarLink™** is a Smartphone interface that allows you to start your vehicle, unlock your doors or pop the trunk from virtually any distance, or help you find your car in a large garage after a sporting event or a trip to the mall. *Compatible with iPhone, BlackBerry and Android *Remote Start Compatible *Door lock and unlock *Car find feature (horn honk and/or flashing lights) *Control trunk release or sliding door open)

## XIV. Internet-of-Things (IoTs) with CMDC Device – Claim 11 of the '619 Patent



The smartphone can be used as an IoT device for Personal emergency response, fitness tracking, location-based asset tracking, natural vision processing, and a Bluetooth gateway for wearable Bluetooth devices that enable many IoT monitoring apps. Also, identity verification, GPS based guidance, position/orientation awareness apps for smartphone-based implementation.

**Internet-of-Things (IoTs) with Smartphone**

**Claim 11 of the '619 Patent**: A central processing unit (CPU) of at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, capable of: processing instructions to connect the communication device to the internet or internet-of-things (IoTs) platform to sync, to at least one of a building's computer or security system, a vehicle's computer or security system, a lock, a detection device, or another communication device

The Internet-connected smartphones, can directly capture and compile data from as many as 14 different sensors:
    Accelerometer, GPS, Gyroscope, Magnetometer, Biometrics, Camera, Barometer, Proximity Sensors, Bluetooth connectivity, Barcode readers, Touchscreen sensors, Heart rate monitor, ECG, Haptic feedback sensors

The IoTs contain computing hardware, including processors with embedded programming telling them what to do, sensors that gather various sorts of readings (such as temperature, motion, chemical levels, heart rate and body movement) and communication hardware that can send and receive signals.

Plaintiff has alleged enough facts [preponderance of the evidence], to rightfully say: Plaintiff's patents are valid, and that the likelihood of Google having infringed Plaintiff's patents is greater than the likelihood they did not.

## SUMMARY JUDGEMENT: PURSUANT TO FRCP RULE 56

Plaintiff has shown that there is no genuine dispute as to any material fact; no reason to challenge Plaintiff's direct, joint, or contributory infringement claims; no genuine dispute that Plaintiff owns the patent rights for the smartphone; no genuine dispute to the validity of Plaintiff's patents; and, no genuine dispute to the Federal Circuit's decisions made in this case. This case is ripe for summary judgement, and Plaintiff is entitled to judgment as a matter of law.

Sincerely,

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 17th day of November, 2022, a true and correct copy of the foregoing "Plaintiff's Reply in Support of Plaintiff's Cross-Motion for Summary Judgement", was served upon the following Defendant by priority "express" mail:

Matthew S. Warren

WARREN LEX LLP

2261 Market Street, No. 606

San Francisco, California, 94114

Phone: (415) 895-2940

Fax: (415) 895-2964

Email: 22-5246@cases.warrenlex.com

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605