UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA – OAKLAND

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 288-5605

Email: atpg-tech@charter.net

**FILED**

DEC 09 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE



| | |
|---|---|
| LARRY GOLDEN,<br><br>              Plaintiff,<br><br>       V.<br><br>GOOGLE LLC<br><br>              Defendants. | CIVIL CASE NO: 4:22-cv-05246-HSG<br><br>**JURY TRIAL DEMANDED**<br><br>**(Direct Patent Infringement),**<br>**(Contributory Patent Infringement),**<br>**(Joint Patent Infringement)**<br><br>December 8, 2022 |

## PLAINTIFF OBJECTS TO DEFENDANT'S MOTION (NON-MOTION) TO CHANGE THE DATES FOR PROCEEDINGS: REQUEST MADE IN ITS CASE MANAGEMENT STATEMENT

Google's attempt to push the Court's proceedings for the Initial Case Management Conference to a date beyond March 19, 2023 is totally unacceptable. "Google respectfully request that the Court reschedule the Initial Case Management Conference from Tuesday, December 13, 2022, to a date convenient for the Court on or after Tuesday, March 20, 2023".

After vacating the South Carolina District Court's decision, the Federal Circuit remanded the District Court in *Larry Golden v. Google LLC*; CAFC Case No. 22-1267 to allow Plaintiff's complaint to be filed.

Google need only to address the "adequacy" i.e., the quality or state of being adequate, of Plaintiff's complaint or claim chart, "[w]e express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."

Instead of addressing the *adequacy* of Plaintiff's complaint or claim chart, Google has engaged Plaintiff to defend against, and this Court to participate in an all-out campaign to reverse the Federal Circuit's decision on frivolousness:

> "Google seeks an Order dismissing the complaint without leave to amend under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which this Court may grant relief … His infringement claims echo his South Carolina complaint, alleging that Google infringes U.S. Patent Nos. 9,096,189, 9,589,439, and 10,163,287 because it "makes, uses, offer [sic] to sell, or sells Google Pixel smartphones 3, 3XL, 3aXL, 4a, 4a(5G), and 5." Compl. at 2 … Mr. Golden's allegations fail to clear the Twombly/Iqbal bar; instead, they confirm that Google's products do not infringe any asserted claim.

The Three-Judge Panel at the United States Court of Appeals for the Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267 has already considered the *Twombly/Iqbal* bar before "conclude[ing] that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart", and "the complaint [and] claim chart [] is not facially frivolous." The panel's "DISCUSSION in *Golden v. Google LLC*; CAFC Case No. 22-1267 states:

"Under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 … [T]his standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted). A plaintiff must allege facts that give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted) … this court has explained that a plaintiff … must plead 'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."

After the Federal Circuit's Three-Judge Panel reviewed Plaintiff's complaint and claim charts in view of the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); and, *In re Bill of Lading Transmission and Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007), the Panel decided Plaintiff's claim charts "map claim limitations to infringing product features, and it does so in a relatively straightforward manner".

The Federal Circuit's Three-Judge Panel does not identify any portion of Plaintiff's complaint or claim charts "as irrelevant, immaterial, or scandalous under Fed. R. of Civ. P. 12(f)". Nor does the Three-Judge Panel identify any portion of Plaintiff's complaint or claim charts as being "frivolous".

Defendant's lack of response to its only possible defense—to show Plaintiff's complaint and claim chart as inadequate/inaccurate—Plaintiff is entitled to summary judgement as a matter of law.

3

**Google Waived Its Right to Challenge the Decisions of the Federal Circuit**

Google waived its right to challenge the decisions of the Three-Judge Panel at the United States Court of Appeals for the Federal Circuit in *Larry Golden v. Google LLC;* Case No. 22-1267 when Google failed to petition the Supreme Court to grant a writ of certiorari. Google waived its right to asking the Supreme Court to review the following:

> "[I]n the Google case, the district court again concluded that Mr. Golden's complaint was frivolous. Here, however, Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,096,189. The district court discounted this claim chart because it 'contains the exact same language as the claim charts previously rejected by the Federal Circuit [in the 2019 case], although Google Pixel 5 Smartphone appears in the far-left column instead of Apple.' But to the extent that the chart includes the 'exact same language' as previously rejected charts, it is simply the language of the independent claims being mapped to. The key column describing the infringing nature of the accused products is not the same as the complaint held frivolous in the 2019 case. It attempts—whether successfully or not—to map claim limitations to infringing product features, and it does so in a relatively straightforward manner …
>
> We conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart. On remand, the district court should allow the complaint to be filed and request service of process. Our decision does not preclude subsequent motions to dismiss by the defendant for failure to state a claim or for summary judgment. We express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous.

The burden of proof would have been on Google to demonstrate that the Federal Circuit has committed a "clear error in judgement" of at least one of the following provisions of the U.S. Supreme Court:

(a) a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter; has decided an important federal question in a way that conflicts with a decision by a state court of last resort; or has so far departed from the accepted and usual course of judicial proceedings, or sanctioned such a departure by a lower court, as to call for an exercise of this Court's supervisory power;

(b) a state court of last resort has decided an important federal question in a way that conflicts with the decision of another state court of last resort or of a United States court of appeals;

(c) a state court or a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by this Court, or has decided an important federal question in a way that conflicts with relevant decisions of this Court.

The Federal Circuit did however leave the door open for the Defense to file "subsequent motions to dismiss by the defendant for failure to state a claim or for summary judgment."

But that door opening was limited to determining the adequacy/accuracy of Plaintiff's complaint or claim charts. If Google's desire is to challenge the Federal Circuit's decision on, for instance, "[w]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart", Federal Circuit in *Larry Golden v. Google LLC;* Case No. 22-1267, it must have been done at the Supreme Court.

The Defense is asking this Court to continue prolonging the case so that the Defense can prepare a defense on matters that has already been decided at the Federal Circuit.

If the Defense continue prolonging the case at the Plaintiff and Court's expense, Plaintiff's believes it is only fair, the Court immediately grant Plaintiff's Motion for Permanent Injunctive Relief.

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment for federal courts. Under Rule 56, in order for Plaintiff to succeed in his motion for summary judgment, Plaintiff must show 1) that there is no genuine dispute as to any material fact. Google has not raised any genuine dispute as to material fact. Google has only raised material that has already been decide, and/or material of dispute that should have been raised at the Supreme Court; and 2) Plaintiff is entitled to summary judgment as a matter of law.

A grant of summary judgement for Plaintiff will stop the prolonging.

**Google's Motion to Dismiss (Dkt. 11) is Google's First Drastic Attempt at Overturning the Federal Circuit's Decision in *Larry Golden v. Google LLC;* Case No. 22-1267**

Plaintiff has provided this Court and Google with a copy of the Federal Circuit's Decision in *Larry Golden v. Google LLC;* Case No. 22-1267, Filed 09/08/2022. In the *OPINION*, the three-judge panel expressed clearly the standard the Federal Circuit used in deciding the Case. The panel's "DISCUSSION in *Golden v. Google LLC*; CAFC Case No. 22-1267 states:

> "Under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 … [T]his standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted). A plaintiff must allege facts that give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted) … this court has explained that a plaintiff … must plead 'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."

Google is quoted in this current case as saying in its Motion to Dismiss (Dkt. 11):

> Mr. Golden's allegations fail to clear the Twombly/Iqbal bar; instead, they confirm that Google's products do not infringe any asserted claim. Mr. Golden alleges that some Google Pixel devices could infringe his asserted patents if a user were to add an additional application, ATAK, which Mr. Golden admits that Google does not make or sell.

> Plaintiff's complaint accuses Google of patent infringement by making and selling Pixel devices, but admits on its face that the accused Pixel devices cannot infringe without adding an additional application, called Android Team Awareness Kit or "ATAK," that the plaintiff concedes Google does not make or sell …

7

But Mr. Golden does not allege that Google Pixel devices themselves infringe—instead he alleges that Google Pixel devices could infringe his patents if a user added another application, "ATAK," made not by Google, but by the U.S. military.

Each time the chart references ATAK, it states again that ATAK is "built on the Android Operating System," not shipped with any Google Pixel device. See id. The complaint thus repeatedly and consistently alleges that infringement cannot occur without ATAK, that ATAK does not come from Google, and that Google does not ship any devices (Pixel or otherwise) including ATAK.

The complaint alleges that Google's Pixel devices, when modified by installing ATAK, infringe the patents-in-suit—thus necessarily admitting that unmodified Pixel devices do not infringe those patents.

Plaintiff is especially taken in by the "lie" Google made about Plaintiff's complaint, "Plaintiff's … admits on its face that the accused Pixel devices cannot infringe without adding an additional application, called Android Team Awareness Kit or "ATAK" … [t]he complaint thus repeatedly and consistently alleges that infringement cannot occur without ATAK…" These statements are not true, and later in this document, Plaintiff will show how Google infringes Plaintiff's patent claims without the ATAK.

Google cause the alleged infringement of Plaintiff's patents and bears the responsibility for doing so. When Google published its Google Android Open-Source Architecture, Google open the flood gates for companies, developers, scientist, engineers, inventors, programmers, architects, etc. to integrate whatever

8

software or hardware they so desire with the mobile devices. A problem for Google exists when the innovations create an end device that infringes. When that happens, we need to determine to what degree Google contributed to infringing. It can be argued that Google induced the DoD to infringe Plaintiff's patent.

The Android operating system was developed by Google (GOOGL) for use in all of its touchscreen devices, tablets, and cell phones. This operating system was first developed by Android Inc., a software company located in Silicon Valley before it was acquired by Google in 2005.

Google announced the impending rollout of its first commercially available Android-powered device in 2007, although that product actually hit the marketplace in 2008. The Android source code is released in an open-source format to help advance open standards across mobile devices.

Through collaboration and innovation, the Defense Threat Reduction Agency has integrated its powerful, hazard-awareness-and-response tools into the Android Tactical Assault Kit (or the Android Team Awareness Kit, ATAK). ATAK is a digital application available to warfighters throughout the DoD. Built on the Android operating system, ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins.

*Figure 1* shows the integration requirement of the three patent claims [5, 23, & 1] of the three patents ['287, '439, & '189] asserted in this case.

| Claim 5 of the 10,163,287 Patent | Claim 23 of the 9,589,439 Patent | Claim 1 of the 9,096,189 Patent |
|---|---|---|
| A monitoring device, comprising: <br><br> at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; <br><br> one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents | A cell phone comprising: <br><br> at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; <br><br> … the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes [] location data [] sent to the cell phone. | A communication device of [] a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal [] comprising: <br><br> a transmitter for transmitting signals and messages to at least one of [] a multi-sensor detection device, [] a cell phone detection device…; <br><br> a receiver for receiving signals, data or messages from at least one of [] a multi-sensor detection device, [] a cell phone detection device…; |

*Figure 1*

The patents' written support can be found in Plaintiff's patent specifications. Detector case is considered the "genus" to a group of products that represent the "species". Included in the group are CBRNE-H sensors.

> … detector cases that is mounted to, detector cases that is affixed to, detector cases that is outside of, detector cases that is inside of, and detector cases that is adjacent to; the products grouped into what may be referred to as Product grouping 4 (monitoring & communication devices) include, but are not limited to, mobile communication devices, mobile communication units, portable communication devices, portable communication equipment, wired communication devices, wireless communication devices, monitoring sites, monitoring terminals, web servers, desktop personal computers (PCs), notebook personal computers (PCs), laptops, [] cell phones, [] personal digital assistants (PDAs), [], handhelds.

*Figure 2* shows how the smartphone cameras satisfies the requirements of the three patent claims [5, 23, & 1]. The camera is an addition or an alternative to the ATAK, Google claims infringement cannot occur without.

| Google Pixel 5 Smartphone | Apple iPhone 12 Smartphone | Patent #: 10,163,287; Independent Claim 5 | Patent #: 9,589,439; Independent Claim 23 | Patent #: 9,096,189; Independent Claim 1 |
|---|---|---|---|---|
| *Google Pixel 5: Dual - 12.2 MP (megapixel), OIS 16 MP (megapixel)* Camera lens in cell phone with microfluidic lens functions as camera; uses microscope to focus on a chemical sensor. A *megapixel* camera captures the image from the array of nanopores uses fluid rather than bulky moving parts. The sensors contained in one array is determined by the *pixel* resolution phone camera. *Megapixel* resolution in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time.* Source: https:// www.understandingnano.com/cell-phone-sensors-toxins.html | *Apple iPhone 12: Dual - 12 MP (megapixel), OIS 12 MP (megapixel)* Camera lens in cell phone with microfluidic lens functions as camera; uses microscope to focus on a chemical sensor. A *megapixel* camera captures the image from the array of nanopores uses fluid rather than bulky moving parts. The sensors contained in one array is determined by the *pixel* resolution phone camera. *Megapixel* resolution in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time.* Source: https:// www.understandingnano.com/cell-phone-sensors-toxins.html | *Claim 5 limitation of the '287 Patent*<br><br>one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | *Claim 23 limitation of the '439 Patent*<br><br>at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; | *Claim 1 limitation of the '189 Patent*<br><br>a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device … a cell phone detection device …<br><br>a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device … a cell phone detection device |

**Figure 2**

*Figure 3* outline different ways the smartphone camera can be used for detecting Chem/Bio agents. For each different way used it qualifies as an alternative to the ATAK, Google claims infringement cannot occur without.



*Figure 3*

The camera captures the image from the array of nanopores that uses fluid rather than bulky moving parts. The sensors contained in one array is determined by the resolution phone camera. The resolution in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time.* Source: https:// www.understanding nano.com/cell-phone-sensors-toxins.html

Hyperspectral imaging scans for light frequencies that humans can't see in order to identify the unique chemical signatures of different substances. They say their device, which can be mass produced, is compatible with all standard smartphone cameras. *These New Smartphone Cameras Could Tell You What an Object Is Made of* https://www.sciencealert.com/new-smartphone-cameras-could-tell-you-what-an-object-is-made-of

*Figure 4* describes how at least nine (9) standard sensors for the smartphone can be used as "biosensors". For each different way used it qualifies as an alternative to the ATAK, Google claims infringement cannot occur without.



*Figure 4*

The Smartphones Biosensors:
1. Ambient light sensor: Cancer biomarkers; Toxic metals; Pathogens
2. Capillary inlet: (Air analysis). Airborne Pathogens; Aerosols
3. Capillary inlet: (Fluid analysis). Blood analysis; Biomarkers
4. Microfluidic cassette: Interchangeable cassettes with varying assays
5. VIS-NIR spectrometer: Food freshness; Melanoma
6. NNAP Electrodes: Toxic metals and Organic pollutants in water
7. Optical Waveguide: Pathogens in water and food
8. Back and front camera: Colorimetric analysis; Image analysis
9. Microphone: Voice recording stress levels

13

*Figure 5* show some of the same standard sensors illustrated in Figure 4, but time we're only interested in the port on the smartphone that allow for *plug-ins*.



*Figure 5*

ATAK is a digital application available to warfighters throughout the DoD. Built on the Android operating system, ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) *plug-ins*.

Just having a plug-in is not all that's involved. There has to be an app specific software to sync the chemical, biological, radiological, and nuclear sensors to the smartphone plus the Google Android Operating System.

14

If Google truly wants to avoid infringing Plaintiff's patents, Google has the following options: 1) discontinue using the Google Android Open-Source Architecture with your mobile devices; 2) block all software applications that are specific to integrating CBRNE sensors with your mobile devices; 3) design your mobile devices to not include a port for CBRNE plug-ins; 4) design your mobile devices to not include cameras for CBRNE detecting; 5) design your mobile devices to not the at least nine standard sensors that can be used as biosensors; or 6) settle previous damages with Plaintiff and negotiate a licensing agreement.

All of the options between 1 and 5 must take place to avoid any infringement.

For the reasons stated throughout this document Plaintiff objects to extending proceedings.

Sincerely,

*Larry Golden*

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of December, 2022, a true and correct copy of the foregoing "Plaintiff Objects to Defendant's Motion (Non-Motion) to Change the Dates for Proceedings: Request Made in Its Case Management Statement", was served upon the following Defendant by priority "express" mail:

        Matthew S. Warren
        WARREN LEX LLP
        2261 Market Street, No. 606
        San Francisco, California, 94114
        Phone: (415) 895-2940
        Fax: (415) 895-2964
        Email: 22-5246@cases.warrenlex.com

        _/s/ Larry Golden_
        Larry Golden, Pro Se
        740 Woodruff Rd., #1102
        Greenville, South Carolina 29607
        atpg-tech@charter.net
        864-288-5605

PRESS FIRMLY TO SEAL




# PRIORITY MAIL EXPRESS

**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

FOR D(

PRIOR
M A
EXPR

**UNITED STATES POSTAL SERVICE**®

**CUSTOMER USE ONLY**
FROM: (PLEASE PRINT)   PHONE (864) 288-5(

LARRY GOLDEN
740 WOODRUFF RD.
#1102
GREENVILLE, SC 29607

**DELIVERY OPTIONS (Customer Use Only)**
☒ SIGNATURE REQUIRED *Note:* The mailer must check the "Signature Required" ...res the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the ite mail receptacle or other secure location without attempting to obtain the addressee's signature
**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE (510) 637-

U.S. DISTRICT COURT - NDC - OAKLAND
CASE No: 4:22-CV-05246-HS
1301 CLAY STREET, SUITE
OAKLAND, CA
ZIP + 4® (U.S. ADDRESSES ONLY)
9 4 6 1 2 - ___

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-18
■ $100.00 insurance included.

To schedule free Package Picku
scan the QR code.



USPS.COM/PICKUP




PEEL FROM THIS CORNER

PS10001000006

OD: 12 1/2 X 9 1/2







# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

# VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE



PS10001000006

EP13F May 2020
OD: 12 1/2 x 9 1/2

For Domestic shipments, the maximum weight is 70 lbs

PRIORITY MAIL EXPRESS®

GUARANTEED* ▪ TRACKED ▪ INSURED

For international shipments, the maximum weight is 20 lbs.