Matthew S. Warren (State Bar No. 230565)
Virginia G. Kain (State Bar No. 344545)
22-5246@cases.warrenlex.com
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LARRY GOLDEN,<br><br>    Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 4:22-cv-05246-HSG<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE AMENDED COMPLAINT BY DEFENDANT GOOGLE LLC**<br><br>Date:     December 7, 2023<br>Time:    2:00 p.m.<br>Place:    Courtroom 2<br>Judge:   Hon. Haywood S. Gilliam, Jr. |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on December 7, 2023, at 2:00 p.m. Pacific Standard Time or as soon thereafter as the matter may be heard, before Judge Haywood S. Gilliam, Jr. of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, 94612, defendant Google LLC will move and hereby does move for an order dismissing plaintiff Larry Golden's amended complaint without leave to amend for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). This motion is based on this Notice, the attached Memorandum of Points and Authorities, all matters of record filed with the Court in this case, any argument at hearing of this matter, and such other materials the Court may consider.

Google seeks an Order dismissing the amended complaint without leave to amend under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which this Court may grant relief.

Date:  September 7, 2023                                  Respectfully submitted,

_____
Matthew S. Warren (State Bar No. 230565)
Virginia G. Kain (State Bar No. 344545)
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
22-5246@cases.warrenlex.com

*Attorneys for Defendant Google LLC*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 1

    A.    The Asserted Patents ........................................................................................................ 1

    B.    The Original Complaint and Google's Motion to Dismiss ............................................. 1

    C.    The Amended Complaint ................................................................................................ 2

ARGUMENT .................................................................................................................................. 2

    I.    The Amended Complaint Fails to State Claims of Direct Infringement .......................... 2

        A.    ATAK-CIVILIAN is a Third-Party Application, Not a Google Product .............. 3

        B.    The Complaint Admits That Google Does Not Sell Converted NFC Tags ........... 3

        C.    The Complaint Admits That Google Does Not Sell Devices With a Microfluidic Lens .. 3

        D.    The Complaint Admits That Google Does Not Sell Devices Designed to Go to Mars ... 4

        E.    The Complaint Admits That Google Beacon is Separate From the Accused Devices .... 5

    II.    The Amended Complaint Fails to Allege Indirect Infringement ..................................... 6

        A.    Indirect Infringement Requires Direct Infringement .............................................. 6

        B.    Assuming Direct Infringement, the Complaint Fails to Allege Indirect Infringement ... 6

            1.    The Amended Complaint Fails to Allege Induced Infringement ................ 6

            2.    The Amended Complaint Fails to Allege Contributory Infringement ............ 9

    III.    The Amended Complaint Fails to Allege Joint Infringement ....................................... 11

    IV.    The Amended Complaint Fails to Allege Willful Infringement .................................... 12

    V.    The Court Should Deny Leave to Amend ...................................................................... 13

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

*Cases* **Pages**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) ............................................................. 11, 12

*Apple Inc. v. AliveCor, Inc.*,
    No. 22-7608, 2023 WL 4091287 (N.D. Cal. Jun. 20, 2023) .......................... 9, 10

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
    377 U.S. 476 (1964) ........................................................................... 9

*Artrip v. Ball Corp.*,
    735 F. App'x 708 (Fed. Cir. 2018), *aff'd,* 735 F. App'x 708 (Fed. Cir. 2018) ........... 2, 9, 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 9, 12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................... 9

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ................................................................. 2

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632 (2015) ........................................................................... 7, 9

*Cyph, Inc. v. Zoom Video Commc'ns., Inc.*,
    No. 22-561, 2022 WL 1556417 (N.D. Cal. May 17, 2022) ................................. 2

*DSU Med. Corp. v. JMS Co., Ltd.*,
    471 F.3d 1293 (Fed. Cir. 2006) ............................................................... 8

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ............................................................................ 6

*Ghazali v. Moran*,
    46 F.3d 52 (9th Cir. 1995) ..................................................................... 10

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ........................................................................... 8

*Golden v. Qualcomm*,
    No. 22-3283, 2023 WL 2530857 (N.D. Cal. Mar. 15, 2023) .............................. 7

*Hitachi Kokusai Elec. Inc. v. ASM Int'l, N.V.*,
    No. 17-6880, 2018 WL 3537166 (N.D. Cal. Jul. 23, 2018) ............................... 10

*Hypermedia Navigation LLC v. Google LLC*,
    No. 18-6137, 2019 WL 1455336 (N.D. Cal. Apr. 2, 2019) ................................ 6, 7, 12

## TABLE OF AUTHORITIES

*(continued)*

| Cases | Pages |
|---|---|

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012) .......................................................... 9, 10, 11

*Info-Hold, Inc. v. Muzak LLC*,
  783 F.3d 1365 (Fed. Cir. 2015) .......................................................... 8

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017) .......................................................... 2, 7

*Linear Tech. Corp. v. Impala Linear Corp.*,
  379 F.3d 1311 (Fed. Cir. 2004) .......................................................... 6

*Lyda v. CBS Corp.*,
  838 F.3d 1331 (Fed. Cir. 2016) .......................................................... 11, 12

*Manville Sales Corp. v. Paramount Sys., Inc.*,
  917 F.2d 544 (Fed. Cir. 1990) ............................................................ 8

*McRee v. Goldman*,
  No. 11-991, 2012 WL 929825 (N.D. Cal. Mar. 19, 2012) ......................... 8

*Mejia v. JPMorgan Chase Bank, N.A.*,
  No. 21-1351, 2021 WL 6498762 (N.D. Cal. Sept. 8, 2021), *aff'd*, No. 21-16550,
  2022 WL 1154762 (9th Cir. Apr. 19, 2022) .......................................... 13

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster*,
  545 U.S. 913 (2005) .......................................................................... 8

*OpenTV, Inc. v. Apple, Inc.*,
  No. 14-1622, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) ....................... 12

*Redd Grp., LLC v. Glass Guru Franchise Sys., Inc.*,
  No. 12-4070, 2013 WL 3462078 (N.D. Cal. Jul. 8, 2013) ......................... 6

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
  30 F.4th 1109 (Fed. Cir. 2022) ........................................................... 8

*Sentry Prot. Prods., Inc. v. Eagle Mfg. Co.*,
  400 F.3d 910 (Fed. Cir. 2005) ............................................................ 12

*Splunk Inc. v. Cribl, Inc.*,
  No. 22-7611, 2023 WL 2562875 (N.D. Cal. Mar. 17, 2023) ..................... 12

*Synopsys, Inc. v. ATopTech, Inc.*,
  No. 13-2965, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ...................... 12

## **TABLE OF AUTHORITIES**

*(continued)*

*Cases* **Pages**

*Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
 785 F.3d 625 (Fed. Cir. 2015) ................................................................. 7

*TecSec, Inc. v. Adobe Inc.*,
 978 F.3d 1278 (Fed. Cir. 2020) ............................................................... 8

*Telemac Cell. Corp. v. Topp Telecom, Inc.*,
 247 F.3d 1316 (Fed. Cir. 2001) ............................................................... 2

*Vita-Mix Corp. v. Basic Holding, Inc.*,
 581 F.3d 1317 (Fed. Cir. 2009) ............................................................... 7

*Warner-Lambert Co. v. Apotex Corp.*,
 316 F.3d 1348 (Fed. Cir. 2003) ............................................................... 7

*Windy City Innovations, LLC v. Microsoft Corp.*,
 193 F. Supp. 3d 1109 (N.D. Cal. 2016) .................................................. 7

*Zeiny v. United States*,
 No. 19-5806, 2020 WL 496076 (Jan. 30, 2020) ................................... 10

*Statutes & Rules*

35 U.S.C. § 271(b) ........................................................................................ 7, 8

Fed. R. Civ. P. 8(a) ........................................................................................ 10

*Treatises*

Restatement (Second) of Torts ....................................................................... 12

**INTRODUCTION**

The Court should dismiss the amended complaint. Plaintiff's direct infringement theories require modification of Google's products to show infringement, and thus confirm that Google's products themselves do not infringe—the same failure that doomed plaintiff's original complaint. Because claims of indirect and joint infringement require direct infringement, those allegations fail as well. But those allegations also fail on their own, as the amended complaint fails to allege knowledge of the patents-in-suit or knowledge of infringement, which prevents any allegation of indirect or willful infringement. And the amended complaint fails to allege any other elements of induced infringement, contributory infringement, joint infringement, or willful infringement. The Court should therefore dismiss the amended complaint. Since the plaintiff has shown he cannot redraft the claims, it should do so without leave to amend.

**BACKGROUND**

A.  **The Asserted Patents**

Plaintiff Larry Golden holds several patents including the four he asserts in this action, U.S. Patent Nos. 9,096,189, 9,589,439, 10,163,287, and 10,984,619. These patents share the title "Multi sensor detection, stall to stop and lock disabling system," and pertain to "anti-terrorist detection and prevention systems," specifically "a disabling lock mechanism combined with a chemical/biological/radiological detection system for use with products grouped together by similar characteristics in order to prevent unauthorized entry, contamination and terrorist activity." '189 Patent at 1:40-45; '439 Patent at 1:47-52; '287 Patent at 1:57-62; '619 Patent at 1:52-57.

B.  **The Original Complaint and Google's Motion to Dismiss**

On September 14, 2022, Mr. Golden filed this action, alleging that Google infringed the '189, '439, and '287 patents because it "makes, uses, offer [sic] to sell, or sells Google Pixel smartphones 3, 3XL, 3a, 3aXL, 4a, 4a(5G), and 5." Compl. at 2; *see id.* at 23-29. On October 26, 2022, Google moved to dismiss, explaining that the complaint did not "allege that Google Pixel devices themselves infringe," but claimed only that "Google Pixel devices could infringe his patents if a user added another application, 'ATAK,' made not by Google, but by the U.S. military." Docket No. 11 at 5:6-8; *see generally id.* On August 10, 2023, the Court granted Google's motion, holding that the complaint failed

to state a claim because "at least two elements of each independent claim included in the chart are allegedly satisfied only when the phone has the Android Team Awareness Kit (ATAK) downloaded," and thus the "claims, as pled, only allege that Google's devices infringe the patents in issue if the end user downloads a particular application."  Docket No. 41 at 5:2-3, 5:7-9; *see id.* at 4-7.

**C.  The Amended Complaint**

On August 21, 2023, Mr. Golden served by mail his amended complaint, alleging five theories of infringement by Google's "Pixel 6a, 7, 7a, 7pro, and fold smartphones."  Am. Compl. at 2-4; *see id.* Exhibit G.  All five theories of infringement require additional components such as ATAK, *see* Am. Compl. Ex. G, rendering them defective for the same reasons as the original complaint.  The amended complaint also asserts indirect and joint infringement of the asserted patents, naming other agencies and companies allegedly participating in infringement, including the Department of Defense, the Defense Threat Reduction Agency, Qualcomm and Draper Laboratory—but fails to make the specific allegations required to support those claims.  *See generally* Am. Compl.

## ARGUMENT

**I.  The Amended Complaint Fails to State Claims of Direct Infringement**

In pleading direct patent infringement, a plaintiff cannot satisfy "the pleading standards set forth in *Twombly* and *Iqbal* 'by reciting the claim elements and merely concluding that the accused protect [sic] has those elements.  There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.'"  *Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, No. 22-561, 2022 WL 1556417, at *2 (N.D. Cal. May 17, 2022) (quoting *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021)); *see also Artrip v. Ball Corp.*, 735 Fed. App'x 708, 715 n.4 (Fed. Cir. 2018); *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376-77 (Fed. Cir. 2017).  As this Court ruled in granting Google's previous motion to dismiss, "'[t]hat a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement.'"  Docket No. 41 at 4:16-18 (quoting *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001)).  The amended complaint includes five separate infringement theories, shown in five sets of infringement charts in Exhibit G.  All five theories fail this test.

//

### A.     ATAK-CIVILIAN is a Third-Party Application, Not a Google Product

Mr. Golden's first theory of infringement, set forth on pages 2-9 of Exhibit G, requires the use of "ATAK-CIVILIAN" for at least two elements of each asserted claim. Am. Compl., Ex. G at 6. Mr. Golden admits in his amended complaint that ATAK-CIVILIAN, a "digital application available to warfighters throughout the DoD," is a "third-party" application, which a user must choose to install. Am. Compl. ¶¶ 56, 59; *see, e.g., id.* at 21 ("Google Play Apps for CBRNE Sensing and Detection"); Docket No. 42-1 at 38 (ATAK-CIV is "[s]old at Google Play"); *id.* at 43 (showing "TAK Product Center" as the developer of ATAK-CIV); Docket No. 42-2 at 2 ("DTRA ATAK-MILITARY and Draper's ATAK-CIVILIAN").[1]  The complaint admits that Google's products can infringe only if modified by the addition of an application, and thus confirms that Google's products do not infringe at all. *See* Docket No. 41. As a result, Mr. Golden's first theory of infringement fails for the same reason as his original complaint.

### B.     The Complaint Admits That Google Does Not Sell Converted NFC Tags

Mr. Golden's second theory of infringement, set forth on pages 10-17 of Exhibit G, requires "Google's NFC Sensor," which is "embedded in the phone," and the "[c]onversion of an NFC tag" to enable "wireless rf detection of chemical analytes." *Id.*, Ex. G at 14. Mr. Golden admits that "Google NFC smartphones communicate with NFC tags," confirming that the "NFC tags" are external to Google products. *Id.* Mr. Golden does not allege that Google sells or converts NFC tags, let alone that it sells the converted NFC tags he claims are required for infringement. The complaint admits that Google's products can infringe only if modified by addition of a converted NFC tag, and thus confirms that Google's products do not infringe at all. *See* Docket No. 41. Mr. Golden's second theory of infringement fails for the same reason as his original complaint.

### C.     The Complaint Admits That Google Does Not Sell Devices With a Microfluidic Lens

Mr. Golden's third theory of infringement, set forth on pages 18-25 of Exhibit G, requires "Google's camera lens with microfluidic lens," which "uses microscope to focus on a chemical sensor" and "captures the image from the array of nanopores us[ing] fluid." *Id.*, Ex. G at 22. But the complaint

---

[1] Google uses the documents' page numbers when available; some of the documents have no page numbers, and there Google uses the PDF page numbers added by PACER.

admits that Google's Pixel devices do not include a "microfluidic lens," cannot use a "microscope to focus on a chemical sensor," and cannot "capture[] the image from the array of nanopores us[ing] fluid." *Id.* On page 26, following paragraph 75, the complaint first references an article entitled *Cell Phone Sensors for Toxins Developed at UC San Diego*, Understanding Nanotechnology (May 13, 2010), https://www.understandingnano.com/cell-phone-sensors-toxins.html, archived at https://archive.is/iJ2UN, which discusses a research project but nowhere indicates that anyone, let alone Google, has used this project on a commercial device. *See id.* The complaint next cites *These New Smartphone Cameras Could Tell You What an Object is Made of*, ScienceAlert (Apr. 7, 2015), https://www.sciencealert.com/new-smartphone-cameras-could-tell-you-what-an-object-is-made-of, archived at https://archive.is/S6Ivr, which discusses a Tel Aviv University project to develop a "device that could transform smartphone cameras into hyperspectral sensors, capable of detecting the chemical ingredients of an object or fluid simply by analysing a photo or video of it," and states that "such a camera is on the horizon" but does not exist yet. *Id.* Finally, Mr. Golden includes an image, shown at right, without citation or explanation. Am. Compl. at 26. That image appears in an article about a camera under development by Qualcomm—not by Google—in 2019. Subhrojit Mallick, *Qualcomm expects smartphones with 100MP camera sensors later this year*, Digit (Mar. 14, 2019), https://www.digit.in/news/mobile-phones/qualcomm-reveals-100mp-camera-sensors-on-their-way-to-market-later-this-year-46972.html, archived at https://archive.is/UwHT4. Again, the complaint admits that Google's products can infringe only if modified by addition of a microfluidic lens, and thus confirms that Google's products do not infringe at all. *See* Docket No. 41. Mr. Golden's third theory of infringement fails for the same reason as his original complaint.

**D.      The Complaint Admits That Google Does Not Sell Devices Designed to Go to Mars**

Mr. Golden's fourth theory of infringement, set forth on pages 26-33 of Exhibit G, requires a list of "Smartphone Biosensors" that the complaint confirms do not appear in Google's accused devices. *Id.*, Ex. G at 30. Exhibit G says little about this list, but Mr. Golden explains further on page 27 of the

amended complaint, which lists the "Smartphone Biosensors," describes them further, and includes a picture showing them. That picture comes from a Queen's University Belfast paper which discusses hypothetical technology for hypothetical smartphones for use in a hypothetical expedition to Mars. Joost Nelis et al., *"The Smartphone's Guide to the Galaxy": In Situ Analysis in Space*, 8 BIOSENSORS 96 (2018), https://doi.org/10.3390/bios8040096, archived at https://archive.is/8nk1J. The paper



describes Figure 4, which is the image in the complaint, as "a futuristic SBD [smartphone-based sensing device] that incorporates novel sensing technology with synthetic REs [Recognition Elements] directly into the smartphone as well as using an add-on device equipped with interchangeable microfluidic cassettes." *Id.* at 21; Am. Compl. at 26. Again, the amended complaint admits that Google's products can infringe only if modified by addition of hypothetical technology, and thus confirms that Google's products do not infringe at all. *See* Docket No. 41. Mr. Golden's fourth theory of infringement fails for the same reason as his original complaint.

E.   **The Complaint Admits That Google Beacon is Separate From the Accused Devices**

Mr. Golden's fifth theory of infringement, set forth on pages 34-41 of Exhibit G, requires "Google Beacon." *Id.*, Ex. G at 38. Again, the amended complaint itself admits that Google Beacon is separate from the accused Pixel devices. The amended complaint notes that Exhibit F provides information about Google Beacon, *see id.* at 27, but the information it provides shows that Google Beacon and the accused devices are not the same. Exhibit F suggests "[u]s[ing] smart phone sensors (GPS, WiFi, Bluetooth) and beacon signals to calculate distance between detector and source"—which would only work if the "beacon signals" were separate and independent from the "smart phone." *Id.* at 3. Exhibit F reconfirms this separation by noting that a "[p]oint source may be assigned to a fixed GPS location or a mobile device," which could include a "smart phone in WiFi network, or Bluetooth beacon,

or WiFi beacon." *Id.* at 4.  Again, the complaint admits that Google's products can infringe only if modified by the addition of a remote beacon, and thus confirms that Google's products do not infringe at all.  *See* Docket No. 41.  Mr. Golden's fifth theory of infringement fails for the same reason as his original complaint.

## II.    The Amended Complaint Fails to Allege Indirect Infringement

### A.    Indirect Infringement Requires Direct Infringement

"'There are two types of indirect patent infringement:  inducement and contributory infringement.'"  Docket No. 41 at 6:22 to 7:1 (quoting *Redd Grp., LLC v. Glass Guru Franchise Sys., Inc.*, No. 12-4070, 2013 WL 3462078, at *4 (N.D. Cal. Jul. 8, 2013)).  "'Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement,'" and "'[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'"  *Id.* (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004)) (alteration in original).  Because Mr. Golden has failed to allege direct infringement of the patents-in-suit, he has also failed to allege indirect infringement.  *See Redd Grp.*, 2013 WL 3462078, at *4; Docket No. 41 at 7:6-7 ("Because Plaintiff fails to allege direct infringement, the Court finds that he also fails to allege indirect infringement.")  The Court should therefore dismiss the amended complaint in its entirety.

### B.    Assuming Direct Infringement, the Complaint Fails to Allege Indirect Infringement

Even assuming direct infringement, the complaint fails to properly allege indirect infringement, and the Court should therefore dismiss the plaintiff's indirect infringement allegations.  Although the amended complaint often uses non-standard language such as "caused" or "encouraged," Google is mindful that a "'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" Docket No. 41 at 3 (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and therefore assumes that the complaint seeks to assert claims of both induced and contributory infringement.  The amended complaint fails, however, to make those claims successfully.

#### 1.    The Amended Complaint Fails to Allege Induced Infringement

"'Whoever actively induces infringement of a patent shall be liable as an infringer.'"  *Hypermedia Navigation LLC v. Google LLC*, No. 18-6137, 2019 WL 1455336, at *2 (N.D. Cal. Apr. 2,

2019) (quoting 35 U.S.C. § 271(b)). But "[t]he accused infringer must have 'knowingly aided and abetted' direct infringement," *Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 630 (Fed. Cir. 2015) (quoting *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003)), and so "[l]iability under Section 271(b) 'only attach[es] if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement.'" *Hypermedia*, 2019 WL 1455336, at *2 (quoting *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 640 (2015)) (alteration in original). At the pleading stage, "'[i]nducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.'" *Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1115 (N.D. Cal. 2016) (quoting *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009)). Where a plaintiff "fails to allege facts plausibly supporting an inference that [the defendant] purposely induced another party to infringe any patent," courts dismiss claims of induced infringement. *Golden v. Qualcomm, Inc.*, No. 22-3283, 2023 WL 2530857, at *3 (N.D. Cal. Mar. 15, 2023) (citing *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)); *see Hypermedia*, 2019 WL 1455336, at *3 (dismissing induced infringement where plaintiff "failed to plead specific intent").

The amended complaint fails this test, relying on general statements that do not show either knowledge of the patents-in-suit or any other aspect of the required specific intent. For example, in a section entitled "Google Caused the Infringement of Plaintiff's Patents" (Am. Compl. ¶¶ 51-62), the amended complaint alleges that Google "oversees the development of the core Android open-source platform and works to create robust developer and user communities" (*id.* ¶ 52), that "[t]he function of the Android Compatibility Program is to define a baseline interpretation of Android that is compatible with third-party apps" (*id.* ¶ 56), and that "ATAK" is "built on the Android operating system" (*id.* ¶¶ 59-60). None of these statements "plead specific intent" as required by law. *Hypermedia*, 2019 WL 1455336, at *3; *see* Am. Compl. ¶¶ 51-62. Similarly, in Exhibit H, entitled "Claim Chart of Induced Infringement," Mr. Golden alleges no specific "facts plausibly supporting an inference that [Google] purposely induced another party to infringe any patent," *Golden v. Qualcomm*, 2023 WL 2530857, at *3, but instead claims to do so elsewhere: "Plaintiff has demonstrated throughout the complaint how Google actively encouraged the infringement; and how Google knew that the acts they were doing

constituted infringement; and as a result, Google actuated direct patent infringement by those encouraging acts." Am. Compl., Ex. H at 2.  But even a detailed review of the amended complaint and its accompanying materials finds no such allegations.  *See generally* Am. Compl., Exs.  The amended complaint thus fails to allege either knowledge of the patents themselves or the specific intent to induce infringement, which is "evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."  *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) and *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990)).

Seeking to fill this hole, Mr. Golden also asserts that "Google is liable under the doctrine of willful blindness." Am. Compl. at 4.  In considering claims of induced infringement, "[t]he intent element requires 'knowledge that the induced acts constitute patent infringement,' which can be established by a proper finding of 'willful blindness.'"  *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1118 (Fed. Cir. 2022) (quoting *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020)).  Again, however, the amended complaint does not provide the allegations required to support this claim.  "Willful blindness is a high standard, requiring that the alleged inducer (1) subjectively believe that there is a high probability that a fact exists and (2) take deliberate actions to avoid learning of that fact." *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1373 (Fed. Cir. 2015) (citing *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)).  "[P]utting *Global-Tech* together with *Iqbal*, the question before the Court" at the pleading stage is whether a plaintiff has pleaded "sufficient facts . . . for the Court to *infer*" willful blindness.  *McRee v. Goldman*, No. 11-991, 2012 WL 929825, at *4 (N.D. Cal. Mar. 19, 2012) (alteration, omission, and emphasis original).  Plaintiff here has not.  The amended complaint contains no allegations either that Google "subjectively believe[d] that there is a high probability that a fact exists" or that Google took any "deliberate actions to avoid learning of that fact." *Info-Hold*, 783 F.3d at 1373.  Indeed, it addresses the concept only briefly and without any specifics.  *See* Am. Compl. at 4.  Nowhere in the complaint does Mr. Golden plead "the concurrence of knowledge and action necessary to establish [defendant's] liability under § 271(b) for induced infringement." *McRee*, 2012 WL 929825, at *5.

### 2. The Amended Complaint Fails to Allege Contributory Infringement

"'Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that material or apparatus is material to practicing the invention, has no substantial non-infringing uses, and is known by the party to be especially made or especially adapted for use in an infringement of such patent.'" *Apple Inc. v. AliveCor, Inc.*, No. 22-7608, 2023 WL 4091287, at *3-*4 (N.D. Cal. June 20, 2023) (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012)). The complaint does not make these allegations, and indeed admits that it cannot do so.

As an initial matter, like induced infringement, contributory infringement "requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. at 639 (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964)). The complaint alleges neither. *See supra* § II.A. Without these allegations, no claims of contributory infringement can survive.

In addition, "[t]o adequately plead contributory infringement, a plaintiff must tie the specific infringing components of the allegedly infringing products to an infringing use and, relatedly, plausibly allege that the component has no substantial non-infringing uses." *Apple v. AliveCor*, 2023 WL 4091287, at *3. Here, the complaint not only fails to clear this bar, it confirms there is no way to do so. Mr. Golden's allegations of contributory infringement accuse the "Google Tensor":

> Plaintiff is alleging the defendant Google, has in the past and continues to *contribute* the Google Tensor i.e., Central Processing Unit (CPU), Processor, System-on-a-Chip (SoC), Chipset; a material component of Plaintiffs patented Communicating, Monitoring, Detecting, and Controlling (CMDC) device, with knowledge that the Google Tensor Chipset is especially made for use in an infringement and is not a commodity suitable for a substantial non-infringing use.

Am. Compl. at 4 (emphasis in original). Such "bare-bones allegations are insufficient to sustain a claim for contributory infringement under *Twombly* and *Iqbal*." *Artrip v. Ball Corp.*, No. 14-14, 2017 WL 3669518, at *8 (W.D. Va. Aug. 24, 2017), *aff'd*, 735 F. App'x 708 (Fed. Cir. 2018). For example, in *Artip v. Ball Corp.*, the District of West Virginia considered a *pro se* plaintiff's allegations of contributory infringement, where plaintiff alleged only that defendant:

> supplied "food grade coiled aluminum sheets with special coating," that these aluminum sheets were supplied "for use in practicing the patented invention[s]," that the aluminum sheets "meet required specifications for said invention," that the aluminum sheets "constitut[e] a material part

of the invention," that [defendant] knew the aluminum sheets were "especially made or especially adapted for use in an infringement of such patent[s]," and that the aluminum sheets were "not a staple article or commodity of commerce suitable for substantial noninfringing use." *Artrip*, 2017 WL 3669518, at *8. The court granted the defendant's motion to dismiss, noting that plaintiff "alleges no facts supporting an inference" regarding any of his claims, and thus "his allegations as to the elements are purely conclusory, and as such, insufficient to survive a Motion to Dismiss." *Id.* at *8; *see Hitachi Kokusai Elec. Inc. v. ASM International, N.V.*, No. 17-6880, 2018 WL 3537166, at *5 (N.D. Cal. Jul. 23, 2018) (citation omitted) (granting motion to dismiss where plaintiff's first amended complaint "falls short of alleging sufficient factual content that would support a reasonable inference that the accused products have no substantial non-infringing uses," because "the mere recitation of elements of a contributory infringement claim is 'not entitled to the presumption of truth.'"). The same is true here: Mr. Golden merely asserts that Google contributes its Google Tensor Chipset, but does not allege to whom Google contributes the Tensor Chipset, nor any factual allegations supporting his threadbare claims that Google is liable for contributory infringement. Am. Compl. at 4. "'[P]ro se litigants are bound by the rules of procedure,'" which "require 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Zeiny v. United States*, No. 19-5806, 2020 WL 496076, at *2 (N.D. Cal. Jan. 30, 2020) (quoting *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) and Fed. R. Civ. P. 8(a)) (alteration in original). Mr. Golden fails to meet even this low bar. The Court should thus dismiss Mr. Golden's claims of contributory infringement.

Even if the Court were inclined to credit these bare-bones allegations, however, the amended complaint establishes that they cannot proceed, by pleading "itself out of its contributory infringement claim by alleging substantial non-infringing uses of the Accused Products." *Apple v. AliveCor*, 2023 WL 4091287, at *3 (citing *In re Bill of Lading*, 681 F.3d at 1338). For purposes of contributory infringement, the amended complaint accuses "the Google Tensor i.e., Central Processing Unit (CPU), Processor, System-on-a-Chip (SoC), Chipset," which it claims is "a material component of Plaintiffs patented Communicating, Monitoring, Detecting, and Controlling (CMDC) device." Am. Compl. at 4. But in alleging direct infringement, the same complaint acknowledges that the Tensor chipset is a general-purpose computer, using it to allege infringement of claims requiring a central processing unit:

//

– 10 –   Case No. 4:22-cv-05246-HSG
MOTION TO DISMISS THE AMENDED COMPLAINT BY DEFENDANT GOOGLE LLC

| | | | | |
|---|---|---|---|---|
| CPU: Octa-core (2x2.80 GHz Cortex X1 & 2x2.25 GHz Cortex-A76 & 4x1.80 GHz Cortex-A55) Chipset: Google Tensor. OS: Android 12, Upgrade to 13 | at least one central processing unit (CPU); | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; | at least one of a central processing unit (CPU) for executing and carrying out the instructions … a network processor … specifically targeted at the networking application domain, or a front-end processor … | whereupon, the central processing unit (CPU) of the communication device is capable of processing instructions for operational and functional execution, … capable of feedback… and storing the feedback … |

Am. Compl. Ex. G. at 2. The amended complaint itself thus admits that the Tensor chipset is a general-purpose computer "for executing and carrying out the instructions of a computer program," which could or could not infringe any of the patents-in-suit. *Id.* "Where the product is equally capable of, and interchangeably capable of both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie." *In re Bill of Lading*, 681 F.3d at 1338. Here, just as in *Bill of Lading*, the complaint "supplies the very facts which defeat its claims of contributory infringement." *Id.* The Court should dismiss these allegations for this reason as well.

### III. The Amended Complaint Fails to Allege Joint Infringement

"While a typical claim of direct infringement requires proof that a defendant performs each step of the claimed method, joint infringement requires more." *Lyda v. CBS Corp.*, 838 F.3d 1331, 1338 (Fed. Cir. 2016). "To prove joint infringement, where multiple actors are involved in practicing the claim steps, the patent owner must show that the acts of one party are attributable to the other such that a single entity is responsible for the infringement. This court has held that an entity will be responsible for others' performance of method steps in two circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise.'" *Id.* at 1338-39 (quoting *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015)). To claim a joint enterprise, plaintiff must allege "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which

gives an equal right of control." *Akamai,* 797 F.3d at 1023 (citing Restatement (Second) of Torts § 491 cmt. c). The complaint alleges neither type of joint infringement.

Indeed, the amended complaint barely addresses joint infringement at all. It claims that "the defendant Google is liable for "'joint infringement'" because "multiple actors [Google LLC and Draper Laboratory Inc.] are involved in carrying out the claimed infringement of a patent and no single accused infringer has performed all of the steps of the method." Am. Compl. at 4 (brackets in original) (citing *Akamai,* 797 F.3d 1020). The amended complaint references Qualcomm in a section entitled "Double Standard," Am. Compl. ¶¶ 33-42, but does not allege that Qualcomm and Google jointly infringe, and states to the contrary that Google "discontinued the use of Qualcomm's Snapdragon chipset, thereby eliminating Plaintiff's 'joint infringement' claim." *Id.* at 2. Finally, Exhibit H claims to be a chart showing, among other things, "Joint Infringement." *Id.*, Ex. H. But neither Exhibit H, the amended complaint, nor anything else attached to it alleges any specifics regarding how anyone "directs or controls others' performance," or how "the actors form a joint enterprise." *Lyda*, 838 F.3d at 1338-39. Mr. Golden's joint infringement claims are, at most, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" which "'do not suffice.'" *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-2965, 2013 WL 5770542, at *3 (N.D. Cal. Oct. 24, 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court should therefore dismiss Mr. Golden's allegations of joint infringement.

### IV. The Amended Complaint Fails to Allege Willful Infringement

"To state a claim for willful infringement, the plaintiff must plead that the defendant acted with knowledge of the patent and of his alleged infringement, or equivalent facts." *OpenTV, Inc. v. Apple, Inc.*, No. 14-1622, 2015 WL 1535328, at *7 (N.D. Cal. Apr. 6, 2015) (citing *Sentry Prot. Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005)). "Although the jury decides willfulness, willfulness only goes to the jury if it was properly framed by the pleadings." *Splunk Inc. v. Cribl, Inc.*, No. 22-7611, 2023 WL 2562875, at *2 (N.D. Cal. Mar. 17, 2023); *see, e.g., Hypermedia*, 2019 WL 1455336, at *4 (citation omitted) (granting Google's motion to dismiss where "[n]othing in the complaint provides specific factual allegations about Google's subjective intent or details about the nature of Google's conduct to render a claim of willfulness plausible, and not merely possible."). Again, the amended

complaint fails this test. As Google has already explained in the context of indirect infringement, the amended complaint does not allege either knowledge of the patents or knowledge of infringement. *See supra* § II. It therefore fails to allege willful infringement, and the Court should dismiss these claims.

### V.     The Court Should Deny Leave to Amend

In its motion to dismiss, Google asked this Court to dismiss Mr. Golden's original complaint without leave to amend, because the "complaint does not suffer from a drafting deficiency; instead, its theory of infringement contains the seeds of its own demise, a problem no amount of amendment can cure." Docket No. 11 at 8:23-24. This Court granted leave to amend, noting that "[t]he Court cannot say at this stage that amendment necessarily would be futile, and so follows the standard course of granting leave for Plaintiff to amend to correct the identified deficiencies, if he can truthfully do so." Docket No. 41 at 7:10-12. But Mr. Golden's amended complaint suffers from the same deficiencies as his original complaint, *see supra* § I, and adds many more. *See supra* §§ II, III, IV.

"Because Plaintiff was previously granted an opportunity to remedy these flaws but has proven unable to do so, further leave to amend would be futile." *Mejia v. JPMorgan Chase Bank, N.A.*, No. 21-1351, 2021 WL 6498762, at *3 (N.D. Cal. Sept. 8, 2021), *aff'd*, No. 21-16550, 2022 WL 1154762 (9th Cir. Apr. 19, 2022) (citation omitted). This Court should dismiss the amended complaint without leave to amend.

### CONCLUSION

For the reasons set forth above, the Court should dismiss the amended complaint in its entirety without leave to amend.

Date: September 7, 2023

Respectfully submitted,

_/s/ Matthew S. Warren_
Matthew S. Warren (State Bar No. 230565)
Virginia G. Kain (State Bar No. 344545)
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
22-5246@cases.warrenlex.com

*Attorneys for Defendant Google LLC*