Exhibit C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **TOUCHSTREAM TECHNOLOGIES, INC.,** | |
| *Plaintiff,* | Civil Case No. 6:21-cv-569-ADA |
| v. | U.S. District Judge Alan Albright |
| **GOOGLE LLC,** | |
| *Defendant.* | |

### JUDGMENT ON JURY VERDICT

This action came before the Court for a trial by jury commencing on July 17, 2023, between Plaintiff Touchstream Technologies, Inc. ("Touchstream") and Defendant Google LLC ("Google"). The issues have been tried and the jury rendered its unanimous verdict on July 21, 2023 (ECF No. 247). Pursuant to Rule 58 of the Federal Rules of Civil Procedure and in accordance with the jury's verdict, the Court hereby **ORDERS** and **ENTERS JUDGMENT** on the jury verdict as follows:

1. Defendant has infringed claims 1 and 2 of Patent No. 8,904,289 (the "'289 patent"), claims 1 and 14 of Patent No. 8,782,528 (the "'528 patents"), and claims 1 and 8 of U.S. Patent No. 8,356,251 (the "'251 patent") (collectively, the "Asserted Claims").

2. The Asserted Claims are not invalid.

3. Judgment is hereby entered in favor of Touchstream and against Google in the sum of $338,760,000 U.S. Dollars for Google's infringement of the Asserted Claims.

4. This Judgment starts the time for filing any post-trial motions or appeal, including but not limited to: renewed motions for judgment as a matter of law and/or new

trial under Fed. R. Civ. P. 50(b) and 59; motions to amend the judgment; motion for entry of a permanent injunction and/or an ongoing royalty; a motion for the award of supplemental damages, prejudgment interest, and postjudgment interest; and any other motions for equitable relief that may be just and proper. To the extent not expressly provided by the rules, all such motions shall be filed within 28 days of entry of this Judgment.

5. Any other relief requested by either party which is now pending before the Court and not specifically awarded or addressed herein is **DENIED**.

**So ORDERED and SIGNED this 23rd day of August, 2023.**

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

Exhibit D

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**LARRY GOLDEN,**
*Plaintiff-Appellant*

v.

**APPLE INC., SAMSUNG ELECTRONICS USA, LG
ELECTRONICS USA, INC., QUALCOMM
INCORPORATED, MOTOROLA SOLUTIONS, INC.,
PANASONIC CORPORATION, AT&T INC.,
VERIZON CORPORATION SERVICE GROUP,
SPRINT CORPORATION, T-MOBILE USA, INC.,
FORD GLOBAL TECHNOLOGIES, LLC, FAIRWAY
FORD LINCOLN OF GREENVILLE, GENERAL
MOTORS COMPANY, KEVIN WHITAKER
CHEVROLET, FCA US LLC, BIG O DODGE
CHRYSLER JEEP RAM,**
*Defendants*

---

2022-1229

---

Appeal from the United States District Court for the
District of South Carolina in No. 6:20-cv-04353-JD, Judge
Joseph Dawson, III.

--------------------------------------------------

**LARRY GOLDEN,**
*Plaintiff-Appellant*

2                                           GOLDEN v. APPLE INC.

v.

**GOOGLE LLC,**
*Defendant*

———————————

2022-1267

———————————

Appeal from the United States District Court for the
District of South Carolina in No. 6:21-cv-00244-JD, Judge
Joseph Dawson, III.

———————————

Decided:  September 8, 2022

———————————

LARRY GOLDEN, Greenville, SC, pro se.

———————————

Before DYK, TARANTO, and STOLL, *Circuit Judges*.

PER CURIAM

Larry Golden appeals two orders of the United States
District Court for the District of South Carolina ("district
court") dismissing his patent infringement claims against
various defendants.  We *affirm* the dismissal in Case
No. 22-1229 but *vacate* the dismissal in Case No. 22-1267
and *remand* for further proceedings consistent with this
opinion.

BACKGROUND

Mr. Golden owns a family of patents concerning a sys-
tem for locking, unlocking, or disabling a lock upon the

GOLDEN v. APPLE INC.                                    3

detection of chemical, radiological, and biological hazards.[1] In 2019, he sued sixteen defendants in the district court, alleging patent infringement by their development and manufacturing of certain devices. The district court dismissed the suit without prejudice, and this court affirmed the dismissal "on the ground of frivolousness" because Mr. Golden's complaint "offer[ed] only vague generalities and block quotes of statutes, cases and treatises, but nowhere point[ed] us to any nonfrivolous allegations of infringement of any claim by any actual product made, used, or sold by any defendant." *Golden v. Apple Inc.*, 819 F. App'x 930, 931 (Fed. Cir. 2020).

On January 5, 2021, in Case No. 22-1229, Mr. Golden again sued the same sixteen defendants from the 2019 case for patent infringement ("the Apple case"). He initially filed the same over-300-page complaint held to be frivolous in the 2019 case. After the magistrate judge imposed a 35 page limit on the complaint, Mr. Golden filed a shortened complaint complying with the restriction. On January 26, 2021, in Case No. 22-1267, Mr. Golden separately sued Google LLC for patent infringement ("the Google case"). The magistrate judge reviewed the complaints in both cases and recommended summary dismissal with prejudice without issuance of service of process or leave to amend and monetary sanctions for the filing of frivolous litigation.

In both cases, the district court adopted the magistrate judge's recommendations in part. In the Apple case, the district court dismissed the complaint as frivolous without the issuance of service of process but declined to dismiss with prejudice. Additionally, the district court lifted the page restriction for an amended complaint. In the Google case, the district court dismissed the complaint with

---

[1]    The patents at issue in these cases are U.S. Patent Nos. 7,385,497; 9,096,189; 9,589,439; 10,163,287 and Reissue Patent Nos. RE43,891 and RE43,990.

GOLDEN v. APPLE INC.

prejudice and without the issuance of service of process.
Mr. Golden appeals the district court decisions in both
cases. We have jurisdiction under 28 U.S.C. § 1295(a)(1).
On appeal, Mr. Golden has filed briefs, while the defend-
ants have not filed responsive briefs.

## DISCUSSION

Under the pleading standards set forth in *Bell Atlantic
Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iq-
bal*, 556 U.S. 662 (2009), a court must dismiss a complaint
if it fails to allege "enough facts to state a claim to relief
that is plausible on its face." *Twombly*, 550 U.S. at 570.
This standard "requires more than labels and conclusions,
and a formulaic recitation of the elements of a cause of ac-
tion will not do." *Id.* at 555 (citation omitted). A plaintiff
must allege facts that give rise to "more than a sheer pos-
sibility that a defendant has acted unlawfully." *Iqbal*, 556
U.S. at 678 (citation omitted). In the patent context, this
court has explained that a plaintiff need not "plead facts
establishing that each element of an asserted claim is met,"
*In re Bill of Lading Transmission and Processing Sys. Pat.
Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012) (citing *McZeal
v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir.
2007)), but must plead "'enough fact[s] to raise a reasona-
ble expectation that discovery will reveal' that the defend-
ant is liable for the misconduct alleged." *Id.* at 1341
(alteration in original) (quoting *Twombly*, 550 U.S. at 556).
We review the district court's dismissal of the complaint de
novo. *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195,
198 (4th Cir. 2014).

In the Apple case, the district court dismissed the dock-
eted complaint as frivolous after finding that Mr. Golden
"failed to include factual allegations beyond the identities
of the Defendants, reference to the alleged infringing de-
vices, and the alleged infringed-upon patents." Dist. Ct.
Op. at 4–5. We agree with the district court: the docketed
complaint is nothing more than a list of patent claims and

GOLDEN v. APPLE INC.                                              5

accused products manufactured by each defendant for each asserted patent. Mr. Golden contends that his original complaint contained sufficient factual allegations to support his claims. However, he concedes that the rejected original complaint was identical to the one that this court deemed frivolous in the 2019 case. His effort to relitigate the sufficiency of the original complaint is precluded under the doctrine of res judicata. *See Arizona v. California*, 530 U.S. 392, 412 (2000) ("[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though [a preclusion] defense has not been raised."). Mr. Golden does not argue that the docketed complaint contains factual allegations beyond those contained in his original complaint or that the allegations in the docketed complaint do anything beyond listing the alleged infringed-upon patent claims and the alleged infringing devices. This is plainly insufficient. We see no error in the district court's without prejudice dismissal of the Apple case.

In the Google case, the district court again concluded that Mr. Golden's complaint was frivolous. Here, however, Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189. The district court discounted this claim chart because it "contains the exact same language as the claim charts previously rejected by the Federal Circuit [in the 2019 case], although Google Pixel 5 Smartphone appears in the far left column instead of Apple." Dist. Ct. Op. at 4. But to the extent that the chart includes the "exact same language" as previously rejected charts, it is simply the language of the independent claims being mapped to. The key column describing the infringing nature of the accused products is not the same as the complaint held frivolous in the 2019 case. It attempts—whether successfully or not—to map claim

6                                        GOLDEN v. APPLE INC.

limitations to infringing product features, and it does so in
a relatively straightforward manner.

  We conclude that the district court's decision in the
Google case is not correct with respect to at least the three
claims mapped out in the claim chart. Mr. Golden has
made efforts to identify exactly how the accused products
meet the limitations of his claims in this chart. On remand,
the district court should allow the complaint to be filed and
request service of process. Our decision does not preclude
subsequent motions to dismiss by the defendant for failure
to state a claim or for summary judgment. We express no
opinion as to the adequacy of the complaint or claim chart
except that it is not facially frivolous.

### CONCLUSION

  For the foregoing reasons, we affirm the district court's
dismissal in Case No. 22-1229, vacate the dismissal in
Case No. 22-1267, and remand for further proceedings con-
sistent with this opinion.

## CASE NO. 22-1229 AFFIRMED

## CASE NO. 22-1267 VACATED AND REMANDED

### COSTS

No costs.

Exhibit E

RECEIVED
USDC CLERK, GREENVILLE, SC
2021 JAN 26  AM 10: 13

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF SOUTH CAROLINA – GREENVILLE**

---

LARRY GOLDEN,

       Plaintiff,

         V.

GOOGLE LLC

       Defendants.

---

CIVIL CASE NO: _____

**JURY TRIAL DEMANDED**

January 25, 2021

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action of patent infringement in which plaintiff, Larry Golden ("Golden", "Plaintiff" or "Patent Owner"), hereby asserts the following claims for patent infringement of United States Patent Nos. 10,163,287 ('287 Patent), 9,589,439 ('439 Patent), and 9,096,189 ('189 Patent) ("patents-in-suit": attached hereto as Exhibits A-C respectively) against Defendant GOOGLE LLC ("Google" or "Defendant"), and alleges as follows:

Upon information and belief, Plaintiff alleges the patents-in-suit, that were issued with the presumption of validity, "[a] patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. 35 U.S. Code § 282 - Presumption of validity; (a)

In General" is Plaintiff's evidence that the Plaintiff is the inventor of the Communicating,

Monitoring, Detecting, and Controlling (CMDC) device(s) i.e., products grouped and

commercialized today as smartphones, laptops, tablets, smartwatches, etc.

Upon information and belief, Plaintiff alleges that the defendant Google, has in the past

and continues to do so, makes, uses, offer to sell, or sells Google Pixel smartphones 3, 3XL, 3a,

3aXL, 4a, 4a(5G), and 5, that Plaintiff believes infringes at least one of the claims in the patents-

in-suit under 35 U.S.C. § 271, "anyone who makes, uses, offers to sell, or sells any patented

invention domestically, or imports a patented invention into the United States during the term of

the patent, is infringing the patent. Anyone who actively induces someone else

to infringe the patent is also liable as an infringer."

Similarly, under 35 U.S.C. § 271, "anyone who offers to sell, sells, or imports a material

component of something that is patented, knowing that the component was especially made for

use in an infringement and is not a commodity suitable for a substantial non-infringing use, is

also liable as a contributory infringer" Plaintiff is alleging that the defendant Google, has in the

past and continues to do so, offer to sell, sells (i.e., to other smartphone and mobile device

manufacturers; "Google Search", "Google Fi", "Google Android Operating Systems", "Google

Cloud", etc.) or imports a material component of something that is patented (i.e., Plaintiff's

CMDC devices). For example, "market.us" has published the following information on Google:

**2018?**
- On January 2018, Alphabet, Inc. acquired Redux – smartphone technology, which is specialized in turning smartphone screens into speakers.
- In October 2018, Google LLC to shut down Google+ after failing to disclose user data leak
- In November 2018, Google LLC acquired Workbench, which is a US-based company, that offers an online library of projects and lessons.

- Under this acquisition, the company focuses on integrating the Workbench tool with Google Classroom. In addition, currently, Google Classroom is one of the most widely used online educational tools, which lets parents, teachers, and students manage class discussions, assignments, and quizzes.
- In 2018, Google Search and Advertising tools helped generating **$335 billion** in economic activity for **more than 1.3 billion millions** of businesses, website publishers, and nonprofits across the United States.
- Many website publishers, non-profit organizations and 40,000 companies in the country benefited from the use of Google Ads and AdSense advertising tools.
- In 2018, Google had sent more than 14 billion dollars to music publishers around the world.
- As of November, 2018, in US, Google connects people to businesses nearby more than **9 billion times**, including over 1 billion phone calls and 3 billion direction requests to stores every month.

**Usage Statistics**

- In a minute on the Internet in 2020, there are **4.1 million search queries, 230 million per hour** and **6 Billion per day** that is **more than 2.5 Trillion searches per year** worldwide.
- Till July 2020, Google has 95.6% share of worldwide mobile search traffic.
- In April 2020, Google processed **12.7 billion** search queries in US, accounting **62.3 percent** of the US total desktop search queries and leading mobile search provider in the US with 95.04% market share
- Daily visitors to Google are **approximately 620 Mn.**
- According to the Datareportal, in June 2020, the top 10 search queries on Google were: Google, Facebook, Youtube, You, Weather, News, Amazon, Coronavirus, Translate and Instagram.
- In July 2019, Google accounted for **95 percent** of US mobile search visits and **93 percent** of overall U.S. organic search engine visits.
- As of May 2019, Gmail is a product that **1.5 billion users** rely on, to get things done every day.
- As of September 2019, People have already asked **Google Lens more than a billion questions** about things they see.

3

- Google sends **10 billion+ clicks per month** to news publishers' websites.
- As of May 2019, **2.5 million** web publishers use AdSense to make money through their content on the web.
- According to a survey, in Europe the news content linked through Google were **clicked more than 8 billion times a month** that is **3,000 clicks per second** to the publishers' websites in Europe resulting to each click between 4-6 euro cents.
- In the US, Google helps drive over **1 billion direct connections**, like calls and online reservations, for businesses nationwide every month.
- Google owns its **own common misspellings domains** such as www.gooogle.com, www.googlr.com, and www.gogle.com
- Google runs **over 1 Mn computer servers** in data centers around the world.
- Last year, Google **rejected more than 10 million ads** that we suspected of copyright infringement.
- Around **35% of clicks** for U.S. businesses, advertising on Google, came from outside the country.
- As of May 2019, about **80% of traffic** from Google's Showcase Shopping ads to retailer sites are from new visitors discovering the brands.
- Till date, Google has over **2 billion store** offers mapped to physical store locations globally, discoverable by their current local ad formats like local inventory ads.
- Google Station serves more than **10 million people in 1,300 locations** across India, Indonesia, Mexico, Nigeria, the Philippines, Thailand, Vietnam and Brazil.
- Google Assistant is now on **more than one billion devices**, available in more than 30 languages across 80 countries.
- As of 2019, **more than 20 million people visit Google Account every day** to review their settings, using Privacy Checkup.
- As of 2019, **90 million** teachers and students are using G Suite for Education worldwide.
- Google has a database of over 4 billion credentials that have been compromised through various data breaches
- According to a 2018 Survey, around **72% of consumers in Indonesia** see Google Search as the online gateway for personal loan information and the second most helpful source for Financial Services information, after the bank branches

4

## THE PARTIES

1.    Plaintiff Larry Golden is a citizen of South Carolina and has a principal place of business and residence at 740 Woodruff Road, #1102, Greenville, S.C. 29607.

2.    On information and belief, Google is incorporated in the State of Delaware with a principal place of business at 1600 Amphitheatre Parkway, Mountain View, CA 94043 and does business in this judicial district by, among other things, committing jointly, directly, and/or indirectly the tort of literal patent infringement or infringement under the "doctrine of equivalents" giving rise to this complaint. Google may be served at its principal place of business at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

3.    Google LLC is one of the largest technology companies in the world and conducts product sales, and online search operations in the District of South Carolina. Google LLC directly and/or indirectly distributes, markets, offers to sell, sells, and/or imports the infringing Google Pixel Series of smartphones and Google Android Operating Systems.

## STANDARD FOR REVIEW

4.    Pursuant to the order of Magistrate Judge Kevin McDonald in United States District Court for the District of South Carolina; filed 12/17/2020; Case No. 6:20-cv-04353-BHH-KFM, Plaintiff was ordered to file "a short and plain statement of the claim showing that the pleader [Plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a).

5.    Plaintiff has attached a copy of the asserted patents as **Exhibits A, B, & C**. The attached patents satisfy the requirement of "enough factual allegations. For example, in *Incom Corp. v. Walt Disney Co.,* No. 2:15-cv-03011-PSG-MRW, Dkt. 39, at *4 (C.D. Cal. Feb. 4, 2016) the Central District of California declined to dismiss a complaint that attached the asserted

patent, identified the accused products by name, and generally compared the technology

disclosed in the patents to the accused products. The complaint *did not identify any specific*

*asserted claim*, but the court found that: "Plaintiff has stated a plausible claim for direct

infringement by specifically identifying the Defendant's products and alleging that they perform

the same unique function as Plaintiff's patented system." The Defendant in this case is allegedly

liable for infringement of the asserted patents-in-suit under 35 U.S.C. § 271.

6.      Plaintiff maintains he has additional factual allegations to support his claim in the

form claim charts readily available by order of this Court.


## JURISDICTION AND VENUE

7.      This is a civil action for patent infringement arising under the patent laws of the

United States, Title 35 of the United States Code. This Court has subject matter jurisdiction

pursuant to 28 U.S.C. §§§ 1331, 1332(a) and 1338(a).

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and

1400(b). On information and belief, the defendant has purposely transacted business in this

judicial district and has committed acts of joint, direct and/or indirect infringement in this

judicial district.

9.      On information and belief, the defendant is subject to this Court's specific and

general personal jurisdiction, due at least to the defendant's substantial business in this forum,

including: (A) at least part of the defendant's infringing activities alleged herein, and (B)

regularly doing or soliciting business, engaging in others persistent causes of conduct, and/or

deriving substantial revenue from goods and services provided to persons and other entities in

South Carolina and this judicial district. The defendant has allegedly used, sold, and/or offered products for sale in South Carolina and is licensed to do business in this state.

10.     This Court has specific jurisdiction over the defendant because the defendant has committed acts giving rise to this action and has established minimum contacts within this judicial district such that the exercise of jurisdiction over the defendant would not offend traditional notions of fair play and justice.

## RELATED CASES

11.     Plaintiff has alleged that Apple is infringing Plaintiff's communicating, monitoring, detecting, and controlling (CMDC) device in a related case *Larry Golden v. Apple, Inc. et al* filed on 12/16/2020 at the United States District Court for the District of South Carolina; Greenville Division (Case No. 6:20-cv-04353) against defendants, Apple Inc. ("Apple"), Samsung Electronics, USA ("Samsung"), LG Electronics, USA, Inc. ("LG"), Qualcomm Inc. ("Qualcomm"), Motorola Solutions Inc. ("Motorola"), Panasonic Corporation ("Panasonic"), AT&T Inc. ("AT&T"), Verizon Corporation Services Group ("Verizon"), Sprint Corporation ("Sprint"), T-Mobile USA, Inc. ("T-Mobile"), Ford Global Technologies, LLC ("Ford"), Fairway Ford Lincoln of Greenville ("Fairway Ford"), General Motors Company ("GM"), Kevin Whitaker Chevrolet ("Whitaker Chevrolet"), FCA US LLC ("FCA"), and Big O Dodge Chrysler Jeep Ram ("Big O").

12.     Plaintiff has filed an action of Antitrust Law violations *Larry Golden v. Apple, Inc. et al* on June 16, 2020, at the United States District Court for the District of South Carolina; Greenville Division (Case No. 6:20-cv-02270) against defendants, Apple Inc. ("Apple"), Samsung Electronics, USA ("Samsung"), LG Electronics, USA, Inc. ("LG"), Qualcomm Inc.

("Qualcomm"), Ford Global Technologies, LLC ("Ford"), General Motors Company ("GM"), and, FCA US LLC ("FCA").

## GOOGLE SMARTPHONE SPECIFICATIONS / ANDROID PLATFORM

13.     Upon information and belief, Google is directly infringing Plaintiff's patented CMDC devices by making, using, offering for sale, selling and/or importing the aforementioned alleged infringing devices that have at a minimum, directly infringed Plaintiff's '287, '439, and '189 patents. to unjustly enrich itself.

14.     Upon information and belief, Google is jointly infringing Plaintiff's patented CMDC devices by offering for use, using, offering for sale, selling and/or importing as essential, Google's Android platform for use with Google's smartphones, and other Android smartphone devices i.e., Samsung, LG, Motorola, etc., that have at a minimum, directly infringed Plaintiff's '287, '439, and '189 patents. Android smartphones have permanent default Google-owned apps like Google search, Google Play, YouTube, Maps etc. The main Android framework is signed in through a Google account too. So, you need to have a Google account to use Android.

15.     The smartphone has come a long way since the first iPhone launched in 2007. While Apple's iOS is arguably the world's first smartphone operating system, Google's Android is by far the most popular. Android has evolved significantly since first being released on an HTC-made T-Mobile device in 2008.

16.     It wasn't until 2005 that Google purchased Android, Inc., and while there wasn't much info about Android at the time, many took it as a signal that Google would use the platform to enter the phone business. Eventually, Google did enter the smartphone business — but not as a hardware manufacturer. Instead, it marketed Android to other manufacturers, first

catching the eye of HTC, which used the platform for the first Android phone, the HTC Dream, in 2008.

17.     Upon information and belief, Google has copied the "product grouping" strategy of the Plaintiff (Golden) for a communicating, monitoring, detecting, and controlling (CMDC) device, i.e., Google's smartphone products are grouped together by "common features of design similarities". As illustrated below, Google's smartphones are basically the same.

18.     Therefore, when analyzing the specifications, features, and functionality of Google's smartphones as a complete product, and not merely identifying the individual infringing processes; there is a strong likelihood that if one of Google's smartphones infringes Plaintiff's claimed invention of a CMDC device; it can be perceived that all of Google's smartphones infringes Plaintiff's claimed invention of a CMDC device as a 'whole' product.

**GOOGLE PIXEL 5 VS. PIXEL 4A WITH 5G VS. PIXEL 4**

| Category | Pixel 5 | Pixel 4A with 5G | Pixel 4A |
|---|---|---|---|
| Network | 5G | 5G | 4G |
| Screen | 6-inch flexible OLED display at 432 ppi | 6.2-inch OLED display at 413 ppi | 5.8-inch OLED display at 443 ppi |
| Refresh Rate | 90 Hz | 60 Hz | 60 Hz |
| Resolution | 1080 x 2340 | 1080 x 2340 | 1080 x 2340 |
| Battery | 4080 mAh | 3885 mAh | 3140 mAh |
| Front Camera | 8 megapixels | 8 megapixels | 8 megapixels |
| Rear Camera | 12.2-megapixel dual-pixel (16-megapixel ultrawide) | 12.2-megapixel dual-pixel (16-megapixel ultrawide) | 12.2-megapixel dual-pixel |
| Camera Features | Night Sight, Portrait Light, Cinematic Pan, Live HDR+ | Night Sight, Portrait Light, Cinematic Pan, Live HDR+ | Night Sight, Live HDR+ |
| RAM | 8GB | 6GB | 6GB |

| Category | Pixel 5 | Pixel 4A with 5G | Pixel 4A |
|---|---|---|---|
| Processor | Qualcomm Snapdragon 765G | Qualcomm Snapdragon 765G | Qualcomm Snapdragon 730G |
| Storage | 128GB | 128GB | 128GB |
| Audio | Stereo speakers, USB-C audio | Stereo speakers, USB-C audio, 3.5mm headphone jack | USB-C audio, 3.5mm headphone jack |
| Price | $699 | $499 | $349 |
| Wireless Charging | Yes | No | No |
| Water Resistant | Yes | No | No |
| Colors | Green, Black | White, Black | Black |
| Operating System | Pre-loaded with Android 11 | Pre-loaded with Android 11 | Pre-loaded with Android 10 |

**GOOGLE PIXEL 3 SERIES SPEC COMPARISON**

| Specification | Pixel 3A | Pixel 3A XL | Pixel 3 | Pixel 3 XL |
|---|---|---|---|---|
| Display | 5.6 inches | 6.0 inches | 5.5 inches | 6.3 inches |
| Resolution | 2220 x 1080 | 2160 x 1080 | 2160 x 1080 | 2960 x 1440 |
| Processor | Snapdragon 670 (2.0GHz and 1.7GHz, octa-core) | Snapdragon 670 (2.0GHz and 1.7GHz, octa-core) | Snapdragon 845 (2.5GHz and 1.6GHz, octa-core) | Snapdragon 845 (2.5GHz and 1.6GHz, octa-core) |
| RAM | 4GB | 4GB | 4GB | 4GB |
| Storage | 64GB | 64GB | 64GB, 128GB | 64GB, 128GB |
| Rear camera | 12 megapixels | 12 megapixels | 12 megapixels | 12 megapixels |
| Front camera | 8 megapixels | 8 megapixels | 8 megapixels, 8 megapixels(wide) | 8 megapixels, 8 megapixels(wide) |

| Specification | Pixel 3A | Pixel 3A XL | Pixel 3 | Pixel 3 XL |
|---|---|---|---|---|
| Battery | 3,000mAh | 3,700mAh | 2,915mAh | 3,430mAh |
| Water protection | N/A | N/A | IPX8 | IPX8 |
| Wireless charging? | No | No | Yes | Yes |
| Ports? | USB-C, 3.5mm headphone jack | USB-C, 3.5mm headphone jack | USB-C | USB-C |
| Weight | 0.32 pounds | 0.37 pounds | 0.33 pounds | 0.4 pounds |
| Dimensions (in.) | 6.0 x 2.80 x 0.30 | 6.30 x 3.00 x 0.30 | 5.70 x 2.70 x 0.30 | 6.20 x 3.00 x 0.30 |
| Starting price | $399.00 | $479.00 | $799.00 | $899.00 |
| Operating System | Pre-loaded Android | Pre-loaded Android | Pre-loaded Android | Pre-loaded Android |

## SENSOR TYPES SUPPORTED BY THE "*ANDROID*" PLATFORM

| Type Accelerometer | Hardware | Measures the acceleration force in m/s² that is applied to a device on all three physical axes (x, y, and z), including the force of gravity. | Motion detection (shake, tilt, etc.). |
|---|---|---|---|
| Type Ambient Temperature | Hardware | Measures the ambient room temperature in degrees Celsius (°C). See note below. | Monitoring air temperatures. |
| Type Gravity | Software or Hardware | Measures the force of gravity in m/s² that is applied to a device on all three physical axes (x, y, z). | Motion detection (shake, tilt, etc.). |
| Type Gyroscope | Hardware | Measures a device's rate of rotation in rad/s around each of the three physical axes (x, y, and z). | Rotation detection (spin, turn, etc.). |
| Type Light | Hardware | Measures the ambient light level (illumination) in lx. | Controlling screen brightness. |

11

| Type Linear Acceleration | Software or Hardware | Measures the acceleration force in m/s² that is applied to a device on all three physical axes (x, y, and z), excluding the force of gravity. | Monitoring acceleration along a single axis. |
|---|---|---|---|
| Type Magnetic Field | Hardware | Measures the ambient geomagnetic field for all three physical axes (x, y, z) in μT. | Creating a compass. |
| Type Orientation | Software | Measures degrees of rotation that a device makes around all three physical axes (x, y, z). As of API level 3 you can obtain the inclination matrix and rotation matrix for a device by using the gravity sensor and the geomagnetic field sensor in conjunction with the get Rotation Matric () method. | Determining device position. |
| Type Pressure | Hardware | Measures the ambient air pressure in hPa or mbar. | Monitoring air pressure changes. |
| Type Proximity | Hardware | Measures the proximity of an object in cm relative to the view screen of a device. This sensor is typically used to determine whether a handset is being held up to a person's ear. | Phone position during a call. |
| Type Relative Humidity | Hardware | Measures the relative ambient humidity in percent (%). | Monitoring dewpoint, absolute, and relative humidity. |
| Type Rotation Vector | Software or Hardware | Measures the orientation of a device by providing the three elements of the device's rotation vector. | Motion detection and rotation detection. |
| Type Temperature | Hardware | Measures the temperature of the device in degrees Celsius (°C). This sensor implementation varies across devices and this sensor was replaced with the **Type—Ambient Temperature** sensor in API Level 14 | Monitoring temperatures. |

❖ **BIOMETRICS**: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris).

❖ **DISABLING LOCK MECHANISM:** Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. When setting the pattern, you must drag your finger along lines on the screen between different nodes. Afterward, to unlock the phone, you'll need to replicate the pattern drawn. If you fail to solve the

pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account. If you can't log in, you'll have to employ some other methods to restore control of your phone.

❖ **CHEMICAL, BIOLOGICAL, RADIOLOGICAL, AND NUCLEAR (CBRN) DETECTION:** Through collaboration and innovation, the Defense Threat Reduction Agency has integrated its powerful, hazard-awareness-and-response tools into the *Android Tactical Assault Kit (or the Android Team Awareness Kit, ATAK)*. ATAK is a digital application available to warfighters throughout the DoD. Built on the Android operating system, ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins.

❖ **HEART RATE:** *Android Team Awareness Kit, ATAK* provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents.

❖ **NEAR FIELD COMMUNICATION (NFC):** Pixel™, Phone by Google - Turn NFC on/off. Near Field Communication (NFC) allows the transfer of data between devices that are a few centimeters apart, typically back-to-back. NFC must be turned on for NFC-based apps (e.g., Tap to Pay) to function correctly. NFC is a set of short-range wireless technologies, typically requiring a distance of 4cm or less to initiate a connection. NFC allows you to share small payloads of data between an NFC tag and an Android-powered device, or between two Android-powered devices. Tags can range in complexity.

❖ **WARFIGHTERS:** The U.S. armed forces and their interagency and coalition partners value *Android Team Awareness Kit, ATAK* and the common operating picture it provides. DTRA continues to develop CBRN-specific plug-in capabilities to support warfighters on the battlefield.

---

## GOOGLE'S JOINT INFRINGEMENT WITH APPLE INC.

19.    According to Gurman, 2020, "The U.S. government's antitrust assault against Google reveals new details about a secretive, multibillion-dollar deal between the internet giant and Apple Inc., the world's largest technology company. The Justice Department's lawsuit, filed Tuesday, targets paid deals Google negotiates to get its search engine to be the default on browsers, phones and other devices. The biggest of these is an agreement that makes Google search the default on iPhones and other Apple devices."

20.     The U.S. government said Apple Chief Executive Officer Tim Cook and Google
CEO Sundar Pichai met in 2018 to discuss the deal. After that, an unidentified senior Apple
employee wrote to a Google counterpart that "our vision is that we work as if we are one
company."

21.     The DOJ also cited internal Google documents that call the Apple search deal a
"significant revenue channel" for the search giant and one that, if lost, would result in a "Code
Red" scenario. That's because nearly half of Google search traffic in 2019 came from Apple
products, according to the lawsuit.

22.     Google pays Apple billions of dollars a year to make its search product the default
option, according to analyst estimates. That means when a user buys a new iPhone or other
Apple device, the built-in search engine in the Safari browser is Google.

23.     The DOJ suit cited estimates that Apple gets $8 billion to $12 billion annually
from Google through the agreement. Apple's income from the search deal is believed to be part
of the company's growing Services segment, a key metric Apple has highlighted to investors and
analysts in recent years.

Gurman, Mark (2020, Oct. 20). *Apple, Google worked as 'one company' on search deal,
U.S. says.* https://www.bloomberg.com/news/articles/2020-10-20/apple-google-worked-
as-one-company-on-search-deal-u-s-says

**Joint Infringement**

24.     Upon information and belief, Google and Apple are jointly infringing Plaintiff's
patented CMDC devices by offering for use, using, offering for sale, selling and/or importing as
essential, Google's Search for use with Google and Apple smartphones, that have at a minimum,
directly infringed independent claims 1, 2, and 3 of the '189 patent; independent claims 13, 14,
15, and 23 of the '439 patent; and, independent claims 4, 5, and 6 of the '287 patent.

25.     Plaintiff has alleged that Apple is infringing Plaintiff's communicating, monitoring, detecting, and controlling (CMDC) device in a related case *Larry Golden v. Apple, Inc. et al* filed on 12/16/2020 at the United States District Court for the District of South Carolina; Greenville Division (Case No. 6:20-cv-04353) against defendants, Apple Inc. et al.

26.     Plaintiff has also filed a case *Larry Golden v. Apple, Inc. et al* on 06/16/2020 at the United States District Court for the District of South Carolina; Greenville Division (Case No. 6:20-cv-02270) against defendants, Apple Inc. et al. for Antitrust Law Violations.

## GOOGLE'S JOINT INFRINGEMENT WITH QUALCOMM INC.

27.     According to a Qualcomm press release (2020), "Qualcomm Technologies, Inc. and Google announced their collaboration to enhance and extend Project Treble with the goal of enabling more devices with Qualcomm® Snapdragon™ mobile platforms to run the latest Android OS.  The enhancements are intended to enable Original Equipment Manufacturers (OEMs) to upgrade their Snapdragon based devices to the latest Android OS without modifying Qualcomm Technologies' chipset-specific software and to use a common Android software branch to upgrade devices based on a wide range of Snapdragon mobile platforms across Qualcomm Technologies' portfolio.  These enhancements are designed to reduce the time and resources required to upgrade Snapdragon based devices to the latest Android OS version."

28.     As part of this collaboration with Google, Qualcomm Technologies will now support four Android OS versions and four years of security updates for all Snapdragon platforms utilizing the Project Treble enhancements, starting with the new Snapdragon 888 Mobile Platform. These initiatives are designed to enable faster Android OS upgrades with fewer resources and a predictable software lifecycle for Snapdragon based devices, which together are

expected to result in more consumers with Snapdragon based devices running the latest Android OS version.

29.    "Google continues to work closely with our technology partners to increase the freshness of the Android ecosystem. Through this collaboration with Qualcomm Technologies, we expect that Android users will have the latest OS upgrades and greater security on their devices," said David Burke, vice president of Android engineering, Google.

30.    "We are excited to work with Google to extend our support for Android OS and security updates on future Snapdragon mobile platforms utilizing the Project Treble enhancements," said Kedar Kondap, vice president, product management, Qualcomm Technologies, Inc.

**Terminology**

- Google's android operating system; same as "operating system".
- Google's android operating system; same as "computer program".
- Google's android operating system; same as "software".
- Qualcomm's chipset; used interchangeably as "processor".
- Qualcomm's chipset; used interchangeably as "central processing unit".
- Qualcomm's chipset; used interchangeably as "wireless technology" (WiFi, 3G, 4G, 5G, LTE, and so on).

31.    An operating system is a computer program, works as interface between user and hardware and provides common services for computer programs. The entire process or functionality of computer system depends on the operating system. An operating system is a computer program that controls the execution of application programs and acts as an interface between the user of a computer and the computer hardware. The purpose of an operating system

is to provide an environment in which a user can execute programs in a convenient and efficient manner. https://www.geeksforgeeks.org/introduction-of-operating-system-set-1/

32.     A Central Processing Unit (CPU) is a machine that can execute computer programs. This broad definition can easily be applied to many early computers that existed long before the term "CPU" ever came into widespread usage. The term itself and its initialism have been in use in the computer industry at least since the early 1960s (Weik 1961). The form, design and implementation of CPUs have changed dramatically since the earliest examples, but their fundamental operation has remained much the same.

33.     An Operating System is the core software that allows applications to interface with the hardware. Operating Systems control the specific details of your system, presenting a more manageable interface for applications (and the user) to make use of. To use an analogy, the CPU is the brain, the OS is the mind. The mind cannot exist without a brain to store it, and the brain is just a useless lump without a mind to control it.

https://answers.yahoo.com/question/index?qid= 20090927101607AAiAJ42

34.     An SoC, or system-on-a-chip to give its full name, integrates almost all of these components into a single silicon chip. Along with a CPU, an SoC usually contains a GPU (a graphics processor), memory, USB controller, power management circuits, and wireless radios (WiFi, 3G, 4G LTE, and so on). Whereas a CPU cannot function without dozens of other chips, it's possible to build complete computers with just a single SoC. The number one advantage of an SoC is its size: An SoC is only a little bit larger than a CPU, and yet it contains a lot more functionality. If you use a CPU, it's very hard to make a computer that's smaller than 10cm (4 inches) squared, purely because of the number of individual chips that you need to squeeze in. Using SoCs, we can put complete computers in smartphones and tablets, and still have plenty of

space for batteries. https://www.extremetech.com/computing/126235-soc-vs-cpu-the-battle-for-the-future-of-computing.

**Joint Infringement**

35.     Upon information and belief, Google and Qualcomm are jointly infringing Plaintiff's patented CMDC devices by offering for use, using, offering for sale, selling and/or importing as essential, Google's Android platform for use with Qualcomm's SoCs, CPUs, etc. for smartphones that have at a minimum, directly infringed independent claims 1, 2, and 3 of the '189 patent; independent claims 13, 14, 15, and 23 of the '439 patent; and, independent claims 4, 5, and 6 of the '287 patent.

36.     Google developing its own phone processor would mean dumping the Qualcomm SoCs it usually uses. Of course, you can never truly be rid of Qualcomm: Google would presumably still need to use Qualcomm modems, something that even Apple still needs to do. There are other modem manufacturers out there—Samsung, Huawei, Mediatek—but Qualcomm's combination of patents and strong-arm licensing techniques has effectively locked its competitors out of the US and other markets.

37.     Plaintiff has alleged that Qualcomm is infringing Plaintiff's communicating, monitoring, detecting, and controlling (CMDC) device in a related case *Larry Golden v. Apple, Inc. et al.* filed on 12/16/2020 at the United States District Court for the District of South Carolina; Greenville Division (Case No. 6:20-cv-04353) against defendants, *Apple Inc. et al.*

38.     Plaintiff has also filed a case *Larry Golden v. Apple, Inc. et al* on 06/16/2020 at the United States District Court for the District of South Carolina; Greenville Division (Case No. 6:20-cv-02270) against defendants, *Apple Inc. et al.* for Antitrust Law Violations.

# CLAIM CONSTRUCTION

*"Inter Partes Review* (IPR): *Department of Homeland Security vs. Larry Golden;* Case No.: IPR2014-00454 (Patent RE43,990; Claims 11, 74, & 81); Final Written Decision entered on October 1, 2015. "In the 'Decision to Institute', we construed certain claim terms. Those constructions are reproduced in the chart below:

| Claim Term | Construction |
|---|---|
| "built in, embedded" (claim 74) | "something is included within, incorporated into, disposed within, affixed to, connected to, or mounted to another device, such that it is an integral part of the device" |
| "communication device" (claim 81) | "monitoring equipment" |

Dec. to Inst. 11-16

    39.    "No party challenges these constructions. Both of these terms were modified or removed in the amendment. To the extent that any of these constructions remain relevant after the amendment, we see no reason to modify them... [w]e further determined that no explicit construction was necessary for any other claim terms. Dec. to Inst. 10-11. Based on the record adduces during trial, we see no need to construe any other terms..."

    40.    "Beginning with the claim preamble amendment, the preamble of claim 11 originally read: "A communication device of at least one of *a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal at a monitoring site* for monitoring products for communication therebetween, comprising...." In claim 154, the language in italics has been eliminated and replaced with "the products grouped together by common features in the product grouping category of design similarity (e.g., computer terminal, personal computer (PC)) ..." Patent Owner contends that this new language is consistent with

words found in the disclosure of the '118 application. Mot. To Amend 4. Patent Owner further

contends that this new language is broad enough to include the removed items, such as cell

phones and smart phones, because those items are "species terms" that are "included in the genus

'monitoring equipment' and 'communication device' when the clause 'products grouped together

by common features in the product groupings category of design similarity' is included." *Id*.

Patent Owner argues that "[t]he specific devices removed, such as the cell phones and smart

phones would be recognized by one of ordinary skill in the art as a type of communication

device or monitoring equipment because cell phones and smartphones are devices that are

capable of communication and are capable of receiving signals." *"Inter Partes Review* (IPR):

*Department of Homeland Security vs. Larry Golden;* Case No.: IPR2014-00454 (Patent

RE43,990; Claims 11, 74, & 81); Final Written Decision entered on October 1, 2015.


## COUNT I

### (Infringement of the '287 Patent)

41.     Golden realleges and incorporates herein the allegations set forth in Paragraphs 1-

40.

42.     On information and belief, Google is jointly, directly, indirectly and/or under the

'doctrine of equivalents', infringing at least independent claims 4, 5, and 6 of the '287 patent.

The alleged infringing products are: Google Pixel smartphones 3, 3XL, 3a, 3aXL, 4a, 4a(5G),

and 5.

43.     As set forth in Golden's preliminary infringement contentions that Google is

making, using, offering for sale, selling and/or importing Plaintiff's CMDC device have at a

minimum directly infringed the '287 patent and Google is thereby liable for infringement of the

'287 patent pursuant to 35 U.S.C. § 271. Google have caused damage to Golden, which infringement and damage will continue unless and until Google is enjoined.

44.     The alleged infringement of Golden identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

## COUNT II
### (Infringement of the '439 Patent)

45.     Golden realleges and incorporates herein the allegations set forth in Paragraphs 1-44.

46.     On information and belief, Google is jointly, directly, indirectly and/or under the 'doctrine of equivalents', infringing at least independent claims 13, 14, 15, and 23 of the '439 patent. The alleged infringing products are: Google Pixel smartphones 3, 3XL, 3a, 3aXL, 4a, 4a(5G), and 5.

47.     As set forth in Golden's preliminary infringement contentions that Google is making, using, offering for sale, selling and/or importing Plaintiff's CMDC device have at a minimum directly infringed the '439 patent and Google is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Google have caused damage to Golden, which infringement and damage will continue unless and until Google is enjoined.

48.     The alleged infringement of Google identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

## COUNT III

### (Infringement of the '189 Patent)

49.     Golden realleges and incorporates herein the allegations set forth in Paragraphs 1-
48.

50.     On information and belief, Google is jointly, directly, indirectly and/or under the
'doctrine of equivalents', infringing claims 1, 2 & 3 of the '189 patent. The alleged infringing
products are: Google Pixel smartphones 3, 3XL, 3a, 3aXL, 4a, 4a(5G), and 5.

51.     As set forth in Golden's preliminary infringement contentions that Google is
making, using, offering for sale, selling and/or importing Plaintiff's CMDC device have at a
minimum directly infringed the '189 patent and Google is thereby liable for infringement of the
'189 patent pursuant to 35 U.S.C. § 271. Google have caused damage to Golden, which
infringement and damage will continue unless and until Google is enjoined.

52.     The alleged infringement of Google identified in this Count has caused
irreparable injury to Golden for which remedies at law are inadequate. Considering the balance
of the hardships between the parties, a remedy in equity, such as a permanent injunction is
warranted and such a remedy would be in the public interest.


## CLAIM CHART

53.     The following Claim Chart is an illustration of literal infringement. At least one of
the alleged infringing products of Google (i.e., Google Pixel smartphones 3, 3XL, 3a, 3aXL, 4a,
4a(5G), or 5) is representative of all the alleged infringing products of Google asserted in this
complaint. At least one of the alleged infringing products of Google (Google Pixel 5) is
illustrated to show how the Google Pixel 5 allegedly infringes on at least one of the asserted
independent claims of each of the patents-in-suit ('287, '439, and '189 patents).

| **Google Pixel 5 Smartphone** | **Patent #: 10,163,287; Independent Claim 5** | **Patent #: 9,589,439; Independent Claim 23** | **Patent #: 9,096,189; Independent Claim 1** |
|---|---|---|---|
|  | A monitoring device, comprising: | A cell phone comprising: | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: |
| CPU: Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver) System-on-a-chip: Qualcomm Snapdragon 765G | at least one central processing unit (CPU); | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front-end processor for communication between a host computer and other devices; |
| Ambient Temperature sensor supported by the Android platform. Measures the ambient room temperature in degrees Celsius (°C). Monitoring air temperatures. Monitoring air temperatures. | at least one temperature sensor in communication with the at least one CPU for monitoring temperature; | X | X |

| | | | |
|---|---|---|---|
| Gravity sensor supported by the Android platform. Measures the force of gravity in m/s2 that is applied to a device on all three physical axes (x, y, z). Motion detection (shake, tilt, etc.). | at least one motion sensor in communication with the at least one CPU; | X | X |
| Light sensor supported by the Android platform. Measures the ambient light level (illumination) in lx. Controlling screen brightness. Screen: 6-inch flexible OLED display at 432 ppi | at least one viewing screen for monitoring in communication with the at least one CPU; | X | X |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | at least one global positioning system (GPS) connection in communication with the at least one CPU; | at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection; | at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection, or GPS connection; |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU; | wherein at least one of... WiFi connection, internet connection, radio frequency (RF) connection, cellular connection... capable of signal communication with the transmitter or the receiver; | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group... of satellite, Bluetooth, WiFi... |

| | | | |
|---|---|---|---|
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU; | at least one of a… Bluetooth connection, WiFi connection, internet connection… cellular connection… short range radio frequency (RF) connection, or GPS connection; | X |
| Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. To set, drag your finger along lines on the screen. To unlock the phone, replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account.

Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone. | at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device; | whereupon the cell phone is interconnected to the cell phone detection device to receive signals or send signals to lock or unlock doors, to activate or deactivate security systems, to activate or deactivate multi-sensor detection systems, or to activate or deactivate the cell phone detection device; | X |
| Pixel phones use USB-C with USB 2.0 power adapters and cables. To charge your phone with a USB-A power adapter, use a USB-C to USB-A cable. | at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device; | X | X |

| | | | |
|---|---|---|---|
| BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris). | at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device; | wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature such that the cell phone is locked by the biometric lock disabler to prevent unauthorized use; and | wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the handheld, the PDA, the laptop or the computer terminal is locked by the biometric lock disabler to prevent unauthorized use |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; | the cell phone is at least a fixed, portable or mobile communication device interconnected to the cell phone detection device, capable of wired or wireless communication therebetween; and | the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween... |

26

| | | | |
|---|---|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; | wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | at least one radio-frequency near-field communication (NFC) connection in communication with the at least one CPU… | X | X |
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or… detect at least one of a chemical biological… agent such that the communication device is capable of communicating, monitoring, detecting, and controlling. | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device;<br><br>a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device; |

| | | | |
|---|---|---|---|
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | X | X | whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock doors, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | X | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection… short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products; |

| | | | |
|---|---|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | X | whereupon a signal sent to the receiver of the cell phone detection device from at least one of the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes at least one of location data or sensor data to be sent to the cell phone. | X |

## PRAYER FOR RELIEF

Wherefore, Golden respectfully requests that this Court enter:

A.     A judgment in favor of Golden that the defendant has infringed at least one or more claims of the '287 Patent, the '439 Patent, and the '189 Patent as aforesaid;

B.     A permanent injunction enjoining the defendant, its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents and all others acting in active concert or privity therewith from direct, indirect and/or joint infringement of the '287, '439, and '189 patents as aforesaid pursuant to 35 U.S.C. § 283;

C.     A judgment and order requiring the defendant to pay Golden its damages with pre- and post-judgment interest thereon pursuant to 35 U.S.C. § 284;

D.     As set forth in Golden's preliminary infringement contentions that the Defendant in this case is making, using, offering for sale, selling and/or importing the aforementioned

alleged infringing devices that have at a minimum, directly infringed the '287, '439, and '189 patents. The Defendant is thereby liable for infringement of the '287, '439, and '189 patents pursuant to 35 U.S.C. § 271. The Defendant has caused damage to Golden, which infringement and damage will continue unless and until the Defendant is enjoined.

     E.    Any and all further relief to which the Court may deem Golden entitled.

## DEMAND FOR JURY TRIAL

Golden requests a trial by jury on all issues so triable by right pursuant to Fed. R. Civ. P. 38. A right guaranteed under the Seventh Amendment of the Constitution.

Respectfully submitted,

S/ _Larry Golden_ _____ Date: 01 /25 /2021

Larry Golden, Petitioner, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

(H) 864-288-5605 / (M) 864-992-7104

atpg-tech@charter.net

Exhibit F

RECEIVED

FORM 12.  Informal Opening Brief (District Court, Court of International Trade,
and Court of Federal Claims)

Form 12 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## INFORMAL BRIEF OF APPELLANT

Case Number: 2022-1267

Short Case Caption: Golden v. Google LLC

Name of Appellant: Larry Golden

**Instructions:** Read the Guide for Unrepresented Parties before completing this form. Answer the questions as best as you can. Attach additional pages as needed to answer the questions. This form and continuation pages may not exceed 30 pages.

Attach a copy of the trial court's opinion, order, and/or judgment. You may also attach other record material as an appendix. Any attached material should be referenced in answer to the below questions. Please redact (erase, cover, or otherwise make unreadable) social security numbers or comparable private personal identifiers that appear in any attachments you submit.

1. Have you ever had another case before this court?   ☑ Yes   ☐ No
   If yes, state the name and number of each case.

   Case No. 2022-1196 Golden v. US
   Case No. 2022-1229; Golden v. Apple Inc.

2. Did the trial court incorrectly decide or fail to take into account any facts?
   ☑ Yes   ☐ No
   If yes, what facts?

   35 U.S.C. 281. REMEDY FOR INFRINGEMENT OF PATENT. "A patentee shall have remedy by civil action for infringement of his patent."

   35 U.S. Code § 271. (a)-[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent. (b)-Whoever actively induces infringement of a patent shall be liable as an infringer. (c)-Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent...

RECEIVED

MAR 0 3 2022

United States Court of Appeals
For The Federal Circuit

FORM 12.  Informal Opening Brief (District Court, Court of International Trade, and Court of Federal Claims)

Form 12 (p. 2)
July 2020

3. Did the trial court apply the wrong law? ☑ Yes    ☐ No

If yes, what law should be applied?

> According to the United States District Court District of South Carolina, if the prose plaintiff fails to procedurally state a claim, it is the responsibility of the Judges of this court [to] outline proper procedure so that the pro se party will not be deprived of a fair opportunity to present his or her case", See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975)
>
> Even after Twombly and Iqbal, "in determining whether a complaint states a claim that is plausible, the court is required to proceed 'on the assumption that all the [factual] allegations in the complaint are true, [e]ven if their truth seems doubtful." (quoting Twombly, 550 U.S. at 556).
>
> At the pleading stage, "Plaintiff is not required to plead 'direct infringement of each and every element of the allegedly infringed claim." (quoting Crypto Res., LLC v. Assa Abloy, Inc., 236 F. Supp. 3d 671, 686 (E.D.N.Y. 2017))
>
> In Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337 (Fed. Cir. 2018), the Federal Circuit expressly stated: "the FRCP do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." Id. at 1350 (quoting In re Bill of Lading, 681 F.3d 1323, 1339 (Fed. Cir. 2012).
>
> "In light of his pro se status, we cannot say that he has failed to allege a patent infringement claim as a matter of law on the face of the complaint ...See McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1356-58 (Fed. Cir. 2007)."

4. Did the trial court fail to consider important grounds for relief?

☑ Yes    ☐ No

If yes, what grounds?

> 35 U.S.C. § 282 establishes a presumption of patent validity that an alleged patent infringer must overcome by clear and convincing evidence in all circumstances.
>
> On June 9, 2011, the U.S. Supreme Court issued its much-anticipated decision in Microsoft v. i4i. At issue was whether patents would continue to enjoy a strong presumption of validity during litigation. More specifically, whether the clear and convincing evidence standard necessary to invalidate a patent would be overturned.
>
> Microsoft had challenged that standard; arguing that a lower standard of "preponderance of the evidence" should be sufficient. The Supreme Court unanimously rejected Microsoft's argument and affirmed the Federal Circuit's long-standing strong presumption of proof. As a result, the clear and convincing evidence standard remains.
>
> The Trial Court fail to consider the presumption of validity of Plaintiff-Appellant's patents.

5. Are there other reasons why the trial court's decision was wrong?

☑ Yes    ☐ No

If yes, what reasons?

> All of Plaintiff-Appellant's inventions has "use" and are not frivolous. "A frivolous invention is an invention with no use. U.S. patents are only granted for a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof' (35 USC 101).
>
> Plaintiff-Appellant's fourteen (14) inventions assembled as a CMDC Device (i.e., smartphone, laptop, smartwatch, new and improved cell phone, etc.); with the "secondary" inventions designed and developed to be integrated with the CMDC, are:
>
> 1-Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., smartphone) – Claim 23 of the '439 Patent. 2-Central Processing Units for CMDC Device – Claim 5 of the '287 Patent. 3-Camera CBR Sensor(s) for CMDC Device – Claim 4 of the '189 Patent. 4-Smartwatch CBR Detector for CMDC Device – Claim 19 of the '439 Patent. 5-Embedded CBRN Sensors for CMDC Device – Claim 16 of the '439 Patent. 6-Interchangeable Sensors for CMDC Device – Claim 20 of the '439 Patent. 7-NFC CBR Tag for CMDC Device – Claim 21 of the '439 Patent. 8-Remote/Electrical Lock for CMDC Device – Claim 125 of the '990 Patent. 9-Pre-Programmed Lock for CMDC Device – Claim 1 of the '287 Patent. 10-Fingerprint/Face Recognition for CMDC Device – Claim 1 of the '619 Patent. 11-Stall Stop, Slowdown for CMDC Device – Claim 11 of the '891 Patent. 12-Vehicle Monitoring with CMDC Device – Claim 44 of the '891 Patent. 13-Connect Vehicle with CMDC Device – Claim 4 of the '287 Patent. 14-Internet-of-Things with CMDC Device – Claim 11 of the '619 Patent.

**FORM 12. Informal Opening Brief (District Court, Court of International Trade, and Court of Federal Claims)**

Form 12 (p. 3)
July 2020

6. What action do you want this court to take in this case?

Plaintiff-Appellant has stated a plausible claim for direct infringement by specifically identifying the Defendant's products and alleging that they perform the same unique function as Plaintiff-Appellant's patented inventions. The Defendant in this case is allegedly liable for infringement of the asserted patents-in-suit under 35 U.S.C. § 271.

As set forth in Plaintiff-Appellant's preliminary infringement contentions that Google is making, using, offering for sale, selling and/or importing Plaintiff-Appellant's CMDC device have at a minimum directly infringed the '287, '439, & '189 patents and Google is thereby liable for infringement of the '287, '439, & '189 patents pursuant to 35 U.S.C. § 271. Google have caused damage to Plaintiff-Appellant, which infringement and damage will continue unless and until Google is enjoined.

The alleged infringement of Google identified in the Trial Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a preliminary injunction is warranted and such a remedy would be in the public interest.

Date: 03/02/2022

Signature: *Larry Golden*

Name: Larry Golden

Pursuant to the Federal Circuit's "ORDER", in *Golden v. Google LLC.*, Case No. 22-1267; Dkt. No. 8; filed 02/17/2022, Plaintiff-Appellant is submitting this corrected informal brief, not to exceed 30 pages.

This Motion is in compliance with FEDERAL RULE OF APPELLATE PROCEDURE 32: Briefs: (a)(4)(5)(6) & (7)(A) not to exceed 30 pages.

This dismissal is in favor of the Defendant, Google LLC; on grounds independent of the underlying merits of the action (e.g., the Plaintiff-Appellant's infringement claims; the validity of Plaintiff-Appellant's asserted patents and patent claims; and, the Defendant's merits-based defenses).

"Accordingly, the Report recommend dismissal of Plaintiff's complaint because *inter alia* the Plaintiff's complaint contains a lengthy history of his prior actions in this Court… but contains few factual allegations relating to the alleged infringement [1] …

---

[1] Case 6:21-cv-00244-JD in *Golden v. Google LLC* "OBJECTION TO THE MAGISTRATE'S REPORT AND RECOMMENDATION: HISTORY OF PLAINTIFF'S RELATED CASES" Date Filed 04/22/21 Dkt. No. 18 "The purpose of Plaintiff's claim charts is to determine if any infringement has occurred. For infringement analysis & litigation, Plaintiff's claim charts are designed to help confirm that each and every limitation of the claim is present in a product, service, or standard. For validity analysis in litigation, Plaintiff's claim charts are designed to help confirm the novelty of a claim relative to prior art. Plaintiff's claim construction and claim interpretation charts included in this Complaint, shows patent specifications and/or technical literature citations with proper interpretations of the language of a claim."

4

RECEIVED

MAR 03 2022

United States Court of Appeals
For The Federal Circuit

"[I]n the absence of specific objections to the Report and Recommendation

of the magistrate judge, this Court is not required to give any explanation for

adopting the recommendation … In light of the vague conclusory allegations

in the complaint in this action and Golden's attempt to circumvent the prior

dismissals of his patent infringement claims, the instant matter is subject to

summary dismissal as frivolous." "IT IS, THEREFORE, ORDERED that

Plaintiff's Complaint is dismissed with prejudice and without the issuance of

service of process." In the United States District Court for the District of

South Carolina—Greenville Division, in *Larry Golden v. Google LLC*, Case

6:21-cv-00244-JD Date Filed 11/02/21 Entry Number 21.

## STATEMENT MADE TO THE APPELLATE COURT

Plaintiff-Appellate has devoted 20 years to servicing his country by way of

offering strategics in the form of economic stimulus packages to restore our

Nation's economy after the 9/11 attacks.

Plaintiff-Appellate spent 5 years (2002-2007) describing and explaining to

government the technology [products] needed for assembly [product grouping]; to

successfully achieve the desired outcome of the economic stimulus packages. (e.g.,

through e-mail correspondence, read-ahead documents, request for information,

request for proposals, DHS visits, SBIR road tours, industry day conference, symposiums, phone conversations, letters, implied-in-fact contracts, etc.)

The Department of Homeland Security issued its first 'request for proposal' for the assembly of Plaintiff-Appellant's technology in 2007 (*DHS S&T Cell-All Ubiquitous Biological & Chemical Sensing; BAA07-10*).

Plaintiff-Appellant responded to the request for proposal and reminded the DHS that Plaintiff-Appellant has the technology they were seeking patented. The DHS awarded contracts to Apple, Samsung, LG, & Qualcomm in 2008 for the assembly of Plaintiff-Appellant's inventions covered in United States patents.

Plaintiff-Appellant initially intended to file the first case against the government in 2013 under Section 1491 Tucker Act; "Government "Taking" of Private Property Under the Fifth Amendment Clause of the United States Constitution, without paying just compensation.[2] In 2014 the COFC stayed the "takings" claim and ordered the parties to move forward on the infringement.

---

[2] *Supreme Court opinion from the late nineteenth century: Nothing in this history suggests that personal property was any less protected against physical appropriation than real property. As this Court summed up in James v. Campbell, 104 U.S. 356, 358 (1882), a case concerning the alleged appropriation of a patent by the Government: "[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use without compensation land which has been patented to a private purchaser."*

Plaintiff-Appellant won't go into all of dirty and under handed things the COFC, DHS, DOJ, and SCDC has done, and is still doing to prejudice my cases, because it is known, or should be known, their behavior is most likely because Plaintiff-Appellant is an African American Inventor.

Plaintiff-Appellant claims he is the Inventor of the CMDC device (i.e., smartphone or new and improved cell phone). Plaintiff-Appellant believes the Courts are basing their "frivolous" theory on *"Blacks are only two-third human beings and is therefore incapable of inventing"*.

Plaintiff-Appellant's cases could have been settled years ago. All the government and any of the defendants in any of the cases pending needed to do is present evidence that any one of them invented the smartphone or new and improved cell phone.

Instead of the government and the defendants in the cases pending, fail to present evidence that at least one of them holds the patent(s) for the smartphone or new and improved cell phone. The Trial Court and government have spent years accusing Plaintiff-Appellant of presenting complaints that exceeds the page limit, enhancing the complaints, disobeying court orders, not presenting enough factual allegations, an antitrust case that is really an infringement case, an infringement case that is duplicative of a pending case, trying to circumvent previous dismissals, government agencies (DHS & DOJ) not *persons* qualified to petition the PTAB for

*inter pates review*, presenting references in an IPR trial that do not antedate

Plaintiff-Appellant's patents; and, of course, the case is *frivolous* because no

African American could have possibly invented the smartphone.

It is not by chance the government and third-party contractors (Apple, LG,

Samsung, & Qualcomm) developed and assembled the smartphone. They followed

my instructions and specifications for the CMDC device (smartphone) to the letter.

Google duplicated the process and is now being protected from liability.

We all know that the likelihood of the government and any of the defendants

in any of the cases pending can present evidence that any one of them invented the

smartphone or new and improved cell phone, is highly improbable because the

defendants are paying Qualcomm 5% royalty on each smartphone sold. Charging

royalties based on the price of a handset is unreasonable and contrary to US law. [3]

---

[3] Judge Lucy Koh of the US District Court of the Northern District of California in her
decision in *Federal Trade Commission v Qualcomm Incorporated* (5:17-cv-0220); determined
that charging royalties based on the price of a handset was unreasonable and contrary to US
law… Under the supply agreement, the handset makers pay a per-chip price to buy the chips, but
under the SULA, the handset makers pay royalties of 5% on the price of each phone sold,
regardless of whether a Qualcomm chip is used. Plaintiff-Appellant believes Qualcomm's 5%
royalty rate on the price of each phone sold is a species of unfair competition… The Federal
Trade Commission Act bans "unfair methods of competition" and "unfair or deceptive acts or
practices." The Supreme Court has said that all violations of the Sherman Act also violate the
FTC Act. (Qualcomm does not own the patent(s) for the smartphone or improved cell phone)

## THE PARTIES

Plaintiff-Appellant Larry Golden is a citizen of South Carolina and has a

principal place of business and residence at 740 Woodruff Road, #1102,

Greenville, S.C. 29607.

On information and belief, the Defendant-Appellee Google is incorporated

in the State of Delaware with a principal place of business at 1600 Amphitheatre

Parkway, Mountain View, CA 94043 and does business in this judicial district by,

among other things, committing jointly, directly, and/or indirectly the tort of literal

patent infringement or infringement under the "doctrine of equivalents" giving rise

to this complaint. Google may be served at its principal place of business at 1600

Amphitheatre Parkway, Mountain View, CA 94043.

Google LLC is one of the largest technology companies in the world and

conducts product sales, and online search operations in the District of South

Carolina. Google LLC directly and/or indirectly distributes, markets, offers to

sell, sells, and/or imports the infringing Google Pixel Series of smartphones and

Google Android Operating Systems.

## HISTORY

According to the United States District Court—District of South Carolina:

Information on Representing Yourself in a Civil Action (Non-Prisoner) Revised

December 1, 2020; Notice to *Pro Se* Parties: "[w]henever a civil case is brought by

a prose party, the judges of this court outline proper procedure so that the *pro se*

party will not be deprived of a fair opportunity to present his or her case", *See*

*Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975).

From the very first filings in the Trial Court, the Judges' intent was to

dismiss Plaintiff-Appellant's case(s). The Court erred in dismissing Plaintiff-

Appellant's initial complaint three times as a duplicate of a related case filed in the

Court of Federal Claims. The CAFC determined the Case was not a duplicate.

When the Plaintiff-Appellant amended and refiled in the same case in the

SCDC court. The SCDC & CAFC dismissed the case without prejudice. The Court

erred in rejecting Plaintiff-Appellant's amended complaint.

When the Plaintiff-Appellant filed a new case against the same defendant's,

the Court erred in not allowing Plaintiff-Appellant's complaint to be docketed,

because the Court determined the complaint exceeded the minimum page count of

35 pages.

When Plaintiff-Appellant submitted the 34-page complaint, the Court

dismissed the case for not alleging enough factual allegations. The District Judge

overturned the 35-page requirement, but did nothing to help Plaintiff-Appellant

before dismissing the case. *See Platsky v. C.I.A.* 953 F.2d. 25, "[c]ourt errs if court

dismisses the *pro se* litigant pleadings without instruction of how pleadings are deficient and how to repair pleadings".

When the Plaintiff-Appellant filed a cause of action of "Antitrust Law Violations", the case was changed by the Court to "patent infringement" and dismissed for the same reasons the Court dismissed the previously filed patent infringement case. The District Judge overturned the patent infringement cause of action, but did nothing to help Plaintiff-Appellant before dismissing the case; "[t]he plaintiff may combine as many claims as the plaintiff has against a defendant in one case and may sue more than one defendant in one case if the claim involves all of the defendants..." *South Carolina Judicial Branch: C. Civil Procedure in Magistrates' Courts 1. The Pleadings ...*

The Court erred in dismissing Plaintiff-Appellant's case against Google as frivolous, "[t]he instant complaint seeks damages against Google for the same allegations that were dismissed as *frivolous* in Case Number 3, Case Number 4, and Case Number 5; however, it appears that this action represents Golden's attempt to re-litigate claims against Apple and/or Qualcomm and now asserts the same claims against Google."

The Court, in this current case, and all of the before mentioned cases, fail to state what makes Plaintiff-Appellant's cases "*fanciful and delusional*". A frivolous claim, often called a bad faith claim, refers to a lawsuit, motion or appeal that is

11

intended to harass, delay or embarrass the opposition, "[a] claim is frivolous

when the claim lacks any arguable basis either in law or in fact", *Neitze v.*

*Williams*, 490 U.S. 319, 325 (1989).

Even after *Twombly and Iqbal*, "in determining whether a complaint states a

claim that is plausible, the court is required to proceed 'on the assumption that all

the [factual] allegations in the complaint are true', [e]ven if their truth seems

doubtful." (quoting *Twombly*, 550 U.S. at 556).

Plaintiff-Appellant believes this case should be remanded back to the SCDC

court for trial by jury. Plaintiff-Appellant also believes that because he is an

African-American Inventor, who is representing himself *Pro Se*, the SCDC court

judges will not allow a Black, to defend his property against Whites, in their Court.

"Malicious intent refers to the intent, without just cause or reason, to commit

a wrongful act that will result in harm to another. It is the intent to harm or do

some evil purpose" https://definitions.uslegal.com/m/malicious-intent/


## STANDARDS FOR REVIEW

Although Plaintiff-Appellant did not file a "Judicial Notice" during the

pleading stage at the Trial Court in the following way, it is still relevant to this

case:

"All officers of the court for the United States District Court for the District of South Carolina, are hereby placed on notice under authority of the supremacy and equal protection clauses of the United States Constitution and the common law authorities of *Haines v Kerner*, 404 U.S. 519, *Platsky v. C.I.A.* 953 F.2d. 25, and *Anastasoff v. United States*, 223 F.3d 898 (8th Cir. 2000) relying on *Willy v. Coastal Corp.*, 503 U.S. 131, 135 (1992), "*United States v. International Business Machines Corp.*, 517 U.S. 843, 856 (1996), quoting *Payne v. Tennessee*, 501 U.S. 808, 842 (1991) (Souter, J., concurring). *Trinsey v. Pagliaro*, D.C. Pa. 1964, 229 F. Supp. 647, *American Red Cross v. Community Blood Center of the Ozarks*, 257 F.3d 859 (8th Cir. 07/25/2001).

*In re Haines*: pro se litigants (Plaintiff is a pro se litigant) are held to less stringent pleading standards than BAR registered attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims.

*In re Platsky*: court errs if court dismisses the pro se litigant pleadings (Plaintiff is a pro se litigant) without instruction of how pleadings are deficient and how to repair pleadings.

*In re Anastasoff*: litigants' constitutional rights are violated when courts depart from precedent where parties are similarly situated. All litigants have a

constitutional right to have their claims adjudicated according the rule of precedent.

See *Anastasoff v. United States*, 223 F.3d 898 (8th Cir. 2000). Statements of counsel, in their briefs or their arguments are not sufficient for a motion to dismiss or for summary judgment, *Trinsey v. Pagliaro*, D.C. Pa. 1964, 229 F. Supp. 647.

See *Haines v. Kerner, Et Al*, 404 U.S. 519 (1972), which states a *Pro Se* litigant's complaint cannot be dismissed for failure to state a claim upon which relief can be granted. *Haines v. Kerner, et al* – Court's Opinion:

"...allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See Dioguardi v. Durning*, 139 F.2d 774 (CA2 1944), "...we conclude that he is entitled to an opportunity to offer proof."

Notice to *Pro Se* Parties: You are not Entitled to have Counsel Appointed to Represent You in a Civil Action ... "[w]henever a civil case is brought by a pro se party, the judges of this court outline proper procedure so that the *pro se* party will

14

not be deprived of a fair opportunity to present his or her case." *See Roseboro v.*

*Garrison*, 528 F.2d 309, 310 (4th Cir. 1975)"

**SCDC "OPINION & ORDER" in *Larry Golden v. Google, LLC*, Case No:**

**6:21-cv-00244-JD, Date Filed 11/02/21, Entry Number 21**

*OPINION*: "Although Golden cites a district court opinion in the Central

District of California (albeit not binding precedence) to support his claim that his

pleadings are sufficient because he attached his patents just as the plaintiff in that

case, his reliance and application of this authority misses the mark."

*ANSWER*: "Plaintiff attached a copy of the asserted patents as Exhibits A, B,

& C. The attached patents satisfy the requirement of "enough factual allegations.

For example, *in Incom Corp. v. Walt Disney Co.*, No. 2:15-cv-03011-PSG-MRW,

Dkt. 39, at *4 (C.D. Cal. Feb. 4, 2016) the Central District of California declined to

dismiss a complaint that attached the asserted patent, identified the accused

products by name, and generally compared the technology disclosed in the patents

to the accused products. The complaint *did not identify any specific asserted claim*,

but the court found that: "Plaintiff has stated a plausible claim for direct

infringement by specifically identifying the Defendant's products and alleging that

they perform the same unique function as Plaintiff's patented system." The

Defendant in this case is allegedly liable for infringement of the asserted patents-

in-suit under 35 U.S.C. § 271.

*OPINION*: "Golden objects to the Report's recommendation of dismissal of the action in light of the claim charts he has provided in the Complaint. Upon review, however, the Report thoroughly addressed Golden's claim chart."

*ANSWER*: The Trial Court erred when the Court dismissed Plaintiff-Appellant's claim charts as being insufficient. The Charts submitted are "demonstrative charts", that when combined with the complaint and patents, are "enough factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." (*Twombly and Iqbal*). The Court erred because the Plaintiff-Appellant is not required to plead 'direct infringement of each and every element at the pleading stage.

At the pleading stage, "Plaintiff is not required to plead 'direct infringement of each and every element of the allegedly infringed claim.'" (*quoting Crypto Res., LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 686 (E.D.N.Y. 2017)).

In *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018), the Federal Circuit expressly stated: "'the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.'" *Id.* at 1350 (quoting *In re Bill of Lading*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).

The U.S. Court of Appeals for the Federal Circuit addressed the pleading requirements for patent infringement claims in *Bot M8 LLC v. Sony Corp. of Am.*,

4 F.4th 1342 (Fed. Cir. July 13, 2021) ... "patentees are not required to prove their

case at the pleading stage ... patentees are not required to plead infringement on an

element-by-element basis ... a blanket element-by-element pleading standard for

patent infringement, "that approach is unsupported and goes beyond the standard

the Supreme Court articulated in *Iqbal and Twombly*." *Id*. at 1352.

*OPINION*: "The chart contains the exact same language as the claim charts

previously rejected by the Federal circuit, although Google Pixel 5 Smartphone

appears in the far-left column instead of Apple."

*ANSWER*: Not true. The issue, is whether Plaintiff-Appellant's infringement

contentions charts comply with the Court's Patent Rule 4(c):

> (b) for each asserted claim, each product, process, or method that allegedly
>
> infringes the identified claim. This identification must include the name and
>
> model number, if known, of the accused product, process, or method;
>
> **(c) a chart identifying where each element of each asserted claim is found**
>
> **within each accused product, process, or method, including the name and**
>
> **model number, if known;**

It doesn't matter if the alleged infringing product is in the far-left column

(Charts 1 & 1-A), or in any of the columns right of the far-left column (Charts 2

thru 8). What matters is where the element is found; name & model, if known.

| Apple iPhone 12 Smartphone | Patent #: 10,163,287; Ind. Claim 5 | Patent #: 9,589,439; Ind. Claim 23 | Patent #: 9,096,189; Ind. Claim 1 |
|---|---|---|---|
|  | A monitoring device comprising: | A cell phone comprising: | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: |
|  CPU: Hexa-core (2x3.22 GHz Avalanche + 4xX.X GHz Blizzard). Chipset: Apple A14 Bionic (5nm). Apple iOS 14.1 Operating System (OS) |  at least one central processing unit (CPU); | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front-end processor for communication between a host computer and other devices; |
| Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, hotspot. Bluetooth 5.0 A2DP, LE. NFC, GPS, A-GPS, GLONASS, Galileo, OZSS |  at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU; | wherein at least one of… WiFi connection, internet connection, radio frequency (RF) connection, cellular connection… capable of signal communication with the transmitter or the receiver; | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group… of satellite, Bluetooth, WiFi… |
| Face ID & Lock Disables after multiple failed attempts to open | at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device; | wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition | wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition… |

*Chart 1*

| Google Pixel 5 Smartphone | Patent #: 10,163,287; Ind. Claim 5 | Patent #: 9,589,439; Ind. Claim 23 | Patent #: 9,096,189; Ind. Claim 1 |
|---|---|---|---|
|  | A monitoring device comprising: | A cell phone comprising: | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: |
|  CPU: Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver). Chipset: Qualcomm Snapdragon 765G. Google Android 11 Operating System (OS) |  at least one central processing unit (CPU); | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front-end processor for communication between a host computer and other devices; |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable |  at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU; | wherein at least one of… WiFi connection, internet connection, radio frequency (RF) connection, cellular connection… capable of signal communication with the transmitter or the receiver; | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group… of satellite, Bluetooth, WiFi… |
| Fingerprint ID (rear-mounted) & Lock Disables after multiple failed attempts to open | at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device; | wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition… | wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition… |

*Chart 1-A*



| Plaintiff-Appellant's [Smartphone] | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
| Communication, Monitoring, Detecting, & Controlling (CMDC) Device | Electronic Device | Mobile Device | Consumer Device |

*Chart 2*



Monitoring equipment of at least one of the products grouped together by common features in the product groupings category of design similarity (i.e., computer terminal, personal computer (PC), laptop, desktop, notebook, handheld, cell phone, PDA or smart phone) interconnected to a product for communication therebetween, comprising…

**Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., smartphone)**

**Asserted Patent Specifications:**

"In addition, the basic monitoring terminal or PC 114, as shown in FIGS. 5 and 15, can be adapted and incorporated to include desktop PCs, notebook PCs, laptops, cell phones, LCD monitors, and satellite monitoring… computers, laptops, notebooks, PCs, and cell phones for the receipt and transmission of signals"

"Product grouping 4 (monitoring & communication devices) include, but are not limited to, mobile communication devices, mobile communication units, portable communication devices, portable communication equipment, wired communication devices, wireless communication devices, monitoring sites, monitoring terminals, web servers, desktop personal computers (PCs), notebook personal computers (PCs), laptops, satellite phones, cell phones, Universal Mobile Telecommunications System (UMTS) phones, personal digital assistants (PDAs), liquid crystal display (LCD) monitors, and satellite monitoring, remote control key fobs, two-way communication key fobs, handhelds;"

*Chart 2-A*

| Plaintiff-Appellant's CMDC Device | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
| | | | |
| Central Processing Unit (CPU) | CPU: Octa-core (1x2.4 GHz Kryo 475 Prime & 1x2.2 GHz Kryo 475 Gold & 6x1.8 GHz Kryo 475 Silver). Chipset: Qualcomm SM7250 Snapdragon 765G 5G. Google Android 11 OS | CPU: Hexa-core (2x3.22 GHz Avalanche + 4xX.X GHz Blizzard). Chipset: Apple A14 Bionic (5nm) iOS 14.1 Operating System (OS) | CPU: Octa-core (2x2.73 GHz Mongoose M5 & 2x2.50 GHz Cortex-A76 & 4x2.0 GHz Cortex-A55) – Global. Chipset: Qualcomm SM8250 Snapdragon 865 5G. Google Android 10 OS |

*Chart 3*



| | Central Processing Units (CPUs) for Smartphone |
|---|---|
| | The "smartphone processor (CPU), also known as chipset, is a component that controls everything going on in your smartphone and ensures it functions correctly. You can compare it to the brain of the human body. Every action you perform on your smartphone goes straight to the processor." https://www.coolblue.nl/en/advice/smartphone-processors. html. "Unlike simpler mobile phones of the past, today's smartphones all have processors or CPUs. A smartphone CPU (central processing unit) is the brains of the entire device. Without one, no smartphone would be able to function" (smartphonedomain.com., 2021). |
| Example: Qualcomm often refers to the Snapdragon as a "mobile platform" (e.g., Snapdragon 865 5G Mobile Platform). Snapdragon semiconductors are embedded in devices of various systems, including Android devices (i.e., Samsung & LG). They are also used in cars and wearable devices such as Smart Watches. | Example: Qualcomm Technologies Inc. Qualcomm announced it was developing the Scorpion central processing unit (CPU) in November 2007. The Snapdragon system on chip (SoC) was announced in November 2006 and included the Scorpion processor. The Snapdragon's central processing unit (CPU) uses the ARM architecture. A single SoC may include multiple CPU cores; a Snapdragon wireless modem; and, other software and hardware to support a smartphone's global positioning system (GPS), camera, video, and audio. |

*Chart 3-A*

| Plaintiff-Appellant's CMDC Device | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
| | | | |
| Sensor for C/B/R detection | Dual cameras: 12.2 MP, f/1.7, 27mm (wide), 1/2.55", 1.4μm, dual pixel PDAF, OIS 16 MP, f/2.2, 117° (ultrawide), 1.0μm | Dual cameras: 12 MP, f/1.6, 26mm (wide), 1.7μm, dual pixel PDAF, sensor-shift OIS12 MP, f/2.4, 120°, 13mm (ultrawide) | Triple cameras: 12 MP, f/1.8, 26mm (wide), 1/1.76", 1.8μm, Dual Pixel PDAF, OIS 64 MP, f/2.0, 29mm (telephoto), 1/1.72", 0.8μm, PDAF, OIS, 1.1x optical zoom, 3x hybrid zoom |

*Chart 4*



### Camera C/B/R Sensor(s) for Smartphone

Camera Sensor for Radiological Detection: How can a cell phone detect radioactivity? Cell phones have cameras and camera sensors react to radioactivity. High energy particles strike a sensor array and register as small bright pinpoints or thin streaks of light. An app may not be as sensitive as a dedicated radiation detector, but it works well enough to alert users to dangerous levels of radiation.

Camera Sensor for Biological Detection: "In the diagnostic test, a patient sample is mixed with CRISPR Cas13 proteins (purple) and molecular probes (green) which fluoresce, or light up, when cut. Coronavirus RNA present, CRISPR proteins snip the molecular probes, whole sample to emit light. Fluorescence detected with a cell phone camera." (Image: Science at Cal).

Camera Sensor for Chemical Detection: The sensor that Rhevision and the University of California at San Diego responds to different chemicals by changing color; a single chip with many tiny pores, each respond to a different chemical; a standard cell-phone camera can resolve a picture finely enough to detect them; system relies on the phone's camera to watch the chip for color changes.

*Chart 4-A*

| Plaintiff-Appellant's CMDC Device | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
|  |  |  |  |
| Detector for C/B/R/N detection | Best watches for the Google Pixel 5: Samsung Galaxy Watch 3 and Fitbit Sense. | Apple Watch Series 7 | Samsung Galaxy Watch4 |

*Chart 5*



Homeland Security's Smartwatch Will Detect Nuclear Bombs https://www.popularmechanics.com/military/research/a18161/homeland-security-smartwatch-detect-nuclear-bombs/

**Smartwatch CBR Detector for Smartphone**

To use a smartwatch as a stand-alone detection device, you need a smartphone. On the smartphone, the user installs the app that comes with the smartwatch stand-alone detection device, such as Android Wear or Apple WatchOS. By opening the accompanying app on the smartphone and turning on Bluetooth, the user can synchronize the smartwatch to function as a stand-alone detection device with the smartphone.

The US Military's Latest Wearables [Smart Watch] Can Detect Illness Two Days Before You Get Sick https://www.defenseone.com/technology/2020/09/militarys-latest-wearables-can-detect-illness-two-days-you-get-sick/168664/

Studies reveal smartwatch biometrics can detect COVID-19 before symptoms surface: "smartwatches and other wearables measuring biometrics like heart-rate variability have the ability to detect if a person is COVID-19 positive" https://www.biometricupdate.com/202101/studies-reveal-smartwatch-biometrics-can-detect-covid-19-before-symptoms-surface

*Chart 5-A*

| Plaintiff-Appellant's CMDC Device | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
| | | | |
| Radio-Frequency Near-Field Communications (NFC) | Near-Field Communications (NFC) | Near-Field Communications (NFC) | Near-Field Communications (NFC) |

*Chart 6*



MIT chemists devised a new way to wirelessly detect hazardous gases by using a simple sensor that can be read by a smartphone… [T]he researchers have demonstrated that they can detect gaseous ammonia, hydrogen peroxide, and cyclohexanone, among other gases… The new sensors are made from modified near-field communication (NFC) tags. NFC tags can be read by any smartphone that has near-field communication capability. Retrieved from: https://phys.org/news/2014-12-cheap-sensor-transmit-hazardous-chemicals.html

**Near-Field Communication (NFC) CBR Tag for Smartphone**

In November 2007, an international transportation security company, two Defense Department contractors, a container retailer, a university, and a U.S. city's bomb squad demonstrated how an RFID tag could send a signal to a detonator built from widely available, over-the-counter components. An undergraduate student spent about $20 to make the detonator. The RFID signal detonated a small amount of explosives in a container by means of a simple emission of a radio signal traveling on the approved RFID 433 MHz frequency. Officials from the Defense Department, Government Accountability Office, Department of Homeland Security and Coast Guard observed the demonstration. The office of the secretary of defense sent two observers. In the Defense Department's own words, the "Army representatives examined the device and wiring and confirm that a commercial RFID interrogator was used to 'wake up' a commercial RFID tag. When the RFID tag responded on the 433 MHz frequency, the relay closed and the blasting cap set off the explosive charge." https://www.nationaldefensemagazine.org/articles/2011/2/1/2011february-military-supply-chain-tracking-system-both-inefficient-and-dangerous

*Chart 6-A*

| Plaintiff-Appellant's CMDC Device | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
| | | | |
| Biometrics & Lock Disabling Mechanism | Fingerprint ID (rear-mounted) & Lock Disables after multiple failed attempts to open | Face ID & Lock Disables after multiple failed attempts to open | Fingerprint (under display, ultrasonic) & Lock Disables after multiple failed attempts to open |

*Chart 7*



**Fingerprint Biometric Lock Disabler for Smartphone**

Security feature: After several unsuccessful log-in attempts using a passcode or fingerprint, an Android or iOS device automatically locks itself up. If unable to log in after the security layers, the only option is to have the device unlocked. The wrong pin will launch to Account Login. On an Android or Apple Phone, multiple attempts (usually five attempts or more) with an unknown or a wrong pin will go either into a delay before further attempts are allowed or the phone will allow entry using the account to unlock

**FBI Failed Attempts to Unlock Phone**

The FBI recovered an Apple iPhone 5C—owned by the San Bernardino County, California government—that had been issued to its employee, Syed Rizwan Farook, one of the shooters involved in the December 2015 San Bernardino attack. The attack killed 14 people and seriously injured 22. The two attackers died four hours after the attack in a shootout with police, having previously destroyed their personal phones. Authorities were able to recover Farook's work phone, but could not unlock its four-digit passcode, and the phone was programmed to automatically delete all its data after ten failed password attempts (an anti-theft measure on smartphones).

*Chart 7-A*

| Plaintiff-Appellant's CMDC Device | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
| | | | |
| Internet | Wi-Fi 802.11 a/b/g/n/ac, dual-band, Wi-Fi Direct, hotspot | Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, hotspot | Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct, hotspot |

*Chart 8*



**Internet-of-Things (IoTs)**

The Internet-connected smartphones, can directly capture and compile data from as many as 14 different sensors:

1. Accelerometer
2. GPS
3. Gyroscope
4. Magnetometer
5. Biometrics
6. Camera
7. Barometer
8. Proximity Sensors
9. Bluetooth connectivity
10. Barcode readers
11. Touchscreen sensors
12. Heart rate monitor
13. ECG
14. Haptic feedback sensors

The smartphone can be used as an IoT device for Personal emergency response, fitness tracking, location-based asset tracking, natural vision processing, and a Bluetooth gateway for wearable Bluetooth devices that enable many IoT monitoring apps. Also, identity verification, GPS based guidance, position/orientation awareness apps and games are well suited for smartphone-based implementation.

The IoTs contain computing hardware, including processors with embedded programming telling them what to do, sensors that gather various sorts of readings (such as temperature, motion, chemical levels, heart rate and body movement) and communication hardware that can send and receive signals.

*Chart 8-A*

Charts 3-A thru 8-A are Plaintiff-Appellant's claimed inventions used to form Plaintiff-Appellant's communicating, monitoring, detecting, and controlling, (CMDC) device (Chart 2-A).

Patent Rule 4(c) does not ask for anything more than "a **chart** identifying where each element [limitation] of each asserted claim is found within each accused product, process, or method, including the name and model number, if known".

If the patent claim reads: "A CMDC device comprising: at least one central processing unit (CPU)". According to Patent Rule 4(c), the only thing Plaintiff-Appellant is required to do is identify where the CPU is found within each accused product, and include the name and model number if known (i.e., Google Pixel 5, CPU: Octa-core (1x2.4 GHz Kryo 475). Chipset: Qualcomm SM7250 Snapdragon 765G 5G; Apple iPhone 12, CPU: Hexa-core (2x3.22 GHz Avalanche + 4xX.X GHz Blizzard), Chipset: Apple A14 Bionic (5nm))

## COUNT I

### (Infringement of the '287 Patent)

Golden realleges and incorporates herein the allegations set forth in this corrected informal brief.

On information and belief, Google is jointly, directly, indirectly and/or under the 'doctrine of equivalents', infringing at least independent claims 4, 5, and 6 of

the '287 patent. The alleged infringing products are: Google Pixel smartphones 3,

3XL, 3a, 3aXL, 4a, 4a(5G), and 5.

As set forth in Golden's preliminary infringement contentions that Google is

making, using, offering for sale, selling and/or importing Plaintiff's CMDC device

have at a minimum directly infringed the '287 patent and Google is thereby liable

for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Google have

caused damage to Golden, which infringement and damage will continue unless

and until Google is enjoined.

The alleged infringement of Google identified in the Trial Count has caused

irreparable injury to Golden for which remedies at law are inadequate. Considering

the balance of the hardships between the parties, a remedy in equity, such as a

preliminary injunction is warranted and such a remedy would be in the public

interest.

## COUNT II
### (Infringement of the '439 Patent)

Golden realleges and incorporates herein the allegations set forth in this

corrected informal brief.

On information and belief, Google is jointly, directly, indirectly and/or under

the 'doctrine of equivalents', infringing at least independent claims 13, 14, 15, and

23 of the '439 patent. The alleged infringing products are: Google Pixel smartphones 3, 3XL, 3a, 3aXL, 4a, 4a(5G), and 5.

As set forth in Golden's preliminary infringement contentions that Google is making, using, offering for sale, selling and/or importing Plaintiff's CMDC device have at a minimum directly infringed the '439 patent and Google is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Google have caused damage to Golden, which infringement and damage will continue unless and until Google is enjoined.

The alleged infringement of Google identified in the Trial Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a preliminary injunction is warranted and such a remedy would be in the public interest.

## COUNT III

### (Infringement of the '189 Patent)

Golden realleges and incorporates herein the allegations set forth in this corrected informal brief.

On information and belief, Google is jointly, directly, indirectly and/or under the 'doctrine of equivalents', infringing claims 1, 2 & 3 of the '189 patent. The

alleged infringing products are: Google Pixel smartphones 3, 3XL, 3a, 3aXL, 4a, 4a(5G), and 5.

As set forth in Golden's preliminary infringement contentions that Google is making, using, offering for sale, selling and/or importing Plaintiff's CMDC device have at a minimum directly infringed the '189 patent and Google is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Google have caused damage to Golden, which infringement and damage will continue unless and until Google is enjoined.

The alleged infringement of Google identified in the Trial Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a preliminary injunction is warranted and such a remedy would be in the public interest.

Respectfully submitted,

Larry Golden, Plaintiff, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
atpg-tech@charter.net
864-288-5605

AO 450 (SCD 04/2010)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of South Carolina

| | | |
|---|---|---|
| Larry Golden, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   6:21-cv-00244-JD |
| Google LLC, | ) | |
| *Defendant* | ) | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one):*

■ the Court adopts the Report and Recommendation.  Plaintiff's Complaint is dismissed with prejudice and without the issuance of service of process.

This action was *(check one):*
☐ tried by a jury, the Honorable _____ presiding, and the jury has rendered a verdict.

☐ tried by the Honorable _____ presiding, without a jury and the above decision was reached.

■ decided by the Honorable Joseph Dawson, III

Date:   November 3, 2021

*ROBIN L. BLUME, CLERK OF COURT*

s/Rob Weber

*Signature of Clerk or Deputy Clerk*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Larry Golden, | ) | Case No.: 6:21-cv-00544-JD-KFM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Google, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court with the Report and Recommendation of United States Magistrate Kevin F. McDonald ("Report and Recommendation" or "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) of the District of South Carolina.[1] Plaintiff Larry Golden ("Golden" or "Plaintiff"), proceeding *pro se*, filed this Complaint alleging patent infringement claims against Google, LLC ("Google" or "Defendant"). (DE 1.)

Specifically, Golden asserts that Google has infringed on the following patents: 10,163,287 ('287 patent); 9,589,439 ('439 patent); 9,096,189 ('189 patent). (DE 1; 1-1; 1-2, 1-3.) These patents are entitled "multi sensor detection, stall to stop and lock disabling system" (DE 1; 1-1; 1-2; 1-3.) The patents appear to involve technology that can be used to detect explosives/radiation and then disable vehicles or other equipment wherein the explosives/radiation are detected. The Plaintiff's complaint alleges infringement of each patent by Google in formulaic recitations of the elements of patent infringement. (DE 1.) For relief, Golden seeks a declaratory judgment that

---

[1]     The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court.  See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  The Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made.  The Court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

1


RECEIVED

MAR 03 2022

United States Court of Appeals
For The Federal Circuit

Google has infringed on his patents, a permanent injunction enjoining the infringing activity, as

well as money damages.  (DE 1, p. 29.)

 This Court possesses the inherent authority to review the *pro se* complaint to ensure that

subject matter jurisdiction exists and that a case is not frivolous, even if the pleading is not subject

to the pre-screening provisions of 28 U.S.C. § 1915.  See Mallard v. U.S. Dist. Ct., 490 U.S. 296,

307–08 (1989) ("Section 1915(d) . . . authorizes courts to dismiss a 'frivolous or malicious' action,

but there is little doubt they would have power to do so even in the absence of this statutory

provision."); Ross v. Baron, 493 F. App'x 405, 406 (4th Cir. 2012) (unpublished) (finding that

"frivolous complaints are subject to dismissal pursuant to the inherent authority of the court, even

when the filing fee has been paid . . . [and] because a court lacks subject matter jurisdiction over

an obviously frivolous complaint, dismissal prior to service of process is permitted." (citations

omitted)).

 Accordingly, on April 9, 2021, the Magistrate Judge issued the Report given his initial

review of the pleadings.  The Report recommended summary dismissal of the complaint with

prejudice and without issuance of service of process or leave to amend his complaint.  The Report

further recommended that this Court consider the entry of sanctions in the amount of $400.00

against Golden because he has continued to file frivolous litigation in this Court.[2]  (DE 14.)  In

support of the Magistrate's recommendation, the Report took judicial notice that the instant matter

represents Golden's sixth unsuccessful action regarding his patents (and infringing actions).  See

Golden v. Apple, Inc., et al., C/A No. 6:20-cv-04353-JD (D.S.C.) ("Case Number 5"); Golden v.

Apple, Inc., et al., C/A No. 6:20-cv-02270-JD (D.S.C.) ("Case Number 4"); Golden v. Apple Inc.,

---

[2] Although this action represents Golden's fourth frivolous action based upon alleged patent infringement (and sixth case overall) and the Report recommends that this Court sanction Golden $400.00, this Court declines to order sanctions at this time.  However, in the event Golden attempts to file another frivolous action in this Court, the Court will consider the imposition of sanctions as warranted.

et al., C/A No. 6:19-cv-02557-DCC, 2020 WL 415896 (D.S.C. Jan. 27, 2020), aff'd C/A No. 20-1508, --- F. App'x ---, 2020 WL 5240656 (Fed. Cir. Sept. 3, 2020) ("Case Number 3"); Golden v. United States, C/A No. 1:19-cv-00104-EGB (Fed. Cl.), dismissal aff'd 955 F.3d 981 (Fed. Cir. 2020) ("Case Number 2"); Golden v. United States, C/A No 1:13-cv-00307- SGB, stayed pending patent review, at doc. 186 (Fed. Cl.) ("Case Number 1"); and In re Patent Number RE 43,990, https://portal.uspto.gov/pair/PublicPair# (choose patent number, enter RE43990, and then click Image File Wrapper) (last visited September 26, 2021), petition denied June 25, 2020.  The instant complaint seeks damages against Google for the same allegations that were dismissed as frivolous in Case Number 3, Case Number 4, and Case Number 5; however, it appears that this action represents Golden's attempt to re-litigate claims against Apple and/or Qualcomm and now asserts the same claims against Google.

Accordingly, the Report recommend dismissal of Plaintiff's complaint because *inter alia* the Plaintiff's complaint contains a lengthy history of his prior actions in this Court, various cell phone statistics, a description of the development of the android operating system, and specifications for various Google phones, but contains few factual allegations relating to the alleged infringement. (See DE 14, p. 8.) Golden filed an objection to the Report on April 22, 2021 (DE 18); however, to be actionable, objections to the Report and Recommendation must be specific.  Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge.  See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984).  "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- *that are at the heart of the parties' dispute*.'" Diamond v. Colonial Life & Accident Ins. Co.,

3

416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140 (1985) (emphasis added)).  In the

absence of specific objections to the Report and Recommendation of the magistrate judge, this

Court is not required to give any explanation for adopting the recommendation. See Camby v.

Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Plaintiff makes the following "objections"[3] to the Report, which the Court will discuss

seriatim.  First, Golden objects to the Report's recommendation of dismissal of the action in light

of the claim charts he has provided in the Complaint.  Upon review, however, the Report

thoroughly addressed Golden's claim chart.  The chart contains the exact same language as the

claim charts previously rejected by the Federal circuit, although Google Pixel 5 Smartphone

appears in the far left column instead of Apple.  (DE 14, p. 8.)  For example, the chart copies

previously submitted charts alleging patent infringement (albeit by Google in lieu of other

defendants) of independent claim 5 of the '287 patent; independent claim 23 of the '439 patent;

and independent claim 1 of the '189 patent.  (DE 1, pp. 23-29.)  These charts and allegations of

infringement were specifically rejected by the Federal Circuit Court of Appeals because they

contained "a dizzying array of disorganized assertions" "disingenuously using the words of the

claims to generally describe cryptically identified structures." Golden, 819 F. App'x at 931 (citing

Golden, C/A No. 6:19-cv-02557, at DE 16-14).  In light of the foregoing, this Court overrules this

objection.

Next, Golden objects to the Report's finding that the Complaint does not include a short

and plain statement of his claims in light of InCom Corp. v. Walt Disney Co., No. CV15-3011

PSG (MRWx), 2016 U.S. Dist. LEXIS 71319, at *8 (C.D. Cal. Feb. 4, 2016), because Golden

---

[3]     Golden purportedly objects to the Court's lack of consideration of two (2) DVD's included with his Complaint and five (5) response letters from members of the Executive and Legislative branches of government. (DE 18, p. 7.) However, there do not appear to be any such attachments to the Complaint; and therefore, the Court overrules this "objection."

included claim charts that illustrate the infringing devices, provide notice to the Defendant, and provide enough factual allegations. (DE 18, p. 8.)  However, Golden offers no additional facts regarding the same.  Simply naming a product and providing a conclusory statement that it infringes a patent is insufficient to meet the "plausibility" standard set forth in <u>Ashcroft v. Iqbal</u>, <u>556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)</u>.  Although Golden cites a district court opinion in the Central District of California (albeit not binding precedence) to support his claim that his pleadings are sufficient because he attached his patents just as the plaintiff in that case, his reliance and application of this authority misses the mark.  <u>See</u> <u>InCom Corp. v. Walt Disney Co.</u>, No. CV15-3011 PSG (MRWx), 2016 U.S. Dist. LEXIS 71319, at *8 (C.D. Cal. Feb. 4, 2016) (where the district court found that plaintiff's amended complaint did more than name a product and baldly conclude that it infringes plaintiff's patent, but that plaintiff attached the patents and described *inter alia* how "its Attendance Tracking System uses RFID technology and ID badges to track human presence in large volumes.").  Even applying <u>InCom</u> as purported by Golden, Golden's amended complaint does not (among other things) describe specific systems developed and manufactured by Google that are like the subject patents and how the systems perform the same unique function as Golden's system or assert facts regarding the availability of his technology prior to his invention.  In light of the vague conclusory allegations in the complaint in this action and Golden's attempt to circumvent the prior dismissals of his patent infringement claims, the instant matter is subject to summary dismissal as frivolous.

Although this Court agrees with the Report that Plaintiff's amended complaint should be dismissed with prejudice because it is frivolous, the Court declines to impose sanctions at this time. Furthermore, the Court finds Golden's remaining objections to be non-specific and/or moot and, therefore, overrules them.

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report and Recommendation as modified and incorporates it herein.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Complaint is dismissed with prejudice and without the issuance of service of process.

**AND IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Greenville, South Carolina
November 2, 2021

**NOTICE OF RIGHT TO APPEAL**

Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.


