# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA – OAKLAND

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 288-5605

Email: atpg-tech@charter.net

RECEIVED

OCT 03 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

LARRY GOLDEN,

      Plaintiff,

      V.

GOOGLE LLC

      Defendants.

---

CASE NO: 4:22-cv-05246-HSG

**JURY TRIAL DEMANDED**

(Direct Patent Infringement),
(Induced and Contributory Patent
Infringement), (Joint Infringement,
(Willful Infringement)

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S REPLY
TO MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

October 2, 2023

Plaintiff is seeking leave of this Court to file Sur-Reply to the Defendant's Reply in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 47). "A district court may allow a Sur-reply to be filed, "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Hill v. England*, 2005 WL 3031136, *1 (E.D. Cal. Nov. 8, 2005).

Plaintiff argues that he should be permitted to file a Sur-reply because Defendants' Reply to the Motion to Dismiss, (Dkt. 47), raises arguments not previously presented in the Motion to Dismiss, (Dkt. 47). Google's motion to dismiss and reply in support, places Google in violation of Rule 8 of the Federal Rules of Civil Procedure. Failure to put forth a sufficient affirmative defense.

> "Rule 8 prescribes the rules of pleading. Defenses are subject to three provisions with[in] Rule 8: 1) the defense must be stated "in short and plain terms" (Rule 8(b)(1)(A)); 2) "any avoidance or affirmative defense" must be affirmatively stated (Rule 8(c)(1)); and 3) the defense "must be simple, concise, and direct" (Rule 8(d)(1))."

Google's "*ENTIRE*" defense of a "single entity" performance has already been litigated and decided by the Federal Circuit in *Syngenta Crop Protection, LLC v. Willowood LLC*, et al (Fed. Cir. Dec. 18, 2019). Willowood's direct infringement liability under 35 U.S.C. § 271(a) and 35 U.S.C. § 271(g) for the *use* of a "patented process" has already been litigated and decided by the Federal Circuit in *Syngenta Crop Protection, LLC v. Willowood LLC*, et al.

Google never argued that the android open-source operating system; the megapixel camera sensor; the near-field communication sensor; the ambient light and spectrometer sensors; and the GPS, WiFi, and Bluetooth sensors are not "*native*" to the manufacture of the Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphones.

Google never argued the Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphones that comprises or includes the android open-source operating system; the megapixel camera sensor; the near-field communication sensor; the ambient light and spectrometer sensors; and the GPS, WiFi, and Bluetooth sensors, were not assembled together under the brand name of Google, and *sold* as a consolidated unit (i.e., the Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphone).

Google never argued that when the android open-source operating system; the megapixel camera sensor; the near-field communication sensor; the ambient light and spectrometer sensors;

and the GPS, WiFi, and Bluetooth sensors, working together collectively or separate; does not enable CBRNE detection, and is not covered under Plaintiff's patents as a patented process.

Google's defense argues against the Federal Circuit findings "that §271(a) covers all patented processes, whether the processes end up with a product or not", and under §271(g), "whether that process is practiced by a single entity is immaterial to the infringement analysis under that section".

Section § 271(g) provides that "[w]hoever without authority [] offers to sell, sells, or uses within the United States a product which is made by a *process* patented in the United States shall be liable as an infringer." In *Syngenta Crop Protection, LLC v. Willowood LLC*, et al (Fed. Cir. Dec. 18, 2019), the Federal Circuit considered whether 35 U.S.C. § 271(g) requires that every step of a claimed process be performed by a single entity.

The Federal Circuit finding that "the statutory language as a whole is clear that under §271(g), [] 'whether that process is practiced by a single entity is immaterial to the infringement analysis under that section'."

On appeal, *Willowood* argued that the single-entity requirement under §271(a), in which all steps of a claimed method are performed by or attributable to a single entity, should be applied to §271(g) as well since it is simply another form of direct infringement. The Federal Circuit disagreed, and in view of another subsection of the statute, namely §271(f), stated that if Congress intended to limit liability under §271(g) to instances where the infringing patented process was entirely practiced by a single entity, then Congress "kn[ew] precisely how to do so."

In the Defendant's reply (Dkt. 47), Google admits to the *use* of the various means of CBRNE detection, "ATAK is built on the Android operating system"; "[t]he new sensors are made from modified near-field communication (NFC) tags," and "can be read by any smartphone that has NFC capability"; that "[s]martphones provide hardware and software capability which can be incorporated into SPR sensors," and that "[t]he camera, screen, and LED flashlight of the smartphone can be employed as components of the sensor"; "Google's product can infringe [] if modified" (modified embedded ambient light sensor, spectrometer, camera, etc.); and, "Google's products can infringe only if modified by the addition of a remote beacon".

*Willowood* also argued that "because direct infringement of a process patent under §271(a) requires the same entities to perform all of the claimed steps, the same must be true

under §271(g) …". The Federal Circuit disagreed, finding that §271(a) covers all patented processes, whether the processes end up with a product or not.

On the other hand, §271(g) requires [] use within the US of a product made by a patented process. "The different scope of protection offered under §271(a) and §271(g) demonstrates that there is no inconsistency between the two sections… Congress made clear that §271(g) 'is prompted by the use of patented processes [] and simply extend[s] protection to the products' made by such processes."

*Syngenta Crop Protection, LLC v. Willowood LLC* appears to demonstrably expand the range of [] activities that may constitute infringement under 35 U.S.C. § 271(g), in that the section does not require a single entity to perform, direct, or control all of the steps of a patented process for infringement liability to arise from the [] sale of products made by a process patented in the US.

Google is in Violation of Rule 8 of the Federal Rules of Civil Procedure for Failure to Put Forth a Sufficient Affirmative Defense.


## Direct Infringement Under the "*Doctrine of Equivalents*"

This Sur-Reply is necessary to show how Google has completely ignored Plaintiff's allegations of direct infringement under the doctrine of equivalents. Plaintiff alleged direct infringement under the doctrine of equivalents in Plaintiff's Amended Complaint (Dkt. 42) and Plaintiff's Response to Defendant's Motion to Dismiss (Dkt.46).

> "Rule 8 prescribes the rules of pleading. Defenses are subject to three provisions with[in] Rule 8: 1) the defense must be stated "in short and plain terms" (Rule 8(b)(1)(A)); 2) "any avoidance or affirmative defense" must be affirmatively stated (Rule 8(c)(1)); and 3) the defense "must be simple, concise, and direct" (Rule 8(d)(1))."

When the Federal Circuit states, ""express no opinion as to the adequacy [the state or quality of being adequate] of the complaint or claim chart except that it is not facially frivolous", means the Circuit is not expressing an opinion on whether the direct infringement is literal direct infringement or direct infringement under the doctrine of equivalents.

In the Federal Circuit's language, "a detailed claim chart mapping features of an accused product, the [] Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189", indicates a determination has been made on direct infringement, either literally or under the doctrine of equivalents.

"Literal infringement" means that each and every element recited in a claim has identical correspondence in the allegedly infringing device or [patented] process. "Under the doctrine of equivalents, a product or [patented] process that does not literally infringe . . . the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention.'" *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998)

In *Graver Tank & Mfg. Co. v. Linde Air Prods., Inc.*, the U.S. Supreme Court held that Plaintiff, the patent owner, may invoke the doctrine of equivalents to proceed against [Google] if the [Google Pixel] smartphones perform substantially the same function in substantially the same way to obtain the same result.

The Doctrine of Equivalents was established in the United States with the case of *Winans v. Denmead*, which dealt with changing a part of the construction of the patented invention to avoid infringement. Setting a precedent, the court held that infringement may be claimed even if the same literal legal patent language was not used. A mere change in form while retaining the rest from the patented claim is still considered infringement.

The doctrine is explained in the words of Judge Curtis for the case as, "the patentee, having described his invention, and shown its principles, and claimed it in that form which most perfectly embodies it, is, in contemplation of law, *deemed to claim every form in which his invention may be copied*, unless he manifests an intention to disclaim some of those forms."

Under this doctrine, Plaintiff can argue infringement even if each and every claim element of the patent is not completely or identically present in the infringed invention. The purpose of the doctrine is to ensure that Google does not benefit from minor or insubstantial changes that may escape literal infringement.

If the accused Google Pixel products or [patented] process does not literally infringe Plaintiff's patented invention, the accused Google Pixel products or [patented] process may be found to infringe under the doctrine of equivalents. The essential objective inquiry is: "Does the accused Google Pixel products or [patented] process contain elements identical or equivalent to

each claimed element of the patented invention?" *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 41 USPQ2d 1865, 1875 (1997).

In determining equivalence, "an analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute plays a role substantially different from the claimed element."

A common method used to determine whether the equivalent of a claim limitation is present in the accused product or process is the function-way-result test. This test asks whether an element of an accused product or process "performs substantially the same function in substantially the same way to obtain the same result" as an element of the patented invention (*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011)). All the elements in this case meets at least this standard.

For an infringement analysis & litigation, claim charts help confirm or dis-confirm that each and every limitation of the claim is present in a product, service, or standard. An Evidence-of-Use (EoU) or Infringement Chart shows how a product or [patented] process accused of infringement contains each claim element to satisfy the 'all elements test' for infringement.

## Google's Failed Attempt at "Reverse Engineering" Plaintiff's Communicating, Monitoring, Detecting, and Controlling (CMDC) Device

To this point Plaintiff has presented in this case a preponderance of evidence to show at least Google's Pixel 6a is capable of CBRNE sensing. Plaintiff has also presented in this case a preponderance of evidence to show at least Google's Pixel 6a, that is capable of CBRNE sensing, infringes Plaintiff's patented communicating, monitoring, detecting, and controlling (CMDC) device that is interconnected with Plaintiff's patented multi-sensor detection device.

Below is the image of a mobile device with a chemical sensor plugin. Appropriate for this case, we can say it is at least a Google 6a with a DTRA ATAK chemical sensor plugin. More appropriately stated it is an image of Plaintiff's patented communicating, monitoring, detecting, and controlling (CMDC) device interconnected with Plaintiff's patented multi-sensor detection device [chemical sensor plugin]. All scenarios include Plaintiff's patented central processing unit(s) for carrying out the operational and functional instructions for the device.



NASA Ames Chemical Sensor

Google's strategy in this case is to reverse engineer the smartphone sensing device away from the at least Google Pixel 6a to that of who does or does not *sell* the CBRNE detection means [i.e., DTRA ATAK CBRNE Sensor Plugins].

Google's reverse engineering strategy creates a new liability of indirect "contributory" infringement for Google. Under Plaintiff's patented process (i.e., standard engineering), the Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphones were alleged as directly infringing Plaintiff's patented communicating, monitoring, detecting, and controlling (CMDC) device.

Under Google's reverse engineering strategy, the Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphones only use is in practicing the Plaintiff's patented process (35 U.S.C. § 271(c); and the Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphone has a substantial "non-infringing" use. This standard inherently requires knowledge of the patent.

Google's reverse engineering strategy confirms Google's liability for indirect "inducement" infringement. Under Plaintiff's patented process (i.e., standard engineering), and under Google reverse engineering strategy, Google induced infringement with advertisements, promotions, and publications of Google's android open-source operating system platform.

The reason Google's reverse engineering strategy has fail is illustrated in the chart below. The strategy fails because when Google reverse engineer it starts with the CBRNE plugins. The plugins are described in Plaintiff's patents as multi-sensor detection devices. In other words, it does not matter if Google starts with the smartphone that comprises a CBRNE detection means, or with the detection means that comprises a smartphone; both are Plaintiff's patented inventions.

## Claim Chart of Induced Infringement [DTRA ATAK-MILITARY and Draper's ATAK-CIVILIAN]; Contributory Infringement with the Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphones; and Joint Infringement

| DRAPER'S ATAK-CIVILIAN & DoD/DTRA ATAK-MILITARY | Patent #: 9,589,439; Independent Claim 19 | Patent #: 9,096,189; Independent Claim 7 |
|---|---|---|
|  Both Draper ATAK-CIV and DoD DTRA ATAK-MIL include chemical, biological, radiological, and nuclear (CBRN) plug-ins. Plaintiff has demonstrated throughout the complaint how Google actively encouraged the infringement; and how Google knew that the acts they were doing constituted infringement; and as a result, Google actuated induced patent infringement by those encouraging acts. Plaintiff's evidence proves the inducement *resulted* in direct infringement, not that the inducement was of a product that already directly infringes. | A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, radiological agent, or compound, comprising: | A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, or radiological agents and compounds, comprising: |
| **ATAK-CIVILIAN** Draper Laboratory, Inc. designed a CBRN Plugin to enable users to integrate CBRN sensors into TAK, collect CBRN sensor data, display it on a map and livestream it across the TAK network to other users. CBRN plugins for ATAK, are operational in the field. **ATAK-MILITARY** ATAK (built on the Android operating system) With DTRA … ATAK includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. The Defense Threat Reduction Agency (DTRA) CBRN ISA: Seamlessly integrates information and control of multiple sensors into a single dashboard, making it easier to detect CBRN threats and monitor a warfighter's vitals https://thelastmile. gotennapro.com/four-useful-atak-app-plugins/ | a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human, or contraband agent or compound, capable of being disposed within, on, upon or adjacent a multi-sensor detection device; | a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human or contraband agents and compounds and capable of being disposed within, on, upon or adjacent a multi sensor detection device; |

| | | |
|---|---|---|
| Pursuant to 35 U.S.C. § 271(c), Google has contributed an element(s) [ at least that of Google Pixel 6a, 7, 7a, 7 Pro, or Fold] to the alleged infringing ATAK CBRNE Plugins of Draper Laboratory, Inc. and the Defense Threat Reduction Agency (DTRA).<br><br>Google is contributing to the infringement of independent claim 19 of Plaintiff's '439 patent, and independent claim 7 of Plaintiff's '189 patent.<br><br>ATAK (including CivTAK) is an Android smartphone [i.e., Google smartphone] geospatial infrastructure and situational awareness app https://www.civtak.org/atak-about/. ATAK can be downloaded to a phone, tablet, or handheld device.<br><br>ATAK-MIL is a government-off-the-shelf app for Android smartphones. The mobile broadband 4G LTE connection is able to facilitate the data throughput required for the operation of the ATAK. https://apps. dtic.mil/sti/pdfs/ AD1069441.pdf<br><br>Plaintiff has alleged Joint or Divided infringement between Google and Draper; and, Google and DTRA, because no single party carried out all the steps of Plaintiff's patented inventions, that would constitute infringement. | monitoring equipment comprising at least one of a computer, personal computer (PC), laptop, notebook PC, handheld, cell phone, personal digital assistant (PDA) or smart phone for at least one of a receipt or transmission of signals therebetween; | monitoring equipment comprising at least one of plurality product groups based on the categories of a computer, laptop, notebook, PC, handheld, cell phone, PDA or smart phone for the receipt and transmission of signals therebetween; |
| Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphones connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go.<br><br>Draper designed a chemical, biological, radiological and nuclear (CBRN) Plugin to enable users to integrate CBRN sensors into TAK, collect CBRN sensor data, display it on a map and livestream it across the TAK network to other users. CBRN plugins for ATAK, WinTAK and WebTAK are operational in the field. https://www.draper.com/explore-solutions/tak | at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom or at least one satellite capable of transmitting signals to the monitoring equipment; | at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom or at least one satellite capable of transmitting signals to the monitoring equipment; |

9

| | | |
|---|---|---|
| The Android-based Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphones now contained integrated satellite on-the move capability, on-the-move mapping solutions, and a commercial laser range finder that significantly expanded the end-user range data flow and functionality. The Primary, Alternate, Contingency, and Emergency (PACE) communications architectures established was: • Primary communications structure (P): ATAK—4G/LTE; Antenna: international [] satellite (INMARSAT) https://apps. dtic.mil/sti/pdfs/AD1069441.pdf | at least one satellite or at least one cell phone tower capable of signal communication between the multi-sensor detection device and the monitoring equipment; | at least one satellite or at least one cell phone tower capable of signal communication between the multi sensor detection device and the monitoring equipment; |
| The internet connection is shared by many ATAK functions on the Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphone such as internet browsing, receiving email messages and installing apps. Wi-Fi is a method for devices such as the Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphones to connect wirelessly to the Internet using radio waves. | at least one internet connection capable of communication between the multi-sensor detection device and the monitoring equipment; | at least one internet connection capable of communication between the multi sensor detection device and the monitoring equipment; |
| Sit(x) is a commercial Server-as-a-Service solution based on the TAK platform developed by PAR Government for the U.S. Defense & Intelligence Community. Sit(x) has real-time communication and information sharing. With Sit(x), individuals and teams can communicate via personal computers and handheld mobile [Google smartphone] devices by voice or text. They can share real-time full-motion video (FMV), airborne/drone imagery, GPS locations, photos, and satellite imagery. Fully secure and compatible with ATAK, WinTAK, and iTAK. Sit(x) accessed via free downloadable gateway apps. | whereupon a signal sent to a receiver of the multi-sensor detection device from a satellite; or to a cell phone tower; or through at least one of a short-range radio frequency or a long-range radio frequency; causes a signal to be sent to the monitoring equipment that includes at least one of location data or sensor data; | whereupon a signal sent to a receiver of the multi sensor detection device from a satellite; or to a cell phone tower; or through short and/or long-range radio frequency; causes a signal to be sent to the monitoring equipment that includes location data and sensor data; |

10

| | | |
|---|---|---|
| The '439 & '189 patent specs: Product grouping (PG) 1 (storage & transportation); PG 2 (sensors); PG 3 (detector case; modified and adapted); PG 4 (monitoring & communication devices); PG 5 (communication methods); PG 6 (biometrics); and, PG 7 (authorized person) | wherein the monitoring equipment or multi-sensor detection device receives a signal via any of one or more products of any product grouping categories; | wherein the monitoring equipment or multi sensor detection device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |
| The Android-based [Google] Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphones now contained integrated satellite …<br><br>Wi-Fi is a method for devices such as the Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphone to connect wirelessly to the Internet using radio waves…<br><br>The internet connection is shared by many ATAK functions on the Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphone such as internet browsing, receiving email messages; installing apps…<br><br>The Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphone connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go. | wherein at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency connection, or short-range radio frequency (RF) connection is capable of signal communication with the transmitter, a receiver of the monitoring equipment, the multi-sensor detection device, or transceivers of the products; | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the monitoring equipment or multi sensor detection device and transceivers of the products; |
| BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris).<br><br>ATAK (including CivTAK) is an Android smartphone [i.e., Google smartphone] geospatial infrastructure and situational awareness app https://www.civtak.org/atak-about/. ATAK can be downloaded to a phone, tablet, or handheld device. (Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphones) | wherein the monitoring equipment is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan or signature such that the monitoring device that is at least one of the computer, the laptop, the notebook, the PC, the handheld, the cell phone, the PDA, or the smart phone is locked by the biometric lock disabler to prevent unauthorized use; | wherein the monitoring equipment is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the monitoring device that is at least one of the computer, the laptop, the notebook, the PC, the handheld, the cell phone, the PDA, or the smart phone is locked by the biometric lock disabler to prevent unauthorized use; |

11

| | | |
|---|---|---|
| The Android-based [Google] Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphones now contained integrated satellite …<br><br>Wi-Fi is a method for devices such as the Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphone to connect wirelessly to the Internet using radio waves…<br><br>The internet connection is shared by many ATAK functions on the Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphone such as internet browsing, receiving email messages; installing apps…<br><br>The Google Pixel 6a, 7, 7a, 7 Pro, or Fold smartphone connects to a cell tower or base station via radio waves, and that tower is usually physically connected to the infrastructure to send that data wherever it needs to go. | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group consisting of satellite, Bluetooth, WiFi, internet, radio frequency (RF), cellular, broadband, long range radio frequency, and short-range radio frequency (RF). | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group consisting of satellite, Bluetooth, WiFi, internet, radio frequency (RF), cellular, broadband, and long and short-range radio frequency (RF). |

## Google "Avoided" Plaintiff's Patented Central Processing Unit

Plaintiff's patented central processing units for smartphone devices are not only patented devices of Plaintiff use by Google; it is also the most significant patented process of Plaintiff's communicating, monitoring, detecting, and controlling (CMDC) device (i.e., smartphone) invention. Plaintiff alleged Google directly infringes his patented central processing units (CPUs)

Google never defends or argues against Plaintiff's alleged infringement of Plaintiff's patented central processing units (CPUs), used with the Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphones. Ignoring Plaintiff's allegations and Plaintiff's patents are not the same as the Defendant Google denying the allegations.

"Rule 8 prescribes the rules of pleading. Defenses are subject to three provisions with[in] Rule 8: 1) the defense must be stated "in short and plain terms" (Rule 8(b)(1)(A)); 2) "any avoidance or affirmative defense" must be affirmatively stated (Rule 8(c)(1)); and 3) the defense "must be simple, concise, and direct" (Rule 8(d)(1))."

"Similarly, under 35 U.S.C. § 271(c), "anyone who offers to sell, sells, or imports a material component of something that is patented, knowing that the component was especially made for use in an infringement and is not a commodity suitable for a substantial non-infringing use, is also liable as a contributory infringer".

12

Plaintiff has alleged the defendant Google, "has in the past and continues to contribute the Google Tensor i.e., Central Processing Unit (CPU), Processor, System-on-a-Chip (SoC), Chipset; a material component of Plaintiff's patented Communicating, Monitoring, Detecting, and Controlling (CMDC) device, with knowledge that the Google Tensor Chipset is especially made for use in an infringement and is not a commodity suitable for a substantial non-infringing use." Plaintiff's Amended Complaint (Dkt. 42)

Claim 11 of Plaintiff's '619 patent covers both the standard engineering patented process and Google's attempted reverse engineering:

*"A central processing unit (CPU) of at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, capable of"*

*"processing instructions to scan a senor or tag using the short-range wireless technology of radio frequency near-field communication (NFC)"*

*"processing instructions to monitor or detect at least one of a chemical sensor, a biological sensor, a motion sensor, a biometric sensor, a signature sensor, or a human sensor"*

*"processing instructions to monitor or detect for at least one of chemical agent, biological agent, radiological agent, nuclear agent, or explosive agent, weapons of mass destruction (WMDs)"*

*"processing instructions received through at least one of a Bluetooth, a Wi-Fi, a satellite, a global positioning system (GPS), or a cellular transmission"*

*"processing instructions to connect the communication device to the internet or internet-of-things (IoTs) platform to sync, to at least one of ... a detection device, or another communication device"*

*"whereupon, the central processing unit (CPU) of the communication device is capable of processing instructions for operational and functional execution, and is capable of providing feedback of the execution, and storing the feedback into memory."*

It is the belief of Plaintiff that Google is making, using, offering for sell, and selling products [i.e., Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphones] that directly infringes Plaintiff's patented communicating, monitoring, detecting, and controlling (CMDC) devices.

It is further the belief of Plaintiff that Google is making, using, offering for sell, and selling products [i.e., Google Tensor G1 and G2 Chipset-CPUs] that directly infringes Plaintiff's

patented central processing unit (CPU) devices. 35 USC 271(a)" Plaintiff's Response to Defendant's Motion (Dkt. 46).

A Utility patent may be granted to anyone who invents or discovers any new and useful *process*...". Plaintiff has clearly identified what the Google Pixel 6a, 7, 7a, 7 Pro, & Fold's role is in accomplishing the patented process and how they function to implement the patented process. This case is about Google selling smartphones and CPUs that Plaintiff allege infringes Plaintiff's patents, patent claims, patented inventions, and patented processes.

Plaintiff has also identified what the Google Pixel 6a, 7, 7a, 7 Pro, & Fold's android open-source operating system; megapixel camera sensor; near-field communication sensor; ambient light and spectrometer sensors; and GPS, WiFi, and Bluetooth sensors role is in accomplishing the patented process of enabling CBRNE detection and how they function to implement the patented process of enabling CBRNE detection (i.e., ATAK DTRA CBRNE Plugins; megapixel camera sensor for CBR; near-field communication tags for CBRN; ambient light – spectrometer biosensors; and, beacons for radiation alerts and signaling).

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Plaintiff argues the challenged affirmative defenses are insufficient defenses because they do not address the patented processes that describes Plaintiff's inventions as set forth in Plaintiff's patent claims.

Sincerely,

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 2nd day of October, 2023, a true and correct copy of the foregoing "Plaintiff's Sur-Reply in Opposition to Defendant's Reply to Dismiss Plaintiff's Amended Complaint", was served upon the following Defendant by priority "express" mail:

Matthew S. Warren

WARREN LEX LLP

2261 Market Street, No. 606

San Francisco, California, 94114

Phone: (415) 895-2940

Fax: (415) 895-2964

Email: 22-5246@cases.warrenlex.com

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605