# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 288-5605

Email: atpg-tech@charter.net



CASE NO: <u>3:22-cv-05246-RFL</u>

LARRY GOLDEN,

      Plaintiff,

      V.

GOOGLE LLC

      Defendants.

**JURY TRIAL DEMANDED**

**(Direct Patent Infringement), (Induced and Contributory Patent Infringement), (Joint Infringement, (Willful Infringement)**

## PLAINTIFF'S NOTICE OF RELATED FILINGS IN THE SUPREME COURT

February 27, 2024

Relevant to the cause(s) of action outlined in this case, is the recent case filed in the Supreme Court on February 16, 2024, *Larry Golden v. Samsung Electronics America, Inc.*, Case No. 23-904.

Pursuant to the Supreme Court, all petitions filed on or after July 1st of 2019 must include a "Related Cases" section. Relevant to petition filings, Rule 14 now asks for:

> [A] list of all proceedings in state and federal trial and appellate courts, including proceedings in this Court, that are directly related to the case in this Court. For each such proceeding, the list should include the court in question, the docket number and case caption for the proceeding, and the date of entry of the judgment. For the purposes of this rule, a case is "directly related" if it arises from the same trial court case as the case in this Court (including the proceedings directly on review in this case), or if it challenges the same [causes of actions; patents, etc.] as is challenged in this Court, whether on direct appeal or through state or federal collateral proceedings. Amended Rule 14.1(b)(iii).

Sincerely,

*/ Larry Golden*

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

## CERTIFICATE OF NOTICE AND SERVICE

The undersigned hereby certifies that on this 27th day of February, 2024, a true and correct copy of the foregoing "Notice of Related Filings in the Supreme Court" and a copy of the "Petition for Writ of Certiorari of the Related Case filed in the Supreme Court in *Larry Golden v. Samsung Electronics America, Inc.*, Case No. 23-904", was served upon the following Defendant either by priority "express" mail.

Matthew S. Warren

WARREN LEX LLP

2261 Market Street, No. 606

San Francisco, California, 94114

Phone: (415) 895-2940

Fax: (415) 895-2964

Email: 22-5246@cases.warrenlex.com

Sincerely,

*/ Larry Golden*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

No. 23-904

## In The
# Supreme Court of the United States

———————◆———————

LARRY GOLDEN,

*Petitioner,*

v.

THE UNITED STATES,

*Respondent.*

———————◆———————

**On Petition For Writ Of Certiorari
To The United States Court Of Appeals
For The Federal Circuit**

———————◆———————

**PETITION FOR WRIT OF CERTIORARI**

———————◆———————

LARRY GOLDEN, Petitioner, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
(864) 288-5605
atpg-tech@charter.net

RECEIVED
FEB 2 1 2024
OFFICE OF THE CLERK
SUPREME COURT, U.S.

i

## QUESTIONS PRESENTED

Considering the Supreme Court precedence and the Fifth Amendment of the U.S. Constitution, is it a violation of procedural due process to order the Patent Owner to prove the Government directly infringed Patent Owner's patents under 28 U.S.C. § 1498(a) as a predicate to showing the Government *appropriated or used* Petitioner's patented invention, without just compensation?

On record, the Government in DHS S&T BAA07-10 *Cell-All*, took property from the Petitioner and awarded contracts to LG, Samsung, Apple, and Qualcomm to develop and commercialize Petitioner's property supposedly for the benefit of the Government and for public use. "[I]t has long been accepted that the sovereign may not take the property of *A* for the sole purpose of transferring it to another private party *B*, even though *A* is paid just compensation." *Kelo*, 125 S.Ct. at 2661. Therefore, is it a violation of the Fifth Amendment of the U.S. Constitution and the "Due Process" Clause for the Government to deprive Petitioner of his property, by contracting LG, Samsung, Apple, and Qualcomm to develop and commercialize Petitioner's property, without paying just compensation?

The Supreme Court explicitly recognized that patents are property secured by the Fifth Amendment Takings Clause. In *Horne v. Department of Agriculture*, 576 U.S. 350 [2015] the Court held that the Takings Clause imposes a "categorical duty" on the government

ii

## QUESTIONS PRESENTED—Continued

to pay just compensation whether it takes personal or real property. As the Supreme Court summed up in *James v. Campbell*, 104 U.S. 356, 358 (1882): *"[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation"*. The Fifth Amendment of the U.S. Constitution provides that "no person shall be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation".

iii

## PARTIES TO THE PROCEEDING

The parties to the proceeding in the United States Court of Appeals for the Federal Circuit were Petitioner Larry Golden and Respondent United States.

## RELATED CASES

- *Golden v. Qualcomm, Inc.*, Petition for a Writ of Certiorari, 23-740, United States Supreme Court. Pending

- *Golden v. Google LLC*, 3:2022cv05246, California Northern District Court. Pending

- *Golden v. Qualcomm, Inc.*, 4:2022cv03283, California Northern District Court. Judgment entered March 15, 2023

- *Golden v. Intel Corporation*, 5:2022cv03828, California Northern District Court. Judgment entered November 22, 2022

- *Golden v. Apple, Inc.*, 3:2022cv04152, California Northern District Court. Judgment entered October 20, 2022

- *Golden v. Samsung Electronics America, Inc.*, 3:2023cv00048, California Northern District Court. Judgment entered June 8, 2023

- *Golden v. Samsung Electronics America, Inc.*, 0:2023cvpri02120, U.S. Court of Appeals, Federal Circuit. Pending

- *Golden v. Qualcomm Incorporated*, 0:2023cvpri01818, U.S. Court of Appeals, Federal Circuit. Judgment entered October 10, 2023

iv

## RELATED CASES—Continued

- *Golden v. US*, 0:2023cvus02139, U.S. Court of Appeals, Federal Circuit. Judgment entered December 15, 2023

- *GOLDEN v. USA*, 1:2013cv00307, U.S. Court of Federal Claims. Judgment entered November 10, 2021

- *GOLDEN v. USA*, 1:2023cv00811, U.S. Court of Federal Claims. Pending

v

## TABLE OF CONTENTS

Page

QUESTIONS PRESENTED ................................. i

PARTIES TO THE PROCEEDINGS ................... iii

RELATED CASES .............................................. iii

INDEX OF APPENDICES.................................... vi

TABLE OF AUTHORITIES................................. viii

PETITION FOR A WRIT OF CERTIORARI ....... 1

OPINIONS BELOW............................................. 1

JURISDICTION................................................... 1

STATUTES AND CONSTITUTIONAL PROVI-
  SIONS INVOLVED.......................................... 2

INTRODUCTION AND STATEMENT................ 2

REASONS FOR GRANTING THE WRIT............ 6

  I.   AN EXAMPLE OF "WHAT", "HOW", AND
       "WHERE" THE GOVERNMENT APPRO-
       PRIATED OR USED PETITIONER'S PA-
       TENTED    INVENTION(S)    WITHOUT
       PAYING JUST COMPENSATION: A DE-
       SCRIPTION   OF   INVENTIONS   THAT
       SUPPORTS THE THREE ECONOMIC
       STIMULUS PACKAGES ........................... 11

  II.  PETITIONER'S PATENTED INVENTIONS
       FOR THE "SAFERACK" PROJECT; AP-
       PROPRIATED OR USED BY THE GOV-
       ERNMENT(DHS)  ITSELF,  WITHOUT
       JUST COMPENSATION".......................... 17

vi

TABLE OF CONTENTS—Continued

Page

III. PETITIONER'S PATENTED INVENTIONS FOR THE "V-TECTION" PROJECT; APPROPRIATED OR USED BY THE GOVERNMENT (DHS) ITSELF, WITHOUT JUST COMPENSATION".......................... 18

IV. PETITIONER'S PATENTED INVENTIONS FOR THE "ATPG" PROJECT; APPROPRIATED OR USED BY THE GOVERNMENT (DHS) ITSELF, WITHOUT JUST COMPENSATION"................. 20

V. THE DISTRICT AND APPELLATE COURTS' YEARS OF SYSTEMIC AND STRUCTURAL RACISM LANDED WITH THE GOVERNMENT "TAKING" THREE OF THE MOST SIGNIFICANT ECONOMIC STIMULUS AND TERRORISM PREVENTION PACKAGES IN AMERICAN HISTORY ......................................................... 21

CONCLUSION.................................................... 36

APPENDIX

APPENDIX 1—FINAL WRITTEN DECISION; United States Patent Trial and Appeal Board (PTAB) (10/01/2015).........................................App. 1

APPENDIX 2—DECISION DENYING REHEARING: United States Patent Trial and Appeal Board (PTAB) (11/17/2015) ...............App. 40

vii

TABLE OF CONTENTS—Continued

Page

APPENDIX 3—Decision: United States Court of
   Appeals for the Federal Circuit (CAFC)
   (04/10/2020) ................................................... App. 50

APPENDIX 4—Order: United States Court of
   Federal Claims (COFC) (05/30/2023) ............ App. 68

APPENDIX 5—Order on Reconsideration;
   United States Court of Federal Claims
   (COFC) (06/22/2023) ...................................... App. 73

APPENDIX 6—On Motion for Summary Affir-
   mance: United States Court of Appeals for the
   Federal Circuit (CAFC) (12/15/2023) ............. App. 76

APPENDIX 7—Order: Denying *En Banc* Re-
   hearing; United States Court of Appeals for
   the Federal Circuit (CAFC) (01/25/2024) ...... App. 80

viii

## TABLE OF AUTHORITIES

Page

CASES

*Department of Homeland Security v. Larry Golden*, Case No. IPR2014-00714..............................6

*FastShip, LLC v. U.S.*.................................................33

*Golden v. US*, Case No. 19-104 (2019)..........................8

*Golden v. US*, Case No. 19-2134 (2020)..............5, 8, 27

*Golden v. US*, COFC Case No 23-811C......................36

*Great Falls Mfg. Co.*, 112 U.S. at 656 ..........................29

*Horne v. Dep't of Agric.*, 569 U.S. 513 (2013)........28, 30

*James v. Campbell*, 104 U.S. 356 (1882).........21, 31, 38

*Kirby*, 467 U.S. at 5; *Dow*, 357 U.S. at 22 ..................29

*Larry Golden v. US*, COFC Case No. 13-307C......9, 22, 25, 30-34

*Return Mail Inc. v. U.S. Postal Service* (2019)........9, 10

*United States v. Bormes*, 568 U.S. 6 (2012)................27

*United States v. Cooper Corp.*, 312 U.S. 600 (1941).........................................................................9

*United States v. Fausto*, 484 U.S. 439 (1988) .............28

*United States v. Fox*, 94 U.S. 315 (1877)......................9

*United States v. Mine Workers*, 330 U.S. 258 (1947).........................................................................9

*United States v. Mitchell*, 463 U.S. 206 (1983)...........29

*Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 2 USPQ2d 1051 (Fed. Cir. 1987) ........7

ix

TABLE OF AUTHORITIES—Continued

Page

*Vermont Agency of Natural Resources v. United States* ex rel. *Stevens*, 529 U.S. 765 (2000) ...............9

*Zoltek III* ...................................................................32

*Zoltek V* ................................................................4, 32


CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. V .........................................22, 34

Civil Rights Act of 1957 ...............................................6

Leahy-Smith America Invents Act (AIA) of 2011... 8, 28

Tucker Act.................................................22, 27-29, 36


STATUTES

28 U.S.C. § 144 .........................................................37

28 U.S.C. § 1491(a)...................................................2, 5

28 U.S.C. § 1498(a)..................................4, 5, 32, 34-36

35 U.S.C. § 6(c) ..........................................................8

35 U.S.C. § 101 ...........................................................2

35 U.S.C. § 102 ...........................................................6

35 U.S.C. § 271(a)...................................................4, 32

35 U.S.C. § 282(a).......................................................12

1

## PETITION FOR A WRIT OF CERTIORARI

Larry Golden petitions for a writ of certiorari to review the judgement of the United States Court of Appeals for the Federal Circuit in this case.

———————◆———————

## OPINIONS BELOW

The Patent Trials and Appeals Board final written decision addressing the questions (App. 1-39). The Patent Trials and Appeals Board decision denying rehearing addressing the questions (App. 40-49). The Court of Appeals for the Federal Circuit opinions addressing the questions (App. 50-67), (App. 76-79), and (App. 80-81) are unreported. The Court of Federal Claims opinions addressing the questions (App. 68-72), and (App. 73-75) are unreported.

———————◆———————

## JURISDICTION

The Patent Trials and Appeals Board (PTAB) entered judgement on October 1, 2015 (App. 1). The PTAB denied a timely filed petition for rehearing on November 17, 2015 (App. 2). The Court of Appeals entered judgement on December 15, 2023 (App. 6). The Court of Appeals denied a timely filed petition for rehearing en banc on January 25, 2024 (App. 7). This Court has jurisdiction under 28 U.S.C. § 1254(1).

———————◆———————

2

## STATUTES AND CONSTITUTIONAL
## PROVISIONS INVOLVED

28 U.S.C. § 1491(a)—Government Unconstitutional IPR-Based "Takings" of Property under the Fifth Amendment Clause of the United States Constitution, without "Due Process" of Law and without Just Compensation.

——————◆——————

## INTRODUCTION AND STATEMENT

The Petitioner, as far back as year 2003, provided the Government with three Economic Stimulus and Terrorist Prevention Packages: "The SafeRack Project" which includes the technology for ubiquitous CBRNE sensing for our Nation's most vulnerable places; "The V-Tection Project", which includes controlling a vehicle's stop, stall, and slowdown, both remotely, and through satellite and cellular, by means of at least a smartphone—a pre-programmed stop, stall, and vehicle slowdown that is triggered to avoid a collision; and the "Anti-Terrorism Product Grouping (ATPG) Project", which includes a communicating, monitoring detecting, and controlling (CMDC) device from the products grouped together by common features of design similarities of at least that of a smartphone, or a new, improved upon, and useful laptop, PC computer, desktop, tablet, PDA, or cell phone [35 U.S.C. § 101]:

> *"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful*

3

> *improvement thereof, may obtain a patent*
> *therefor, subject to the conditions and require-*
> *ments of this title."*

Six months after the DHS was established on Nov. 25, 2002, Petitioner receive a response letter on May 21, 2003 from the Honorable Senator Fritz Hollings: "I have contacted the Department of Justice and the Department of Homeland Security to try to be of assistance"; on June 3, 2003 from the Office of the Vice President, Dick Cheney: "[y]our correspondence has been forwarded to the Department of Homeland Security for review. You will hear back directly from the Department"; on October 1, 2003 from the Honorable Senator Fritz Hollings: "[t]hank you for contacting me regarding your difficulty with receiving a response from the Department of Homeland Security"; on October 21, 2003 from the Honorable Senator Lindsey Graham: "I have contacted the Department of Homeland Security on your behalf. I have asked that they review your request and respond directly to you"; on June 20, 2005 from the Office of the President, George Bush: "[t]hank you for your letter regarding homeland security technology procurement. Please know I have forwarded it to the Department of Homeland Security for review and response".

> "HE SHARED HIS INFORMATION WITH OUR GOVERNMENT" only to discover that he and his patents were being infringed. Larry sued and consequently faced a brutal Patent Trial and Appeal Board (PTAB) attack by Homeland Security, joined by the Department of Defense. Larry has experienced

4

incredible hardships due to our government infringing on his "constitutionally protected" property rights. Facing PTAB attacks by large entities is the norm for an inventor with a truly valuable invention. When facing such an attack, the inventor is often fighting an assailant with resources that seem unlimited. In Larry's case, it didn't just seem that way. The entity that attacked and invalidated his patent was actually the US Government! https://usinventor.org/portfolio-items/larry-golden-inventor-founder-of-atpg-technology-llc/

Petitioner will demonstrate how the Government, on multiple occasions since 2008, has "taken" Petitioner's property under the Fifth Amendment Clause of the United States Constitutional, without due process of law and without just compensation. Petitioner will demonstrate how the Government has continuously violated certain statutes and procedurals as a means of retaliation because Petitioner filed a Government "Takings" claim against the Department of Homeland Security (DHS) in the United States Court of Federal Clams in 2013. Petitioner will also show how the Department of Justice (DOJ) participated in the "takings" of Petitioner's property by narrating and directing the Court, to litigate on actions and defenses unrelated to Petitioner's cause of action, such as "having plaintiff prove direct infringement under 35 U.S.C. § 271(a) as a predicate to proving direct infringement under 28 U.S.C. § 1498(a)". Overturned in *Zoltek V.*

5

The DOJ discarded seven of the eight Government Contractors (i.e., NASA, SeaCoast, Rhevision, Synkera, Qualcomm, LG, Samsung, and Apple) for the DHS S&T BAA07-10 *Cell-All Ubiquitous Biological and Chemical Sensing* initiative, to that of a dispute between private parties, the Petitioner and Apple, Inc.

The jurisdiction of the United States Court of Federal Claims (COFC) is to resolve disputes for money damages brought against the United States Government. The COFC was outside its jurisdiction to adjudicate a dispute between the private parties of Golden and Apple.

The DOJ and the DHS used this jurisdictional violation to avoid addressing Petitioner's Government "taking" claim. The Government must be a Defendant (DHS) for a claim of a Fifth Amendment "takings" under 28 U.S.C. § 1491(a), and a Defendant (DHS) for a claim of Government "infringement" under 28 U.S.C. § 1498(a).

Likewise, Petitioner's Unconstitutional IPR-Based "Takings" claim, that was joined with the lead case [COFC Case No. 13-307C] in 2019, cannot legally be dismissed under the doctrine of the statute of limitations, because the COFC allowed Golden's Unconstitutional IPR-Based "Takings" claim to sit on the docket after the CAFC *Golden v. US*, Case No. 19-2134 (2020), and the COFC Court never addressed the claim before the COFC closed the lead case on 11/10/2021.

Petitioner is the only person in American history who spent years working on projects to restore our

6

Nation's economy after the 9/11 attacks with strategies and technology, that when revealed to the U.S. Government; the Government has spent years discrediting Petitioner's work, and making Petitioner's life a living hell. The Civil Rights Division of the Department of Justice, created in 1957 by the enactment of the Civil Rights Act of 1957, suppose to work to uphold the civil and constitutional rights of all persons in the United States, particularly some of the most vulnerable members of our society. Included are Blacks and/or African Americans.

———————◆———————

## REASONS FOR GRANTING THE WRIT

The PTAB Judges in *Department of Homeland Security v. Larry Golden*, Case No. IPR2014-00714, were intimidated and forced to act under duress, by the DHS and the DOJ, to ignore the multiple times the Patent Owner "begged" the DOJ, DHS, and PTAB before, in the Patent Owner's Preliminary Response (paper 23); during the IPR trial in papers 25, 26, 29, 33, and 35; and in the Patent Owner's Request for Rehearing (paper 36), not take the Patent Owner's patent claims with unqualified patent references of Astrin, Breed, and Mostov.

Under no conditions, nor any prevailing law, can an *inter partes review* (IPR) be instituted with three unqualified patent references that do not antedate the priority date of the challenged patent or patent claims. A claimed invention may be rejected under 35 U.S.C.

7

102 when the invention is anticipated ("not novel") over a disclosure that is available as prior art.

To reject a claim as anticipated by a reference, the disclosure must teach every element required by the claim under its broadest reasonable interpretation. See, e.g., MPEP § 2114, subsections II and IV. "A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631, 2 USPQ2d 1051, 1053 (Fed. Cir. 1987). The basis for "anticipation" is that the patent references considered for prior act, has priority filing dates that proceeds the challenged patent.

*Procedural Due Process* refers to the constitutional requirement that when the federal government acts in such a way that denies a citizen [Patent Owner] of a life, liberty, or property interest, the person must be given notice, the opportunity to be heard, and a decision by a neutral decision-maker.

The Government has been given multiple years and multiple opportunities to retract or reverse its unlawful acts but fail, or simply refuse to do so. As a result of the Government's reluctance to rectify, Petitioner has suffered a government "taking" of his Property under the Fifth Amendment Clause of the U.S. Constitution without being paid "just compensation".

The Unconstitutional "Takings" begin on 04/30/2014 when the Department of Homeland Security (DHS) petitioned the U.S. Patent Trial and Appeal Board

8

(PTAB) with unqualified patent references. The "Takings" continued when on 10/08/2014, the PTAB instituted trial on two of the unqualified patent references [Astrin and Breed]. The "Takings" ended when the PTAB issued a Final Written Decision on 10/01/2015.

Petitioner filed his Unconstitutional IPR-Based "Takings" claim against the Government on 01/17/2019 *Golden v. US*, Case No. 19-104 (2019). Well within the statutory six-year statute of limitations. Judge Bruggink join this case with the lead case *Golden v. US*, Case No. 19-104 on 01/29/2019. The Federal Circuit on 04/10/2020 *Golden v. US*, Case No. 19-2134 determined Petitioner was well within his constitutional rights to filed an Unconstitutional IPR-Based "Takings" claim in the U.S. Court of Federal Claims (COFC).

The COFC allowed Golden's Unconstitutional IPR-Based "Takings" claim to sit on the docket, after the Federal Circuit's decision in *Golden v. US*, Case No. 19-2134 (2020), and never addressed the Unconstitutional IPR-Based "Takings" claim before the COFC closed the lead case on 11/10/2021. The Government's argument that the claim is barred because of the statute of limitations, is simply a "lie" used to justify the "takings" of Petitioner's property.

The Leahy-Smith America Invents Act (AIA) of 2011 created the Patent Trial and Appeal Board, 35 U.S.C. § 6(c), and established three types of administrative review proceedings before the Board that enable a "person" other than the patent owner to challenge the validity of a patent post-issuance: (1) "inter partes

9

review," §311; (2) "post-grant review," §321; and (3)
"covered-business-method review" (CBM review), note
following §321.

In the absence of an express statutory definition,
the Supreme Court applied a "longstanding interpre-
tive presumption that 'person' does not include the
sovereign," and thus excludes a federal agency like the
Postal Service. *Vermont Agency of Natural Resources v.
United States* ex rel. *Stevens*, 529 U.S. 765, 780-781
(2000); see *United States v. Mine Workers*, 330 U.S. 258,
275 (1947); *United States v. Cooper Corp.*, 312 U.S. 600,
603-605 (1941); *United States v. Fox*, 94 U.S. 315, 321
(1877).

Plaintiff-Appellant's "takings" case was decided
when the U.S. Supreme Court in *Return Mail Inc. v.
U.S. Postal Service* (2019) decided the [Dept. of Home-
land Security (DHS) and the Dept. of Justice (DOJ)]
are not "persons" authorized to petition the PTAB for
*inter partes* review. The decision nullified the IPR pro-
ceedings as whole because of the fraudulent and de-
ceitful activities [violation of constitutional statutes
and procedures] of the Dept. of Homeland Security
(DHS) and the Dept. of Justice (DOJ) and the Patent
Trials and Appeals Board (PTAB).

In Golden's Motion for Leave to File a Motion for
Summary Judgement *Larry Golden v. United States*,
COFC Case 1:13-cv-00307-EGB Document 196 Filed
*11/03/20*, Golden continued his efforts to get the DOJ
and the COFC Court to address Golden's Unconstitu-
tional IPR-Based "Takings" claims. Golden believed

10

the U.S. Supreme Court decision in *Return Mail Inc. v. U.S. Postal Service* (2019) provided sufficient evidence for Summary Judgement in view of the malicious prosecution in which the Patent Owner claims the DOJ & DHS knowingly pursued a base IPR case against the Patent Owner.

The COFC ignored Petitioner's attempt to have Petitioner's Unconstitutional IPR-Based "Takings" claims adjudicated. The claim was never adjudicated before being dismissed.

The Unconstitutional IPR-Based "takings" proceedings ended with the only Patent Owner (Black and/or African American inventor) in the Nation to have his property taken by unauthorized Government agencies, without paying just compensation.

Malicious prosecution means the Defendants [DOJ & DHS] began or continued the civil legal proceeding without reasonable grounds to believe the basis for it, or the allegations made in it. Even if the DOJ & DHS who petition the PTAB for an *inter partes review*, think they have a winning case and are petitioning for a legitimate reason when they begin the case, they can be guilty of malicious prosecution if they discover a reason they cannot win during the case, and continue the case for improper motives anyway.

After being exposed by the Patent Owner that the references of Astrin, Breed, and Mostov are unqualified references to satisfy a 102-antipation objection; and the Government agencies [DOJ & DHS] are unauthorized "persons" for petitioning the PTAB to

11

invalidate the Patent Owner's patent claims, the DOJ and DHS continued the case for the improper motive of "Taking" the Patent Owner's property under the Fifth Amendment Clause of the U.S. Constitution, without "due process of law", and without paying "just Compensation."

Therefore, the statute of limitations does not apply because Petitioner's "Unconstitutional IPR-Based "takings" claim, that was joined in the lead case in 2019, was still an active cause of action until the COFC closed the lead case on 11/10/2021.

The inappropriate behavior of the DOJ and the DHS; the indisputably bias, partial, and erroneous decisions of the lower Courts in favor of the DOJ & DHS; and the violations of Petitioner's rights enforceable against the United States for money damages; still, does not answer the questions of when, what, and how the Government's appropriation or use of a patented invention, without paying just compensation, creates liability for the Government?

## I. AN EXAMPLE OF "WHAT", "HOW", AND "WHERE" THE GOVERNMENT APPROPRIATED OR USED PETITIONER'S PATENTED INVENTION(S) WITHOUT PAYING JUST COMPENSATION: A DESCRIPTION OF INVENTIONS THAT SUPPORTS THE THREE ECONOMIC STIMULUS PACKAGES

Petitioner owns 11 patents that has over 300 patent claims. U.S. Patent No. 9,589,439 [the '439 patent]

12

was issued on March 7, 2017 with a Priority date of
Disclosure [Conception] filed at the USPTO on November 26, 2004, and a Priority patent application filing
date of April 5, 2006. The following Claim 1 of the '439
patent was issued with the presumption of validity
[35 U.S.C. § 282(a)] and illustrates the product grouping strategies for intergrading the technology rational
of the three economic stimulus packages for Border
Security. The claim describes "what" in Petitioner's patent is being appropriated or used:

    1.  A multi sensor detection system capable of identifying, monitoring, detecting,
and securing those critical areas (e.g., U.S.
borders), sites, locations and facilities vulnerable to terrorist activity that can be integrated with and interconnected to
watchtowers to form a network, comprising:

    at least one of an integrated watchtower,
a fixed watchtower, a surveillance watchtower,
a watchtower capable of scanning, a watchtower capable of monitoring, a watchtower
equipped with sensors or a watchtower interconnected to a central monitoring terminal for
sending signals thereto and receiving signals
therefrom;

    wherein the at least one watchtower is
equipped with a remote video surveillance
camera that provides at least one night vision
means of surveillance or an infrared human
detection means of surveillance capability
and is integrated into a watchtower's

13

remotely controlled system that can monitor, detect, track, and identify humans;

a communication device of at least one of a mobile communication device, a mobile communication unit, a portable communication device, portable communication equipment, a wired communication device, a wireless communication device, a monitoring site, a monitoring terminal, a web server, a desktop personal computer (PC), a notebook personal computer (PC), a laptop, a satellite phone, a smart phone, a cell phone, a Universal Mobile Telecommunications System (UMTS) phone, a personal digital assistant (PDA), a liquid crystal display (LCD) monitor, a satellite, or a handheld, interconnected to a monitoring equipment for sending signals thereto and receiving signals therefrom;

a communication method of at least one of a Bluetooth, Wi-Fi, Wi-Max, Internet, Ethernet, Broadband, Network Bandwidth, Wireless, Wired, Text Messaging, Cellular, Satellite, Telematics, Wide Area Network (WAN), Wireless Wide Area Network (WWAN), Local Area Network (LAN), Radio Frequency (RF), Broadband Wireless Access (BWA), Global Positioning System (GPS), or central processing unit (CPU), used to interconnect the communication device to the monitoring equipment for sending signals thereto and receiving signals therefrom;

a plurality of sensors for detecting or sensing humans that is at least one of a

14

chemical human sensor, biological human
sensor, radiological human sensor, infrared
human detector, motion human detector, or
image human detector, interconnected to or
disposed within the multi-sensor detection
system for sending signals thereto and receiv-
ing signals therefrom;

a mobile multi-sensor detection device
that is at least one of a ground surveillance
sensor, a surveillance radar sensor, a surveil-
lance camera, or a stand-alone surveillance
scanner, that is mounted in, on, or upon at
least one of a car, a truck, a camper, a bus, a
van, an unmanned aerial vehicle (UAV), an
unmanned ground vehicle (UGV), or a utility
vehicle, interconnected to the monitoring
equipment for sending signals thereto and re-
ceiving signals therefrom;

a hand-held multi-sensor detection device
that is capable of at least one of thermal im-
aging or infrared imaging for monitoring, de-
tecting, tracking and identifying humans,
that is controlled or operated by at least one
authorized person who is an owner, pilot,
conductor, captain, drivers of vehicles identi-
fied as high security, airport security, police,
highway patrol, security guard, military per-
sonnel, hazardous material (HAZMAT) per-
sonnel, Central Intelligence Agency (CIA),
Federal Bureau of Investigation (FBI), Secret
Service, port security personnel, border secu-
rity personnel, first responders, or monitoring
site and terminal personnel, interconnected to
the monitoring equipment for sending signals

15

thereto and receiving signals therefrom,
wherein the authorized person manually ini-
tiates the signal to the monitoring equipment
to alert upon the monitoring, detecting, track-
ing and identifying of the human;

whereupon, detection by the mobile
multi-sensor detection device causes an auto-
matic signal transmission to be sent to, or re-
ceived from, any products in product grouping
categories of storage and transportation, sen-
sors, detector case; modified and adapted,
monitoring and communication devices, com-
munication methods, biometrics;

whereupon, detection of an unauthorized
vehicle, an unauthorized driver or operator of
a vehicle or mobile unit, a signal is sent from
the communication device to the vehicle or
mobile unit to stop, stall or slowdown the ve-
hicle;

wherein, a communication device of at
least one of a mobile communication device, a
mobile communication unit, a portable com-
munication device, portable communication
equipment, a wired communication device, a
wireless communication device, a monitoring
site, a monitoring terminal, a web server, a
desktop PC, a notebook PC, a laptop, a satel-
lite phone, a smart phone, a cell phone, a
UMTS phone, a PDA, a LCD monitor, a satel-
lite, or a handheld, interconnected to the mon-
itoring equipment for sending signals thereto
and receiving signals therefrom, comprising
a lock disabling mechanism that is able to

16

engage (lock), and disengage (unlock) and dis-able (make unavailable) after a specific num-ber of tries.

## DHS "Secure Border Initiative Network" (SBInet):

A new integrated system of personnel, infrastruc-ture, technology, and rapid response to secure the northern and southern land borders of the United States. It was a part of Secure Border Initiative (SBI), an overarching program of the United States Depart-ment of Homeland Security (DHS).

Towers were meant to be set up along the border, with varying surveillance and communications equip-ment depending on the climate, terrain, population density, and other factors. Towers were slated to in-clude radar, long-range cameras, broadband wireless access points, thermal imaging capabilities, and mo-tion detectors. SBInet was meant to also include some ground sensors for seismic detection as well.

Border Patrol agents were meant to carry PDAs (i.e., smartphones) with GPS capabilities, to allow the command center to track the location of agents inter-dicting illegal entries and watch the encounter in real time on the common operating picture. Additionally, the PDAs (i.e., smartphones) were supposed to have advanced fingerprint identification technology, to al-low Border Patrol agents to identify an individual at the interdiction site immediately and the ability to view and control tower cameras from the PDA (i.e., smartphone). In addition, Border Patrol agents were

17

to be given laptops in the patrol car to provide the information necessary to effectively and safely approach a given threat.

Airborne sensors on unmanned aerial vehicles (UAVs) were meant to fill in gaps in the "virtual fence" in remote areas where building and maintaining towers was impractical. A small UAV called the Skylark operated by a single individual, was considered.

## II. PETITIONER'S PATENTED INVENTIONS FOR THE "SAFERACK" PROJECT; APPROPRIATED OR USED BY THE GOVERNMENT(DHS) ITSELF, WITHOUT JUST COMPENSATION"

**DHS "BioWatch" GEN 3:**

The purpose of this acquisition is to obtain a fully autonomous networked biodetection capability (known as Generation 3 or Gen-3) that will be deployed, operated, and sustained, both indoor and outdoor, in selected US BioWatch jurisdictions throughout the United States to continuously monitor the air for agents of biological concern. This requirement supports the Department of Homeland Security (DHS) plans to [implement] an autonomous biodetection capability that will improve timeliness, time resolution, population coverage, and cost effectiveness.

The BioWatch Gen-3 Autonomous Detection capability must be able to: (1) rapidly process and accurately analyze aerosol samples with a high level of confidence, (2) automate and integrate the major

18

system functions into the detector including aerosol sample collection, preparation, analysis, and analytical results reporting, (3) operate in its intended indoor and outdoor environments, and (4) disseminate and archive analysis results and system operational data via the C3 network, known as the Gen-3 BioWatch Operations Support Service (G3BOSS).

Thus, it is necessary to acquire an autonomous biological detection capability. An autonomous biodetection system is capable of integrating the sample collection, preparation, analysis, and reporting functions, and autonomously executing these tasks without requiring human intervention or control. An autonomous biodetection system will maximize current technology and enhance biosurveillance by reducing the time required to provide awareness of the presence of biothreat agents and provide economies of scale enabling the expansion of population coverage with incrementally reduced costs. Accordingly, the Department of Homeland Security (DHS) Office of Health Affairs (OHA) plans to procure and deploy a BioWatch Generation 3 (Gen-3) fully autonomous detection system.

## III. PETITIONER'S PATENTED INVENTIONS FOR THE "V-TECTION" PROJECT; APPROPRIATED OR USED BY THE GOVERNMENT (DHS) ITSELF, WITHOUT JUST COMPENSATION"

**DHS S&T Directorate "Autonomous Technology":**

DHS continues to partner with companies that manufacture technologies that can disrupt, disable,

19

and control UAVs. In particular, DHS works with the Department of Defense, other government agencies, and private corporations to develop the means to incapacitate rogue autonomous drones. DHS ensures such technology is in place to protect high-value targets like government buildings, borders, prisons, and sensitive facilities. DHS is mandating UAVs are only made available that include GPS geo-referenced data with denied areas restrictions programmed into all flight modes.

Techniques to protect crowds and high value targets from terrorist threats include working with autonomous trucking companies and major carriers; devising methods for safeguarding and detecting lethal payloads through embedded and remote sensors; preventing the hacking and the manipulation of electronic manifests; restricting access by autonomous trucks to areas proximate to vulnerable high-value targets; and promoting technologies, such as geofencing, and sensors, for stopping such vehicles from being used nefariously.

Autonomous technology is a true force multiplier for DHS CBP, enabling Border Patrol agents to remain focused on their interdiction mission rather than operating surveillance systems. Investments in autonomous operation, artificial intelligence, and other advanced technologies native to the Autonomous Surveillance Towers are absolutely essential to border security and compliment other capabilities such as the Border Wall System, Remote Video Surveillance System, Integrated Fixed Towers, Mobile Surveillance and small drones.

20

## IV.  PETITIONER'S PATENTED INVENTIONS FOR THE "ATPG" PROJECT; APPROPRIATED OR USED BY THE GOVERNMENT (DHS) ITSELF, WITHOUT JUST COMPENSATION"

**The DHS *"Cell-All"* Project:**

*Cell-All* is a program managed by DHS to develop software and hardware that enables smartphones to function as handheld, pervasive environmental sensors. In the initial research and development phase, engineers miniaturized sensors to detect abnormal levels of potentially dangerous chemicals in the surrounding environment. When dangerous levels are detected, an application on the cell phone should automatically send sensor and location data over the network to a centralized server, which will then contact appropriate agencies and first responders. The eventual goal of the project is to embed multiple nanoscale sensors (for environmental chemicals, industrial toxins, radiation, and bioagents) directly into mobile phones.

During the development of second-generation prototypes, chemical sensors were separated from the phones, allowing for initial market deployment of the sensors through third-party products, such as sleeves, that could be added to existing phones (U.S. Department of Homeland Security, 2011a). This use of third-party accessory products is intended to speed up the technology's commercial availability so that people can begin using the Cell-All applications with their current phones before integrated sensors are fully operational and readily available. At a September 2011 live test

21

and demonstration of second-generation prototypes at the Los Angeles Fire Department's Frank Hotchkin Memorial Training Center, Synkera's prototype was already on the market and NASA's sensor was awaiting clearance for public release. DHS presentations at this event conveyed that next generation, sensor-embedded phones would roll out gradually over the next few years and, as with cameras in phones, would soon become standard (U.S. Department of Homeland Security, 2011a).

As the Court summed up in *James v. Campbell*, 104 U.S. 356, 358 (1882), a case concerning the alleged appropriation of a patent by the Government: *"[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation"*. Without question, the Government is appropriating and using Petitioner's patented inventions, without paying just compensation.

## V. THE DISTRICT AND APPELLATE COURTS' YEARS OF SYSTEMIC AND STRUCTURAL RACISM LANDED WITH THE GOVERNMENT "TAKING" THREE OF THE MOST SIGNIFICANT ECONOMIC STIMULUS AND TERRORISM PREVENTION PACKAGES IN AMERICAN HISTORY

**Standards of Review for a Continuous Non-Stop Government "Takings"**

"The Fifth Amendment prohibits the federal government from taking private property for public use

22

without paying just compensation. U.S. Const. amend. V. "It is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source [of law] for purposes of Tucker Act jurisdiction" in the Court of Federal Claims. *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).

Petitioner brought an action in the Court of Federal Claims [2013] against the Government for allegedly "taking' Petitioner's property. Petitioner alleged three counts of a government "takings" under the same case no. 13-307C *Golden v. US*. *Takings I* happen before the case no. 13-307C *Golden v. US* was filed in 2013 and is the basis for the claim. *Takings II* happen after the case no. 13-307C *Golden v. US* was filed in 2013, in a USPTO PTAB IPR Trial. *Takings III* happen as a result of the Claims Court adjudicating a dispute between private parties that is outside the Court's jurisdiction in case no. 13-307C *Golden v. US*.

### *"Takings" I*

As a result of the 9/11 attacks, between the years 2003-2005, Golden submitted three (3) Economic Stimulus and Terrorism Prevention Packages, that included strategies for stimulating our economy as a whole and the African-American community, to at least that of President Bush, VP Cheney, and S.C. Senators Holland, DeMint, and Graham.

President Bush, VP Cheney, and S.C. Senators Holland, DeMint, and Graham sent the *nonfrivolous* "Economic    Stimulus    and    Terrorism    Prevention

23

Packages", that included technology for CBRNE detection devices (the "SafeRack" package); technology for a new, improved upon, and useful cell phone, PC, tablet, laptop, etc. (the "ATPG" package); and technology for a remote stop, stall, and vehicle slow-down system, and pre-programmed stopping, stalling, and slowing down of a vehicle (the "V-Tection" package), over to the Department of Homeland Security (DHS) for development and implementation.

Golden's evidence is the response letters Golden received from the offices of President Bush, VP Cheney, and S.C. Senators Holland, DeMint, and Graham.

Golden traveled to Colorado in 2006 for the Government Agencies (DoD, DOE, DHS, etc.) SBIR Tour. Golden met with, and left behind copies of Golden's stimulus packages with Lisa Sabolewski, DHS SBIR Program Manager, who in turn asked Golden to send the information to her via email. (E-mail correspondence available).

Golden responded to an RFI in 2007 to the DHS/S&T Safe Container (SafeCon) Initiative, and discussed the intellectual property subject matter of Golden's inventions with DHS Margo Graves; Program Manager. (E-mail correspondence available).

Golden submitted a proposal in 2007, in response to the DHS S&T *Cell-All Ubiquitous Biological and Chemical Sensing* request for proposals, and upon request, resubmitted Golden's intellectual property directly to the Stephen Dennis, DHS Program Manager for the *Cell-All Ubiquitous Biological and Chemical*

*Sensing* initiative in 2008. (E-mail correspondence available).

Golden traveled to Washington, DC in 2008 with his lead engineer [Harold Kimball] to discuss a "read-ahead" document of Golden's intellectual property and the possibility of Golden incubating his company at the Department of Homeland Security (DHS). Golden and Mr. Kimball met with Ed Turner, DHS/S&T Program Manager.

Golden was invited by DHS to Sacramento, CA in 2008 to attend a T.R.U.ST Industry Day Symposium. Golden discussed and left copies of his intellectual property subject matter with a selected panel. Golden was walked out by the Program Manager Dave Masters, where he promised Golden, he will release a Request for Proposal in the near future that aligns with Golden's intellectual property technological rational.

*Takings I* begin in 2008 when the DHS made a "final decision" to take and give Golden's intellectual property subject matter to Apple, Samsung, LG, NASA, Synkera, SeaCoast, Rhevision, and Qualcomm for development and commercialization. This happened two years before the DHS cause the release of the first infringing product in 2010.

Some statistics about the award: 1) Golden was the only person (African American) to hold a patent(s) for the cell phone sensing device the Government was requesting; Golden owned the only African American company (ATPG Technology, LLC) not awarded a contract, in view of the eight other white-owned

25

companies that was awarded to develop and assemble Golden's patented devices; and, sixty millions African Americans are the only ones who are not benefitting from the three economic stimulus packages, through the not-for-profit company (ATPG Corporation) Golden established to receive funding specifically targeted for African Americans.

Within the six-year statute of limitations period, in 2013 Golden filed a takings claim in the COFC under case no. 13-307C *Golden v. US*. The DOJ & DHS motioned to "stay" Golden's takings claims and in 2014 the COFC court stayed Golden's takings claim until 2019.

The DOJ & DHS spent six years lying to the Court that Golden's takings claim was no different than Golden's infringement claims.

The COFC dismissed Golden takings claim because DOJ & DHS said "taking Golden's property and giving it to Apple, Samsung, LG, and Qualcomm, sounds like infringement". The takings begin in 2003 and a final decision to take Golden's property [ripeness of the takings] was made in 2008. Two years before the first infringing product that included all the inventions' elements were released.

Therefore, Golden's Takings claim, for the Government taking Golden's property and giving it to Apple, Samsung, LG, and Qualcomm, was never adjudicated before the case closed on November 10, 2021. In government-mediated private takings, private actors functionally seize property through eminent domain,

26

but rely upon the government's formal authority to do so.

These types of takings do not involve any delegation of the power of eminent domain. Rather, the government exercises its own taking power to seize property from one private actor, before then granting it to another private actor. Such takings have also been designated "public private takings."

### *"Takings" II*

Within the six-year period from ***10/01/2015***, Golden filed in the United States Court of Federal Claims, on ***01/17/2019*** in *Larry Golden v. United States*, Case No. 1:19-cv-00104-EGB, Golden initiated the filing of an Unconstitutional IPR-Based Takings claim against the Government, the United States.

In *Larry Golden v. United States*, Case No. 1:19-cv-00104-EGB *OPINION*. Document: 12 Page: 4 Filed: ***05/14/2019***. The United States Court of Federal Claims responded to the Government's Motion to Dismiss for lack of jurisdiction: "Finally, as we held in the related action, plaintiff fails to state a claim to the extent that his complaint alleges a taking by the actions of this court, the Federal Circuit, or the PTAB." ... "Plaintiff appears to argue that the cancellation of his '990 independent claims in the IPR at the PTAB constitutes a taking by the PTAB." ... "In sum, plaintiff's takings claim duplicates his related patent action in Docket No. 13-307C, asserts claims over which this court does not have jurisdiction, and fails to state a takings

27

claim. Defendant's Motion is granted pursuant to Rule12(b)(1) and Rule12(b)(6)."

On Appeal from the United States Court of Federal Claims in No. 1:19-cv-00104-EGB, Senior Judge Eric G. Bruggink, in the *OPINION* for *Larry Golden v. United States*, CAFC Case No. 19-2134 Document: 37 Pages: 11-12 Filed: *04/10/2020*. The Federal Circuit clarified the COFC's jurisdiction:

"We next turn to Golden's IPR-based takings claims. We first address whether the Claims Court had jurisdiction to hear these claims. . . . The government argues that the American Invents Act ("AIA")'s creation of inter partes review by the Board, followed by judicial review before this court, creates a "'self-executing remedial scheme' that 'supersedes the gap-filling role of the Tucker Act.'" Id. at 41 (quoting *United States v. Bormes*, 568 U.S. 6, 13 (2012))."

"According to the government, the AIA statutory scheme displaces Tucker Act jurisdiction because there is no procedural impediment to presentation of a takings claim to the agency and because the remedial scheme provides for judicial review of constitutional challenges to the agency's action. Id. at 43-49. The government's argument is without merit."

"In *Bormes*, the Supreme Court explained that Tucker Act jurisdiction is displaced "when a law assertedly imposing monetary liability on the United States contains its own judicial remedies." 568 U.S. at 12 (emphasis added). More recently, the Court explained that, "[t]o determine whether a statutory

28

scheme displaces Tucker Act jurisdiction, a court must 'examin[e] the purpose of the [statute], the entirety of its text, and the structure of review that it establishes." *Horne v. Dep't of Agric.*, 569 U.S. 513, 526-27 (2013) (quoting *United States v. Fausto*, 484 U.S. 439, 444 (1988)). Thus, when there is a precisely defined statutory framework for a claim that could be brought against the United States, the Tucker Act gives way to the more specific statutory scheme. Regardless of the structure of review it establishes, the AIA is not a statute that provides for claims against the United States."

"The government is correct that, under the AIA, parties may raise constitutional challenges in our court on appeal from Board decisions. But this remedial scheme does not convert the AIA into a statutory framework for claims against the United States. The AIA is by no means "a law assertedly imposing monetary liability on the United States." *Bormes*, 568 U.S. at 12. Accordingly, we reject the government's argument that the AIA displaced Tucker Act jurisdiction over Golden's IPR-based takings claims."

In Golden's Motion for Leave to File a Motion for Summary Judgement *Larry Golden v. United States*, COFC Case 1:13-cv-00307-EGB Document 196 Filed *11/03/20*, Golden continued his efforts to get the DOJ and the COFC Court to address Golden's IPR-Based Takings claims. Golden could never be time barred when the Claim was still pending in an active case.

When the United States causes injury to property, a property owner can sue in the Court of Federal

29

Claims. This is a result of the Tucker Act, which waives the United States' sovereign immunity in the COFC only, *United States v. Mitchell*, 463 U.S. 206, 215-19 (1983).

Significantly, a suit alleging a compensable taking in the Court of Federal Claims is viable as soon as government invades a property interest without proving a statutory compensation guarantee. *Kirby*, 467 U.S. at 5; *Dow*, 357 U.S. at 22. The claimant need not sue in another court to "ripen" the takings suit. As the Court stated long ago in *Great Falls Mfg. Co.*, 112 U.S. at 656.

Unless proven otherwise, Golden is the only African American Patent Owner that has ever been petitioned for *Inter Partes Review* at the PTAB by two Government agencies [the Department of Justice (DOJ) and the Department of Homeland Security (DHS)], who are not "persons" authorized to petition the PTAB to invalidate Golden's patents.

Unless proven otherwise, the DHS & DOJ has never petitioned the PTAB for *Inter Partes Review* of patent(s) owned by a White(s).

Unless proven otherwise, Golden is the only African American Patent Owner that has ever been petitioned for *Inter Partes Review* at the PTAB by two Government agencies [the Department of Justice (DOJ) and the Department of Homeland Security (DHS)], who are not "persons" authorized to petition the PTAB to invalidate patents; with three unqualified patent references [Astrin, Breed, and Mostov] that do not antedate Golden's patents.

30

Unless proven otherwise, the DHS & DOJ has never petitioned the PTAB for *Inter Partes Review* of patent(s) owned by a White(s) with any number of unqualified references.

The Trial Court dismissed the lead case COFC 13-307C, without adjudicating Golden's "Unconstitutional IPR-Based "Takings" claim on *11/10/2021*, which "ripen" the takings claim.

### *"Takings" III*

When the DOJ & DHS insisted on a dismissal in their favor *Golden v. US*, Case No. 13-307C; dismissed 11/10/2021, without proving non-infringement or that the patents are invalid, it left the patents with the "presumption of validity". Which means the government cannot appropriate or use Golden's patents without paying "just compensation".

The Supreme Court explicitly recognized that patents are property secured by the Fifth Amendment Takings Clause. In *Horne v. Department of Agriculture*, 569 U.S. 513 (2013) ("Horne I"); 576 U.S. 350, 135 S. Ct. 2419 (2015) ("Horne II"), the Court held that the Takings Clause imposes a "categorical duty" on the government to pay just compensation whether it takes personal or real property.

Chief Justice Roberts, writing for the Court, noted the long history of private property being secured against uncompensated takings by the government, beginning with the Magna Carta some 800 years ago.

31

In further support, Roberts cited a Supreme Court opinion from the late nineteenth century:

> Nothing in this history suggests that personal property was any less protected against physical appropriation than real property. As this Court summed up in *James v. Campbell*, 104 U.S. 356, 358 (1882), a case concerning the alleged appropriation of a patent by the Government:

>> *"[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use without compensation land which has been patented to a private purchaser."*

James Madison, the author of the Takings Clause, once wrote: "Government is instituted to protect property of every sort." The Court's decision vindicates Madison's intent to limit the government's power to take property, both personal and real, without just compensation. And it extends a long line of cases recognizing that "property" in the constitutional sense subsumes all things arising from labor and invention.

The DOJ & DHS never proved Golden's patents are invalid, and yet, continues to used them without paying just compensation. The only thing the DOJ & DHS proved in the *Golden v. US*, Case No. 13-307C is how much of massive liars they are. Examples of their falsehoods are:

32

The DOJ/DHS made the *Golden v. US*, Case No. 13-307C a case between private parties [Golden v. Apple] which placed the case outside the COFC jurisdiction.

When the DOJ/DHS stated the sensors must be "native to the manufacturing of the Apple and Samsung products, the DOJ/DHS knew they were demanding proof of direct infringement under 35 U.S.C. Sec. 271(a) as a predicate to direct infringement under 28 U.S.C. Sec. 1498(a) *Zoltek III*, that was overturned at the CAFC in *Zoltek V*.

The DOJ/DHS narrowed the case to that of Apple, LG, & Samsung, thereby omitting the sensors developed by Qualcomm, Synkera, NASA, SeaCoast, and the camera sensors for detecting CBR developed by Rhevision.

The DOJ & DHS stated "Golden's patented Central Processing Units (CPUs) was an enlargement of the case. The DOJ & DHS motioned to have the case dismissed because they believe the CPU was an enlargement of the case; which means Golden violated a Court order not to amend the case. The DOJ & DHS lied to the Court.

The DOJ & DHS also stated Golden claimed his CPU is a sensor located inside the product used for detecting. As stated, the CPU is used for carrying out the operational and functional instructions of the devices, and the CPU is considered by many as the brains of the devices.

33

Nowhere, did Golden claim the CPU is used as a sensor for CBR detection. Golden did not enlarge the case with the CPU. Rule 4 required Golden to identify where each element is found in the alleged infringing products. Golden located where the CPU was found, which is not an enlargement. Further, if the products do not have CPUs, the products cannot function correctly. The case was dismissed because the DOJ & DHS lied to the Court.

The Federal Circuit in *FastShip, LLC v. U.S.*, "[W]e interpret "manufactured" in § 1498 [] such that a product is "manufactured" when it is made to include each limitation of the thing invented and is therefore suitable for use. Without the sensors the products will never be suitable for use.

The DOJ & DHS made sure the sensors and detectors required to have a product "suitable for use" never happen. The DOJ & DHS blocked the sensors and detectors of Qualcomm, NASA, Synkera, SeaCoast, Rhevision, Apple, Samsung, and LG.

The DOJ & DHS chose not to challenge the communication methods limitation, because a challenge would verify the internet, Bluetooth, and RF connections makes the smartphones "capable of" integrating detectors and sensors remote the smartphone.

The DOJ & DHS decided to challenge the term "capable of" without a claim construction hearing because 21 of the 25 patent claims that the USPTO issued with the presumption of validity" in the related *Golden v. US*, case no. 13-307C, has "capable of" in it.

34

Golden made multiple repeated attempts to inform the DOJ & DHS that the sensors, according to the DHS Cell-All initiative, can be located both inside and outside the phones. When Golden identified sensors both inside (camera sensor) the phone, and outside (NODE+) the phone, the DOJ & DHS did not accept the devices.

Apple and NASA are two of the third-party contractors in the related *Golden v. US*, case no. 13-307C for the DHS *Cell-All* initiative. NASA's contribution to the development of the "cell phone sensing device" was not accepted or considered by the DOJ & DHS. The DOJ & DHS pled that "to include the NODE+ is an enlargement of the case; which is a violation of the Court's order not to amend."

The DOJ & DHS created the substantive right for Golden to receive "just Compensation for the taking of Golden's property under the Fifth Amendment Clause of the U.S. Constitution when they violated 28 U.S. Code § 1498(a): "a money-mandating constitutional provision" and the "statute or regulation" of the provision.

After the Department of Homeland Security (DHS) received information from the then President, Vice-President, three U.S. Senators from South Carolina, a DHS SBIR Program Manager, and a DHS Contracting Officer for the SafeCon initiative, the DHS in 2007 released the DHS S&T Cell-All Ubiquitous Biological and Chemical Sensing solicitation for a cell

35

phone "capable of" detecting for CBR agents and compounds.

Using Golden's Product Grouping strategies, the DHS contracted Apple, Samsung, LG, Qualcomm, Synkera, NASA, Rhevision, and SeaCoast to assemble Golden's CMDC device in a way that will group products together by common features and design similarities.

The DOJ & DHS has continually retaliated against Golden for 10 years (2013-2023) for filing a claim in the United States Court of Federal Claims for just compensation.

Golden has two disabling locking mechanism that follows the same patterns: detection; lock; reset. The first is when a hazardous substance is detected it sends a signal to lock the device. The second is when and unauthorized attempt (fingerprint, facial, code) to unlock the device, a signal is sent to lock the device. The DOJ & DHS repeatedly stated in signed pleadings that Golden did not identify the locking mechanism.

The "takings" occurred when the Government removed itself, and seven of the eight third-party contractors with the exception of Apple from the case and made it a case between private parties. Under 28 U.S. Code § 1498(a), a "party infringement" claim against the Government, must have the Government as a Defendant.

28 U.S. Code § 1498(a) is a "money-mandating constitutional provision" that "assertedly impos[es]

36

monetary liability on the United States." *Bormes*, 568 U.S. at 12. Accordingly, 28 U.S. Code § 1498(a) does not displaced Tucker Act jurisdiction over Golden's Unconstitutional Jurisdictional-Based takings claims."

The Supreme Court explained that when there is a precisely defined statutory framework for a claim that could be brought against the United States, the Tucker Act gives way to the more specific statutory scheme. Regardless of the structure of review it establishes, [28 U.S. Code § 1498(a)] is [] a statute that provides for claims against the United States."

———————◆———————

## CONCLUSION

Petitioner has another case no. 23-811C *Golden v. US* pending in the Court of Federal Claims whereby the case has been assigned the same Judge Bruggink and DOJ Attorney Grant. The same Judge and Defense Attorney who violated Petitioner's "money-mandating constitutional provision" that "assertedly impos[es] monetary liability on the United States". *Bormes*, 568 U.S. at 12, in the three counts of Government *"Takings"* [*I, II, & III*] presented in this petition.

Six months ago, Petitioner asked Judge Bruggink to disqualify himself because the case mirrors that of *Takings III*. If the Judge over reach the Court's jurisdiction and makes the case a dispute between private parties, the same as in *Takings III*, before dismissing the case in favor of the Defendant, it qualifies as

37

another Unconstitutional Jurisdictional-Based "takings" claim".

Not until 1911, was a provision enacted requiring a district-judge recusal for bias in general. In its current form, codified at 28 U.S.C. § 144, that provision reads as follows:

> "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."

Judge Bruggink has yet to respond to the request for disqualification and the Federal Claims Court has yet re-assigned the case to another. If history is known to repeat itself, Judge Bruggink will allow the request to sit on the docket for years, only to never address it. The same as in *Takings I, II, & III.*

Also, the three Economic Stimulus and Terrorism Prevention Packages are so massive, and the patented inventions of the Petitioner are being appropriated and used in such abundance, it stands to reason that this Court will grant this petition to stop future filings.

For instance, Petitioner has specific patents at issue in *Takings I, II, & III* for the Petitioner's patented "new, improved upon, and useful cell phone and/or smartphone" [ATPG Project], that are U.S. Patent

38

9,589,439 ("the '439 patent") that includes eleven (11) independent patent claims for the smartphone (i.e., new, improved upon, and useful "cell phone"); U.S. Patent 9,096,189 ("the '189 patent") that includes nine (9) independent patent claims for the smartphone (i.e., new, improved upon, and useful "cell phone"); U.S. Patent 10,163,287 ("the '287 patent") that includes six (6) independent patent claims for the smartphone (i.e., new, improved upon, and useful "cell phone"); and, U.S. Patent 10,984,619 ("the '619 patent") that includes two (2) independent patent claims and eighteen (18) dependent patent claims for the smartphone (i.e., new, improved upon, and useful "cell phone"). That's a combined total of forty-six (46) independent and dependent patent claims for the Petitioner's patented smartphone (i.e., new, improved upon, and useful "cell phone").

As the Court summed up in *James v. Campbell*, 104 U.S. 356, 358 (1882), a case concerning the alleged appropriation of a patent by the Government: *"[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation"*. Without question, the Government is appropriating and using Petitioner's patented inventions, without paying just compensation.

The Government continuously appropriated and used Petitioner's inventions, daily, without paying just compensation.

39

For the foregoing reasons, the court should grant this petition.

Respectfully submitted,

LARRY GOLDEN, Petitioner, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
(864) 288-5605
atpg-tech@charter.net

i

## APPENDIX TABLE OF CONTENTS

Page

APPENDIX 1—FINAL WRITTEN DECISION;
United States Patent Trial and Appeal Board
(PTAB) (10/01/2015).........................................App. 1

APPENDIX 2—DECISION DENYING RE-
HEARING: United States Patent Trial and
Appeal Board (PTAB) (11/17/2015) ...............App. 40

APPENDIX 3—Decision: United States Court
of Appeals for the Federal Circuit (CAFC)
(04/10/2020)...................................................App. 50

APPENDIX 4—Order: United States Court of
Federal Claims (COFC) (05/30/2023) ............App. 68

APPENDIX 5—Order on Reconsideration;
United States Court of Federal Claims
(COFC) (06/22/2023) ......................................App. 73

APPENDIX 6—On Motion for Summary Affir-
mance: United States Court of Appeals for the
Federal Circuit (CAFC) (12/15/2023).............App. 76

APPENDIX 7—Order: Denying *En Banc* Re-
hearing; United States Court of Appeals for
the Federal Circuit (CAFC) (01/25/2024) ......App. 80