# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 288-5605

Email: atpg-tech@charter.net

RECEIVED

MAR 14 2024

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY GOLDEN, | CASE NO: <u>3:22-cv-05246-RFL</u> |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| V. | **(Direct Patent Infringement),** |
| GOOGLE LLC | **(Induced and Contributory Patent Infringement), (Joint Infringement,** |
| Defendants. | **(Willful Infringement)** |

## PLAINTIFF'S NOTICE OF RELATED FILINGS IN THE SUPREME COURT

March 12, 2024

Relevant to the cause(s) of action outlined in this case, is the recent case filed in the Supreme Court on March 12, 2024, *Larry Golden v. Samsung Electronics America, Inc.*, Case No. ***23-1001***.

Pursuant to the Supreme Court, all petitions filed on or after July 1st of 2019 must include a "Related Cases" section. Relevant to petition filings, Rule 14 now asks for:

> [A] list of all proceedings in state and federal trial and appellate courts, including proceedings in this Court, that are directly related to the case in this Court. For each such proceeding, the list should include the court in question, the docket number and case caption for the proceeding, and the date of entry of the judgment. For the purposes of this rule, a case is "directly related" if it arises from the same trial court case as the case in this Court (including the proceedings directly on review in this case), or if it challenges the same [causes of actions; patents, etc.] as is challenged in this Court, whether on direct appeal or through state or federal collateral proceedings. Amended Rule 14.1(b)(iii).

Sincerely,

*/ Larry Golden*

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

## <u>CERTIFICATE OF NOTICE AND SERVICE</u>

The undersigned hereby certifies that on this 12th day of March, 2024, a true and correct copy of the foregoing "Notice of Related Filings in the Supreme Court" and a copy of the "Petition for Writ of Certiorari of the Related Case filed in the Supreme Court in *Larry Golden v. Samsung Electronics America, Inc.*, Case No. ***23-1001***", was served upon the following Defendant either by priority "express" mail.

Matthew S. Warren

WARREN LEX LLP

2261 Market Street, No. 606

San Francisco, California, 94114

Phone: (415) 895-2940

Fax: (415) 895-2964

Email: 22-5246@cases.warrenlex.com

Sincerely,

*/ Larry Golden*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

No. 23-1001

In The

# Supreme Court of the United States

———◆———

LARRY GOLDEN,

*Petitioner,*

v.

SAMSUNG ELECTRONICS AMERICA, INC.,

*Respondent.*

———◆———

**On Petition For Writ Of Certiorari
To The United States Court Of Appeals
For The Federal Circuit**

———◆———

**PETITION FOR WRIT OF CERTIORARI**

———◆———

LARRY GOLDEN, *Petitioner*, *Pro Se*
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
(864) 288-5605
atpg-tech@charter.net

i

## QUESTIONS PRESENTED

Are the District and Appellate Courts so *blinded* by its systemic and structural racism against Blacks and/or African American inventors; so *fixated* on being judicially bias against Blacks and/or African American inventors, that even after the White-Owned Foreign Corporation Samsung, boldly and repeatedly admits guilt to "*joint*" and/or "*divided*" patent infringement; that the Courts were willing to deprive the Black and/or African American inventor his Seventh Amendment right to a trial by jury, and rule in favor of the White-Owned Foreign Corporation Samsung?

Why was Petitioner denied his Seventh Amendment right to a jury trial, against Samsung, a White-Owned Foreign Corporation, "but for" the decision of the *Dred Scott* case is still promulgated as "rule of law" that "Blacks are not allowed to sue Whites in a Court of law over property"?

"*Joint*" or "*divided*" patent infringement liability for direct infringement are shared between two or more actors but can be legally attributed to a single actor. *Travel Sentry, Inc. v. Tropp*, Appeal No. 16-2386 (Fed. Cir. Dec. 19, 2017); Does this law apply when Samsung openly admits the infringement only occurs when Samsung is joined by the Department of Defense (DoD); Defense Threat Reduction Agency (DTRA)?

ii

## PARTIES TO THE PROCEEDING

The parties to the proceeding in the United States Court of Appeals for the Federal Circuit were Petitioner Larry Golden and Respondent Samsung Electronics America, Inc.

## RELATED CASES

- *GOLDEN v. USA*, Petition for a Writ of Certiorari, 23-904, United States Supreme Court. Pending

- *Golden v. Qualcomm, Inc.* Petition for a Writ of Certiorari, 23-740, United States Supreme Court. Pending

- *Golden v. Google LLC*, 3:2022cv05246, California Northern District Court. Pending

- *Golden v. Qualcomm, Inc.*, 4:2022cv03283, California Northern District Court. Judgement entered March 15, 2023

- *Golden v. Intel Corporation*, 5:2022cv03828, California Northern District Court. Judgement entered November 22, 2022

- *Golden v. Apple, Inc.*, 3:2022cv04152, California Northern District Court. Judgement entered October 20, 2022

- *Golden v. Samsung Electronics America, Inc.*, 3:2023cv00048, California Northern District Court. Judgement entered June 8, 2023

iii

## **RELATED CASES** – Continued

- *Golden v. Samsung Electronics America, Inc.*, 0:2023cvpri02120, U.S. Court of Appeals, Federal Circuit. Judgement entered February 12, 2024

- *Golden      v.      Qualcomm      Incorporated*, 0:2023cvpri01818, U.S. Court of Appeals, Federal Circuit. Judgement entered October 10, 2023

- *Golden v. US*, 0:2023cvus02139, U.S. Court of Appeals, Federal Circuit. Judgement entered December 15, 2023

- *GOLDEN v. USA*, 1:2023cv00811, U.S. Court of Federal Claims. Pending

iv

## TABLE OF CONTENTS

Page

QUESTIONS PRESENTED ................................. i

PARTIES TO THE PROCEEDING...................... ii

RELATED CASES ................................................ ii

INDEX OF APPENDICES.................................... vi

TABLE OF AUTHORITIES................................. vii

PETITION FOR A WRIT OF CERTIORARI ....... 1

OPINIONS BELOW.............................................. 1

JURISDICTION................................................... 1

STATUTES AND CONSTITUTIONAL PROVI-
SIONS INVOLVED............................................. 1

INTRODUCTION AND STATEMENT OF THE
CASE ................................................................. 2

REASONS FOR GRANTING THE WRIT............ 5

I.   THE DoD DTRA ATAK CBRNE SEN-
     SORS; REFERRED TO BY THE DIS-
     TRICT AND APPELLATE COURTS AS
     "ADD-ONS THAT ARE MODIFIED TO
     PERFORM" MEETS THE REQUIRE-
     MENTS OF "JOINT" OR "DIVIDED" PA-
     TENT INFRINGEMENT AND IS AN
     ISSUE-OF-FACT TRIED BY A JURY UN-
     DER THE SEVENTH AMENDMENT....... 14

II.  PATENT INFRINGEMENT IS AN ISSUE-
     OF-FACT TRIED BY A JURY UNDER
     THE SEVENTH AMENDMENT .............. 17

TABLE OF CONTENTS – Continued

Page

III. THE FEDERAL CIRCUIT MADE CLEAR A FEW YEARS AGO, IN *NALCO CO. V. CHEM-MOD, LLC*, A PLAINTIFF "NEED NOT 'PROVE ITS CASE AT THE PLEAD-ING STAGE.'" THE FEDERAL RULES OF CIVIL PROCEDURE DO NOT RE-QUIRE A PLAINTIFF TO PLEAD FACTS ESTABLISHING THAT EACH ELE-MENT OF AN ASSERTED CLAIM IS MET ............................................................ 21

IV. JUDGEMENT BY DEFAULT IS APPRO-PRIATE BECAUSE THE RESPONDENT *NEVER* DENIED OR DEFENDED, AND THE DISTRICT AND APPELLATE COURT *NEVER* RULED ON OR ADJU-DICATED PETITIONER'S CLAIM OF DI-RECT INFRINGEMENT UNDER THE "DOCTRINE OF EQUIVALENTS" FOR THE RESPONDENT MAKING, USING, OFFERING FOR SELL, AND SELLING THE SMARTPHONE CENTRAL PRO-CESSING UNIT (CPU) THAT IS PETI-TIONER'S PATENTED INVENTION ....... 32

vi

TABLE OF CONTENTS – Continued

Page

V. THE DISTRICT COURT AND APPEL-
LATE COURTS' NON-INFRINGEMENT
THEORY OF "ADD-ONS THAT ARE
MODIFIED TO PERFORM" THREAT-
ENS THE ENTIRE PATENT GRANT
SYSTEM; THUS FAR, THE NON-IN-
FRINGEMENT THEORY HAS ONLY
BEEN APPLIED AGAINST THE PETI-
TIONER, A BLACK AND/OR AFRICAN
AMERICAN WHO IS SUING A WHITE-
OWNED FOREIGN CORPORATION
OVER PROPERTY .................................... 39

CONCLUSION...................................................... 45

### INDEX OF APPENDICES

APPENDIX 1 – Decision: United States Court
of Appeals for the Federal Circuit (CAFC)
(02/12/2024)...................................................... App. 1

APPENDIX 2 – Order on Reconsideration:
United States District Court for the Northern
District of California (NDC) (06/15/2023)..... App. 11

APPENDIX 3 – Decision: United States District
Court for the Northern District of California
(NDC) (06/08/2023) ......................................... App. 13

vii

## TABLE OF AUTHORITIES

Page

CASES

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015).................... 14-16

*Baltimore & Carolina Line v. Redman*, 295 U.S. 654 (1935)................................................................20

*Becton Dickinson* (Fed. Cir. 12/13/90) ..........................9

*Cobalt Boats* (Fed. Cir. 05/31/19).................................9

*Dimick v. Schiedt*, 293 U.S. 474 (1935).......................20

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*................7, 11

*Eli Lilly and Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357 (Fed. Cir. 2017).........................16

*Gasoline Products Co. v. Champlin Ref. Co.*, 283 U.S. 494 (1931) .......................................................20

*Golden v. Samsung Electronics America, Inc.* NDC Case No. 23-0048 .....................................10, 20

*Larry Golden v. Google LLC*, CAFC Case No. 22-1267 .......................................................................7, 8

*Limelight Networks, Inc. v. Akamai Techs, Inc.*, 134 S. Ct. 2111 (2014).............................................15

*Machine Co. v. Murphy*, 97 U.S. 120, 24 L. Ed. 935 (1878)................................................................38

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).........................................................18, 19

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).........................................16

viii

## TABLE OF AUTHORITIES – Continued

Page

*Microsoft v. i4i Ltd. Partnership*, 564 U.S. 91 (2011)........................................................................19

*Nalco Co. v. Chem-Mod, LLC*, No. 14-cv-2510, 2016 WL 1594966 (N.D. Ill. Apr. 20, 2016)........... 6, 7, 10, 21

*Oakley, Inc. v. Int'l Tropic-Cal, Inc.*, 923 F.2d 167 (Fed. Cir. 1991) ........................................................17

*Southwall* (Fed. Cir. 05/10/95)......................................9

*SRI v. Matsushita Electronic Corp.*, 775 F.2d 1107, 227 USPQ 577 (Fed. Cir. 1985) .....................17

*Kimble v. Marvel Enterprises LLC*, 576 U.S. 446 (2015)..........................................................................6

*Travel Sentry, Inc. v. Tropp*, Appeal No. 16-2386 (Fed. Cir. Dec. 19, 2017) ...................................2, 6, 14

*United States v. Hopkins*, 916 F.2d 207 (5th Cir. 1990).........................................................................13

*Walker v. New Mexico & So. Pac. R.R.*, 165 U.S. 593 (1897)...............................................................20

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 41 USPQ2d 1865 (1997) .....................37

*Zoltek Corp. v. United States (Zoltek III)*, 442 F.3d 1345 (Fed. Cir. 2006) ........................................24

*Zoltek Corp. v. United States (Zoltek V)*, 672 F.3d 1309 (Fed. Cir. 2012) (en banc) ...............................24

CONSTITUTIONAL PROVISIONS

Seventh Amendment [U.S. CONST amend VII].....1, 2, ................................... 5-7, 9, 11, 14, 17-19, 22, 38, 39

ix

## TABLE OF AUTHORITIES – Continued

Page

Section 16 of Article I of the California Constitution ..........................................................................18

Patent Act of Apr. 10, 1790, Ch. 7, §§ 1, 4, 1 Stat. 109, 110, 111..............................................................18

STATUTES

Code Civ. Proc. § 631(a) ...............................................18

35 U.S.C. § 282(a)........................................................19

35 U.S.C. § 271(a)....................................................1, 14

35 U.S.C. § 271(b).........................................................1

Federal Rules of Civil Procedure 55 ..........................39

1

## PETITION FOR A WRIT OF CERTIORARI

Larry Golden petitions for a writ of certiorari to review the judgement of the United States Court of Appeals for the Federal Circuit in this case.

————————◆————————

## OPINIONS BELOW

The Court of Appeals opinions addressing the questions (App. 1-10) are unreported. The District Court opinions addressing the questions (App. 11-12), and (App. 13-19) are unreported.

————————◆————————

## JURISDICTION

The District Court entered judgement on June 8, 2023 (App. C). The District Court entered judgement on a motion for reconsideration on June 15, 2023 (App. B). The Court of Appeals entered judgement on February 12, 2024 (App. A). This Court has jurisdiction under 28 U.S.C. § 1254(1)

————————◆————————

## STATUTES AND CONSTITUTIONAL PROVISIONS INVOLVED

"*Joint*" or "*divided*" patent infringement; 35 U.S.C. § 271(a) direct patent infringement and "use" of a patented invention; § 271(b) induced patent infringement; Procedural "Due Process" Clause; U.S. Constitution – Seventh Amendment "Right to Trial by Jury".

————————◆————————

## INTRODUCTION AND
## STATEMENT OF THE CASE

Are the District and Appellate Courts so *blinded* by its systemic and structural racism against Blacks and/or African American inventors; so *fixated* on being judicially bias against Blacks and/or African American inventors, that even after the White-Owned Foreign Corporation Samsung, boldly and repeatedly admits guilt to "*joint*" or "*divided*" patent infringement; that the Courts were willing to deprive the Black and/or African American inventor his Seventh Amendment right to a trial by jury, and rule in favor of the White-Owned Foreign Corporation Samsung?

"*Joint*" or "*divided*" infringement liability for direct infringement are shared between two or more actors but can be legally attributed to a single actor. *Travel Sentry, Inc. v. Tropp*, Appeal No. 16-2386 (Fed. Cir. Dec. 19, 2017); why this law does not apply to Samsung?

Samsung reversed Petitioner's cause of action of "joint" or "divided" patent infringement into its defense theory and capitalized on a judicial system that is so *blinded* by its systemic and structural racism, that they could not recognize Samsung's very own admission of guilt.

Samsung's defense has always been "there's no infringement without the addition of the DoD DTRA ATAK [CBRNE] sensors"; "there's no infringement without the modification of the Samsung device to include the DoD DTRA ATAK sensors"; infringement

3

only occurs with the inclusion of the third-party [CBRNE] sensors" . . .

Samsung repeated the requirements of *"joint"* and/or *"divided"* patent infringement over and over again, but the Courts fail to see the hand writing on the wall because their backs were against it. "IT" being a Black and/or African American inventor who would dare to bring an action of patent infringement against the White-Owned Foreign Corporation Samsung.

Below are excerpts taken from Petitioner's first complaint filed in the Northern District of California Court that illustrates Petitioner's claim of "joint infringement" and "trial by jury".

## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE

LARRY GOLDEN,

*Plaintiff,*

v.

SAMSUNG ELECTRONICS AMERICA, INC.,

*Defendant.*

### JURY TRIAL DEMANDED

(Direct Patent Infringement), (Induced and Contributory Patent Infringement), (**Joint** Patent Infringement)

January 02, 2023

4

## COUNT I
### (Infringement of the '287 Patent)

1.   Golden realleges and incorporates herein the allegations set forth in ¶¶ 1-29.

2.   On information and belief, Samsung is *jointly*, directly, indirectly and/or under the 'doctrine of equivalents', infringing at least independent claims 4, 5, and 6 of the '287 patent. The alleged infringing products are: Samsung Galaxy S8, S8+, Note 8, S7, S7 Edge, S22, S22+, S22 Ultra, Note 20, S20, S20+, S20 Ultra, and Galaxy S21 5G, and S21+ 5G.

## COUNT II
### (Infringement of the '439 Patent)

34.   Golden realleges and incorporates herein the allegations set forth in ¶¶ 1-33.

35.   On information and belief, Samsung is *jointly*, directly, indirectly and/or under the 'doctrine of equivalents', infringing at least independent claims 13, 14, 15, and 23 of the '439 patent. The alleged infringing products are: Samsung Galaxy S8, S8+, Note 8, S7, S7 Edge, S22, S22+, S22 Ultra, Note 20, S20, S20+, S20 Ultra, and Galaxy S21 5G, and S21+ 5G.

## COUNT III
### (Infringement of the '189 Patent)

38.   Golden realleges and incorporates herein the allegations set forth in ¶¶ 1-37.

39.   On information and belief, Samsung is *jointly*, directly, indirectly and/or under the 'doctrine of equivalents', infringing claims 1, 2 & 3 of the '189 patent. The alleged infringing

5

products are: Samsung Galaxy S8, S8+, Note 8, S7, S7 Edge, S22, S22+, S22 Ultra, Note 20, S20, S20+, S20 Ultra, and Galaxy S21 5G, and S21+ 5G.

## PRAYER FOR RELIEF

Wherefore, Golden respectfully requests that this Court enter:

A. A judgment in favor of Golden that the defendant has infringed at least one or more claims of the '287 Patent, the '439 Patent, and the '189 Patent as aforesaid;

B. A permanent injunction enjoining the defendant, its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents and all others acting in active concert or privity therewith from direct, indirect and/or *joint* infringement of the '287, '439, and '189 patents as aforesaid pursuant to 35 U.S.C. § 283;

## DEMAND FOR JURY TRIAL

Golden requests a trial by jury on all issues so triable by right pursuant to Fed. R. Civ. P. 38. A right guaranteed under the Seventh Amendment of the United States Constitution.

————————•————————

## REASONS FOR GRANTING THE WRIT

The District Court and Appellate Court have violated Petitioner's *procedural due process* in the following:

1. Patent infringement is an issue-of-fact tried by a jury under the Seventh Amendment. [U.S. CONST. amend. VII];

2. As the Federal Circuit made clear a few years ago in *Nalco Co. v. Chem-Mod, LLC*, a plaintiff "need not 'prove its case at the pleading stage.'" The Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met; and

3. Stare decisis: the "foster[ing] reliance on judicial decisions, and contribute[ing] to the actual and perceived integrity of the judicial process." The *Supreme Court in Kimble v. Marvel Enterprises*.

4. "*Joint*" or "*divided*" infringement liability for direct infringement are shared between two or more actors but can be legally attributed to a single actor. *Travel Sentry, Inc. v. Tropp*, Appeal No. 16-2386 (Fed. Cir. Dec. 19, 2017);

The District Court Judge overstepped, and the Appellate Court concurred; that the issue-of-facts to be tried by a jury under the Seventh Amendment (Petitioner's alleged joint infringement, literal infringement, infringement under the doctrine of equivalents, induced infringement, contributory infringement, willful infringement), will not happen, not on their watch, for an African American inventor who is in a patent property dispute with the foreign-owned, white-owned, multi-billion-dollar corporation, Samsung.

Petitioner has a constitutional right to a trial by jury under the Seventh Amendment of the U.S. Constitution. As will be described throughout the remainder of this petition, the District Court and the Appellate Court have repeatedly deprived Petitioner of this guaranteed constitutional right.

Petitioner, a Black and/or African American, has been entangled in a judicial system of systemic and/or structural racism, with Judges who have proven themselves to be judicially bias in favor of the White-owned Samsung corporation. Patent infringement is an issue-of-fact tried by a jury under the Seventh Amendment. [U.S. CONST. amend. VII]

The Federal Circuit made clear a few years ago in *Nalco Co. v. Chem-Mod, LLC*, a Plaintiff "need not 'prove its case at the pleading stage.'" The Federal Rules of Civil Procedure do not require a Plaintiff to plead facts establishing that each element of an asserted claim is met. Indeed, the Federal Circuit previously explained in *Disc Disease Sols. Inc. v. VGH Sols., Inc.* that a Plaintiff must only give the alleged infringer fair notice of infringement. Nothing much has changed with the Federal Circuit's approach to pleading infringement since these two 2018 decisions. Until now.

Petitioner will show that the District Court is in violation of the doctrine of *vertical stare decisis* for not honoring the decision of the higher Appellate Court in *Larry Golden v. Google LLC*; Case No. 22-1267: and the Appellate Court is in violation of the doctrine of

8

*horizontal stare decisis* for not honoring precedence set in its own Court in *Larry Golden v. Google LLC*; Case No. 22-1267.

Although proving how the defendant's "smartphone" infringes Petitioner's patented CMDC device (i.e., smartphone) on an element-by-element basis is not required at the pleading stage; the opinion of the Appellate Court in *Larry Golden v. Google LLC*; CAFC Case No. 22-1267 described how the Petitioner proved literal patent infringement or infringement under the doctrine of equivalents at the pleading stage.

> "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the [] Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 . . . It [claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner . . . [W]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart. . . ."

The Federal Circuit (CAFC) ruled that a "smartphone", which is the product of dispute in the current *Golden v. Samsung* case, literally (directly) infringes the "independent claims from [Petitioner's] U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" . . . because the claim chart "map claim limitations to

infringing product [smartphone] features, and it does so in a relatively straightforward manner . . . "

| Literal Infringement (Precedence) | Literal Infringement (Fed. Cir. *Golden v. Google*) |
|---|---|
| Literal infringement means that each and every element recited in a claim has identical correspondence in the allegedly infringing device or process. To literally infringe a patent, the accused system, method, etc. must include each limitation of a claim. E.g., *Southwall* (Fed. Cir. 05/10/95) To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly. *Becton Dickinson* (Fed. Cir. 12/13/90). "Infringement, both literal and under the doctrine of equivalents, is an issue of fact."); *Cobalt Boats* (Fed. Cir. 05/31/19) "patent infringement is an issue of fact, tried by a jury" [U.S. CONST. amend. VII] | "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the [] Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 . . . It [claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner . . . [W]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart. . . ." |

10

One of the principal concerns with relying on the literal language of the claims a patent is that, even if Samsung avoid literal infringement, Samsung may still infringe the Petitioner's patent under the "doctrine of equivalents." The "doctrine of equivalents" is a judicially created doctrine having a three part "function/way/result" substantial identity test embodying the following steps:

1. Determine whether Samsung's accused devices or process achieves substantially the same result as Petitioner's claimed invention – and the accused devices of Google. This patent infringement issue-of-fact should be determined by a jury.

2. Determine whether Samsung's accused devices or process performs substantially the same function as Petitioner's claimed invention – and the accused devices of Google. This patent infringement issue-of-fact should be determined by a jury.

3. Determine whether Samsung's accused devices or process operates in substantially the same way as Petitioner's claimed invention – and the accused devices of Google. This patent infringement issue-of-fact should be determined by a jury.

Even if the U.S. District Court for the Northern District of California in *Golden v. Samsung Electronics America, Inc.* Case No. 23-0048 decide to go against the Federal Circuit's precedence in *Nalco Co. v. Chem-Mod,*

*LLC* and *Disc Disease Sols. Inc. v. VGH Sols., Inc.* to have Golden prove a Samsung "smartphone" infringes U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 at the pleading stage; even if the District Court dishonors the precedence set by the higher Federal Circuit court [*vertical stare decisis*] in *Larry Golden v. Google LLC* that the "smartphone" literally infringes or infringes under the doctrine of equivalents Petitioner's CMDC device (i.e., smartphone); the District Court is still without cause to deprive Golden of his constitutional right to a trial by jury under the Seventh Amendment of the U.S. Constitution.

Millions of people use mobile operating systems (OS) worldwide, powering a wide range of devices, from smartphones to tablets and wearable technology. A mobile OS provides an interface between the device's hardware components and its software functions. Mobile operating systems manage cellular and wireless network connectivity and phone access.

There are several mobile operating systems on the market today, but two of the most widely adopted are the iPhone's OS, Apple iOS, and Google's open-source OS, Google Android. Google takes an open-source approach with Android, which allows mobile device OEMs (original equipment manufacturers), like Samsung, to customize the Android source code to fit their devices. Meaning, it was Samsung who customized the Android source code for the Samsung smartphones asserted in this case; thus, allowing the customized Samsung operating system that is built on Google's Open-Source Operating System Platform, to

12

operate as a gateway for the DoD DTRA ATAK CBRNE sensors.

Therefore, it not the Petitioner who claims the only way the Samsung smartphone devices infringe is that the phones are modified; it is Samsung who "induces the infringement" of Petitioner's smartphone invention with its Samsung customized operating system (OS) that is built on Google's Open-Source Operating System Platform.

It other words, anyone can contribute to the assembly of the Samsung smartphone because Samsung customizes the Google Android Open-Source code, which makes designing and developing for the Samsung smartphone open to the public.

After Samsung customizes its android open-source operating system that is standard and included in Samsung's assembly of its smartphones; the DoD DTRA ATAK CBRNE plug-in sensors are available "off-the-shelf" the same as a Samsung USB cord is available "off-the-shelf" for the Samsung smartphone. What follows is a listing of HAZMAT and CBRN purpose-built plugins adapted for use with Samsung smartphones, all deployed/TRL9 and "off-the-shelf" ready:

- The Wilcox Hybrid Patriot 5510Â® Life Support System allows an individual the option of operating in Chemical Biological Radiological and Nuclear [CBRN] contaminated environments;

13

- The ALTAIR 5X Gas Detector is capable of measuring up to 6 gases simultaneously;

- The MSA Altair 4XR Multi-Gas Detector detects O2, LEL, CO and H2S.Â Outfitted with rapid-response MSA XCellÂ® sensors, the ALTAIR 4XR Gas Detector is the toughest 4-gas monitor on the market;

- The Thermo Scientificâ„¢ RadEyeâ„¢ PRD Personal Radiation Detector detect and localize radiation sources generated by manmade devices such as nuclear weapons, improvised nuclear devices (INDs) or radiological dispersal devices (RDDs); and,

- The TRX NEONÂ® Personnel Tracker improves safety and situational awareness for industrial, security, public safety, and defense users. Personnel Tracker provides ubiquitous 3D location, tracking, and mapping for personnel operating indoors, underground, and in any GPS-denied environment.

Petitioner, is again offering this evidence to show the Respondent's continued false statement that, "Samsung smartphones have to be 'modified' for the phones to infringe Petitioner's patented inventions". Petitioner alleged the Respondent "acted willfully, deliberately and with knowledge that the representation was false." *See United States v. Hopkins*, 916 F.2d 207, 214 (5th Cir. 1990).

14

## I. THE DoD DTRA ATAK CBRNE SENSORS; REFERRED TO BY THE DISTRICT AND APPELLATE COURTS AS "ADD-ONS THAT ARE MODIFIED TO PERFORM" MEETS THE REQUIREMENTS OF "JOINT" OR "DI-VIDED" PATENT INFRINGEMENT AND IS AN ISSUE-OF-FACT TRIED BY A JURY UN-DER THE SEVENTH AMENDMENT

In a recent decision, *Travel Sentry, Inc. v. Tropp*, ___ F.3d ___, Appeal Nos. 2016-2386, 2016-2387, 2016-2714, 2017-1025, Slip Op. at 20 (Dec. 19, 2017), the US Court of Appeals for the Federal Circuit reaffirmed its interpretation of the doctrine of divided infringement articulated in *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) (*Akamai V*).

Divided infringement occurs when multiple actors such as Samsung, the DoD DTRA, and Draper Inc. collectively perform all the steps of a method claim, or use disparate elements of a system claim such that no one party directly infringes a patent under 35 USC section 271(a). The Federal Circuit's decision in *Travel Sentry*, the latest in a series of recent decisions on divided infringement, has important implications for enforcing claims when the claim elements are not performed by a single entity but by two or more parties acting in concert.

The Federal Circuit recognized that liability for direct infringement can also be found when a two-pronged test is satisfied: first, when "the alleged infringer Samsung conditions participation in an

15

activity or receipt of a benefit upon performance of a step," and second, when the alleged infringer Samsung "establishes the manner or timing of that performance." *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022-23 (Fed. Cir. 2015) (en banc, per curiam) (identified as *Akamai V*), on remand from *Limelight Networks, Inc. v. Akamai Techs, Inc.*, 134 S. Ct. 2111 (2014). The same as in that event, the first party Samsung may be found liable for the actions of the others, such that their combined actions can be attributed to a single entity that is liable for the entire act of infringement.

The central issue before the District Court and Federal Circuit was whether there was a genuine issue of material fact that the DoD DTRA, and Draper Inc. performance of the steps of Petitioner's patented claims could be attributed to Samsung, such that Samsung could be held singularly responsible for directly infringing Golden's patented claims.

The Federal Circuit should have reasoned a jury could find that Samsung has set forth the manner in which the DoD DTRA, and Draper Inc. uses its ATAK CBRNE Sensor system, obtains the benefits associated with that system, and practices the claim steps at issue.

The Federal Circuit also relied on a principle originally set forth in copyright law that "an actor [Samsung] infringes vicariously by profiting from direct infringement if that actor [Samsung] has the right and ability to stop or limit the infringement."

16

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005), cited in *Akamai V*, 797 F.3d at 1023. In this current case, the Federal Circuit should have reasoned that Samsung has the right and ability to stop or limit the DoD DTRA, and Draper Inc.'s ability to practice the claim steps at issue, and thus its ability to receive the benefits that follow from practicing those claim steps, by simply discontinuing customizing the android open-source operating system – source code.

The Federal Circuit also emphasized the importance of context and the factual nature of the inquiry in its opinion. While Samsung may be viewed as merely continuing the principles set forth in earlier cases, the Federal Circuit should have reasoned that the "partnership-like relationship" between Samsung, the DoD DTRA, and Draper Inc distinguishes this case from the more definite service provider-customer relationship in *Akamai V* or the physician-client relationship in *Eli Lilly and Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357 (Fed. Cir. 2017).

The District and Appellate Courts should have reasoned that a common thread linked the relationships: "[e]vidence that third parties DoD DTRA, and Draper Inc, hoping to obtain access to certain benefits can only do so if it performs certain steps identified by the defendant Samsung, and does so under the terms prescribed [customizing the android open-source OS – source code] by the defendant Samsung."

*"Joint"* or *"divided"* infringement refers to a situation where the acts necessary to give rise to liability

17

for direct infringement are shared between two or more actors but can be legally attributed to a single actor. The actors in this case are Samsung, who is responsible for customizing the Android open-source operating system – source code; DoD DTRA, who is responsible for the Android Tactical Assault Kit (ATAK) software; and Draper, who is responsible for the CBRNE plug-in sensors.

A "*Joint*" or "*divided*" infringement claim is an issue-of-fact tried by a jury under the Seventh Amendment of the United States Constitution [U.S. CONST' amend. VII].

## II. PATENT INFRINGEMENT IS AN ISSUE-OF-FACT TRIED BY A JURY UNDER THE SEVENTH AMENDMENT

Assuming the Petitioner, an African American inventor, has the constitutional right to sue Samsung, a White-owned company, in Federal Court; the question of whether Samsung's alleged infringing devices, methods or products are covered by the Petitioner's patent claims is a question of fact to be resolved by the jury. *See*, e.g., *Oakley, Inc. v. Int'l Tropic-Cal, Inc.*, 923 F.2d 167, 169 (Fed. Cir. 1991) ("Infringement is a question of fact"); *SRI v. Matsushita Electronic Corp.*, 775 F.2d 1107, 1125, 227 USPQ 577, ___ (Fed. Cir. 1985) ("It is settled that the question of infringement (literal or by equivalents) is factual").

Patent infringement is an issue-of-fact tried by a jury under the Seventh Amendment. No particular

18

form for a jury trial demand is prescribed by California statute or court rule. (See Code Civ. Proc. § 631(a): "[t]he right to a trial by jury as declared by Section 16 of Article I of the California Constitution shall be preserved to the parties inviolate"; "[t]rial by jury is an inviolate right – not to be violated or broken – and shall be secured to all").

It has been over twenty-five years since the Court last assessed the scope of the constitutional right to a jury in a patent-infringement case. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). More remarkable, that decision has been its only direct pronouncement on the matter in the 230 years that patent infringement has been actionable [Act of Apr. 10, 1790, ch. 7, §§ 1, 4, 1 Stat. 109, 110, 111 (first federal patent act)].

The Seventh Amendment requires juries in "Suits at common law"; [U.S. CONST. amend. VII]. Law courts always offered juries; and early juries tried nearly all infringement and validity issues.

Long-standing equity principles, according to the Supreme Court, dictated that "only under the most imperative circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equity principles."

Therefore, why was Petitioner, an African American inventor, denied his Seventh Amendment right to a jury trial, in a suit over property against Samsung, a

19

white-owned company, "but for" the decision of the *Dred Scott* case is still promulgated as "rule of law"?

This Court has enough facts to reverse the lower Court's decision to deny Petitioner his Seventh Amendment right to a trial by jury, and Samsung's infringement liability. Petitioner's patent infringement claims against Samsung are issues-of-fact to be tried by a jury under the Seventh Amendment.

If this Court decides to ignore Petitioner's patents and patent claims asserted in this case, the Court is substantiating a "loop hole" for invalidating patents and patent claims without claim construction or a *Markman hearing*. The "loop hole" is: by denying or avoiding trial at all cost, Samsung does not have to prove the patents and patent claims are invalid, thereby invalidating the patents and patent claims by default and rendering them worthless against Samsung.

The Constitutional provisions for invalidating patents and patent claims are no longer applicable or relevant if Samsung is allowed not to have to plead its case before a jury. The Supreme Court in *Microsoft v. i4i* affirmed that 35 U.S.C. § 282 of the Patent Act requires an invalidity defense to be proved by clear and convincing evidence. Not by persuading Judges to dismiss cases simply because the Patent Owner is Black and/or African American.

The primary purpose of the Seventh Amendment is to preserve the common law distinction between the province of the court and that of the jury, whereby, in

20

the absence of express or implied consent to the contrary, issues of law are resolved by the court and issues of fact are to be determined by the jury under appropriate instructions by the court. *Baltimore & Carolina Line v. Redman*, 295 U.S. 654, 657 (1935); *Walker v. New Mexico & So. Pac. R.R.*, 165 U.S. 593, 596 (1897); *Gasoline Products Co. v. Champlin Ref. Co.*, 283 U.S. 494, 497–99 (1931); *Dimick v. Schiedt*, 293 U.S. 474, 476, 485–86 (1935).

The excerpt below that was taken from the docket of the Northern District of California Court in *Golden v. Samsung Electronics America, Inc.*, Case No. 23-0048 illustrates how the District Court never intended to honor Petitioner's demand for a jury trial from the very beginning:

### U.S. District Court California Northern District (San Francisco) CIVIL DOCKET FOR CASE #: 3:23-cv-00048-WHO

| Golden v. Samsung Electronics America, Inc. Assigned to: Judge William H. Orrick Case in other court: U.S. Court of Appeals Cause: 35:145 Patent Infringement Plaintiff: Larry Golden | Date Filed: 01/05/2023 Date Terminated: 06/08/2023 **Jury Demand: None** Nature of Suit: 830 Patent Jurisdiction: Federal Question |

21

## III. THE FEDERAL CIRCUIT MADE CLEAR A FEW YEARS AGO IN *NALCO CO. V. CHEM-MOD, LLC,* THAT A PLAINTIFF "NEED NOT 'PROVE ITS CASE AT THE PLEAD-ING STAGE.'" THE FEDERAL RULES OF CIVIL PROCEDURE DO NOT REQUIRE A PLAINTIFF TO PLEAD FACTS ESTAB-LISHING THAT EACH ELEMENT OF AN ASSERTED CLAIM IS MET.

Petitioner submitted an abundance of evidence to the District and Appellate Courts as proof that the challenged to identify in the Samsung smartphone a sensor(s) for detecting chemical, biological, radiological, nuclear, and explosives (CBRNE) compounds and agents, is satisfied.

In fact, even though the technology in Petitioner's patents was provided to the Courts in a straightforward and simply way, the hoops that the Northern District of California and the Federal Circuit expected the Petitioner, a Black and/or African American, to jump through just to survive a motion to dismiss were certainly remarkable considering precedent on what is not required at the pleading stage.

Not only did the Petitioner prove to the Northern District of California and the Federal Circuit Samsung's "joint" infringement with the Department of Defense (DoD); Defense Threat Reduction Agency (DTRA), and Samsung's induced infringement of the DoD DTRA with its customized source code that is built on the android open-source operating system platform [ATAK]; Petitioner exceeded the requirement

22

for pleading and introduced several sensors internal and standard to the Samsung smartphone capable of detecting for chemical, biological, radiological, nuclear, and explosives (CBRNE) compounds and agents; and, is an alternative too, or complement for the DoD DTRA ATAK CBRNE Plug-in Sensors. One in particular is the Samsung smartphone camera.

The Federal Circuit has explained that a plaintiff "must only plead 'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."

Further, a claim of patent infringement of any type is an issue-of-fact to be tried under the Seventh Amendment [U.S. CONST' amend. VII]

## History of the Smartphone "CBR" Camera Sensor

As a result of the 9/11 attacks, between the years 2003-2005, Golden submitted three (3) Economic Stimulus and Terrorism Prevention Packages, that included strategies for stimulating our economy as a whole and the African-American community, to at least that of President Bush, VP Cheney, and S.C. Senators Holland, DeMint, and Graham.

President Bush, VP Cheney, and S.C. Senators Holland, DeMint, and Graham sent the *nonfrivolous* "Economic Stimulus and Terrorism Prevention Packages", that included technology for a new, improved upon, and useful cell phone, PC, tablet, laptop, etc. (the

23

"ATPG" package); over to the Department of Homeland Security (DHS) for development and implementation.

Golden's evidence is the response letters Golden received from the offices of President Bush, VP Cheney, and S.C. Senators Holland, DeMint, and Graham.

Golden traveled to Colorado in 2006 for the Government Agencies (DoD, DOE, DHS, etc.) SBIR Tour. Golden meet with, and left behind copies of Golden's ATPG stimulus package with Lisa Sabolewski, DHS SBIR Program Manager, who in turn asked Golden to send additional information to her via email. (E-mail correspondence available).

Golden submitted a proposal in 2007, in response to the DHS S&T *Cell-All Ubiquitous Biological and Chemical Sensing* request for proposals, and upon request, resubmitted Golden's intellectual property subject matter directly to the Stephen Dennis, DHS Program Manager for the *Cell-All Ubiquitous Biological and Chemical Sensing* initiative in 2008. (E-mail correspondence available).

Golden traveled to Washington, DC in 2008 with his lead engineer [Harold Kimball] to discuss a "read-ahead" document of Golden's intellectual property and the possibility of Golden incubating his company at the Department of Homeland Security (DHS). Golden and Mr. Kimball meet with Ed Turner, DHS/S&T Program Manager.

Golden was invited by DHS to Sacramento, CA in 2008 to attend a T.R.U.ST Industry Day Symposium.

Golden discussed and left copies of his intellectual property subject matter for a CMDC (i.e., smartphone) with a selected panel. Golden was walked out by the Program Manager Dave Masters, where he promised Golden, he will release a Request for Proposal in the near future that aligns with Golden's intellectual property technological rational.

In 2008 the DHS made a "final decision" to take and give Golden's intellectual property subject matter to Apple, Samsung, LG, NASA, Synkera, SeaCoast, Rhevision, and Qualcomm for development and commercialization of a new, improved upon, and useful cell phone.

Two reasons for contracting Samsung to develop and commercialize Petitioner's new, improved upon, and useful cell phone invention were: the Federal Circuit held that "for alleged infringement of a patent by a contractor [Samsung] acting by and for the US government, the contractor Samsung is immune from individual liability for alleged infringement"; and, if at least one part of the patented process is made and assembled abroad, the DHS can't be held liable for infringing a U.S. patent. (*Zoltek III*)

In *Zoltek V* (2012) the Federal Circuit reversed and closed the "loophole". If any part of the patented process is made and assembled abroad, it is still an infringement of a U.S. patent.

In 2013 Golden filed an alleged patent infringement claim against the Department of Homeland Security (DHS) for the development and

commercialization of Petitioner's new, improved upon, and useful cell phone invention. In 2019 the COFC Court case no. 13-307C *Golden v. US* ruled Samsung was never a third-party contractor in the Cell-All initiative, which meant Samsung could only be sued in the District Courts for patent infringement.

Therefore, in 2022 Golden filed an alleged patent infringement claim against *Samsung Electronics America, Inc.*, Case No. 3:2023cv00048, in the California Northern District Court.

Samsung was obligated for eleven years to develop smartphone sensors that detect for chemical, biological, radiological, nuclear, and explosives (CBRNE) compounds and agents if Samsung were to continue enjoying the protection provided by the Government for infringing Petitioner's patents. The *"camera"* sensor is by far the most used standard sensor of the Samsung smartphone device for detecting chemical, biological, radiological, nuclear, and explosives (CBRNE) compounds and agents. *Figures 1-4* illustrates the camera's use:

"Digital devices connected to the global network are rapidly finding their way into almost every facet of life. In addition to computers, smart phones, tablets, game consoles, new categories of connected devices such as fitness wearables, digital fashion accessories, Internet of Things (IOT) appliances, security systems, self-driving cars, robotics, smart toys, industrial control and home automation systems are coming on the market at an

26

accelerating pace. Over the next decade, these connected devices and others, such as Augmented Reality systems and telemedicine sensors will continue to penetrate new niches. All of these connected devices have sensors of one kind or another (e.g. accelerometers, GPS, RF sensors, *cameras* & microphones) so that it will be theoretically possible to "instrument" virtually the entire population of the U.S. in one form or another, and to use this synoptic instrumentation to swiftly detect and respond to CBRN events."

"Mobile apps can combine sensor feeds from many handsets to create vast "synthetic apertures" to detect earthquakes (from accelerometer data), explosions (from microphones) and even gamma radiation (from activation of cell *cameras*)."

*DHS Homeland S Security Science and Technology Advisory Committee (HSSTAC): Quadrennial Home l Homeland Security Subcommittee Chemical, Biological, Radiological, and Nuclear Detection White Paper.* https://www.dhs.gov/sites/default/files/ publications/CBRN%20White%20 Paper%202017_508%20FINAL_1.pdf

*Figure 1* "Rhevision" Camera CBR Sensor(s) for the Smartphone

27

| | **Camera CBR Sensor(s) for Smartphone** |
|---|---|
|  | Camera Sensor for Radiological Detection: How can a cell phone detect radioactivity? Cell phones have cameras and camera sensors react to radioactivity. High energy particles strike a sensor array and register as small bright pinpoints or thin streaks of light. An app . . . works well enough to alert users to dangerous levels of radiation. |
|  | Camera Sensor for Biological Detection: "In the diagnostic test, a patient sample is mixed with CRISPR Cas13 proteins (purple) and molecular probes (green) which fluoresce, or light up, when cut. Coronavirus RNA present, CRISPR proteins snip the |

28

| | molecular probes, whole sample to emit light. Fluorescence detected with a cell phone camera." (Image: Science at Cal). |
| --- | --- |
|  | Camera Sensor for Chemical Detection: The sensor **Rhevision** and UC San Diego responds to different chemicals by changing color; a single chip with many tiny pores, each respond to a different chemical; a standard cell-phone camera can detect them; the phone's camera watches the chip for color changes. |
| | **Claim 4 of the '189 Patent**: A built-in, embedded multi sensor detection system . . . sensor array or fixed detection device into the product that detects agents . . . |

*Figure 1*

29

*Figure 2* is a chart of the "megapixel" smartphone cameras used for detecting Chem/Bio agents. For each different way used, it qualifies as an alternative to the ATAK.

| *Samsung Galaxy S21: Triple – 12 MP (megapixel), OIS 64 MP (megapixel)* |
|---|
| Camera lens in cell phone with microfluidic lens functions as camera; uses microscope to focus on a chemical sensor. A *megapixel* camera captures the image from the array of nanopores uses fluid rather than bulky moving parts. The sensors contained in one array is determined by the *pixel* resolution phone camera. *Megapixel* resolution in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time.* Source: https:// www.understanding nano.com/ cell-phone-sensors-toxins.html |

*Figure 2*

30

*Figure 3* describes how at least nine (9) standard sensors for the Samsung smartphones can be used as "biosensors". For each different way used, it qualifies as an alternative to ATAK.



**Figure 3**

The Smartphones Biosensors:

1. Ambient light sensor: Cancer biomarkers; Toxic metals; Pathogens

2. Capillary inlet: (Air analysis). Airborne Pathogens; Aerosols

3. Capillary inlet: (Fluid analysis). Blood analysis; Biomarkers

4. Microfluidic cassette: Interchangeable cassettes with varying assays

5. VIS-NIR spectrometer: Food freshness; Melanoma

31

6.  NNAP Electrodes: Toxic metals and Organic pollutants in water

7.  Optical Waveguide: Pathogens in water and food

8.  ***Back and front camera:*** Colorimetric analysis; Image analysis

9.  Microphone: Voice recording stress levels

***Figure 4*** is a visual display of the smartphone camera used for detecting Chem/Bio agents. This process qualifies as an alternative to the ATAK.



***Figure 4***

Hyperspectral imaging scans for light frequencies that humans can't see to identify the unique chemical signatures of different substances. Their device is

32

compatible with all standard smartphone cameras. *These New Smartphone Cameras Could Tell You What an Object Is Made of* https://www.sciencealert.com/new-smartphone-cameras-could-tell-you-what-an-object-is-made-of.

**IV. JUDGEMENT BY DEFAULT IS APPROPRIATE BECAUSE THE RESPONDENT *NEVER* DENIED OR DEFENDED, AND THE DISTRICT AND APPELLATE COURT *NEVER* RULED ON OR ADJUDICATED PETITIONER'S CLAIM OF DIRECT INFRINGEMENT UNDER THE "DOCTRINE OF EQUIVALENTS" FOR THE RESPONDENT MAKING, USING, OFFERING FOR SELL, AND SELLING THE SMARTPHONE CENTRAL PROCESSING UNIT (CPU) THAT IS PETITIONER'S PATENTED INVENTION**

The smartphone central processing unit (CPU) processes instructions in order to carry out certain functions that make the device operate properly. The CPUs are often described as the brain of computers, smartphones and tablets because of the central role they play in the functioning of the devices. All of the different components that make up a computer's processor have to be condensed to fit in the smartphone, where they exist as a mobile application processor, or a System-on-a-Chip (SoC). Mobile application processors are found in many different mobile devices, such as the Samsung Galaxy S21 5G smartphones.

The CPU octa-core processor is a type of processor that includes eight (8) cores. This type of CPU processor is found in the Samsung Galaxy S21 5G smartphone device. Each core is made up of two processing units. This means that an octa-core CPU processor has sixteen (16) processing units. This type of CPU processor is faster than a quad-core CPU processor and can handle more tasks at once. This is why the CPU octa core processors are found in the Samsung Galaxy S21 5G smartphones that need high levels of processing power.

The Samsung Exynos 2100 5G is a high end SoC with a CPU of 8 [Octa] cores in three clusters (1x2.84 GHz Cortex-X1 & 3x2.42 GHz Cortex-A78 & 4x1.80 GHz Cortex-A55), for the Samsung Galaxy S21 5G.

In Petitioner's U.S. Patent No. 10,984,619 (the '619 patent), Petitioner has two independent patent claims (claims 1, & 11 of the '619 patent), and eighteen dependent patent claims (claims 2-10, & 12-20 of the '619 patent); whereby, Petitioner owns the patent rights for first central processing unit (CPU) designed for Petitioner's new, improved upon, and useful cell phone – smartphone.

Petitioner's '619 patent priority date is 04/05/2006 for first application filing and 11/26/2004 for disclosure document filing at the United States Patent and Trademark Office (USPTO). The preamble and conclusion for Petitioner's '619 patent claims 1, & 11 are:

1.  A communication device that is at least a personal computer (PC), a cellphone, a

smartphone, a laptop, or a handheld scanner, comprising at least a central processing unit (CPU), capable of: . . . processing instructions . . . whereupon, the communication device is capable of processing instructions for operational and functional execution, and is capable of providing feedback of the execution, and storing the feedback into memory.

11. A central processing unit (CPU) of at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, capable of: . . . processing instructions . . . whereupon, the central processing unit (CPU) of the communication device is capable of processing instructions for operational and functional execution, and is capable of providing feedback of the execution, and storing the feedback into memory.

Petitioner also alleged that certain of Samsung's products infringes at least independent claims 4, 5, and 6 of Petitioner's U.S. Patent No. 10,163,287 (the '287 patent) for Petitioner's patented communicating, monitoring, detecting, and controlling (CMDC) device, central processing unit.

"On information and belief, Samsung is *jointly*, directly, indirectly and/or under the 'doctrine of equivalents', infringing at least independent claims 4, 5, and 6 of the '287 patent. The alleged infringing products are: Samsung Galaxy S8, S8+, Note 8, S7, S7 Edge, S22, S22+, S22 Ultra, Note 20, S20, S20+, S20 Ultra, and Galaxy S21 5G, and S21+ 5G."

35

The CPU, or Central Processing Unit, is the main computing component of the Samsung Galaxy S21 5G smartphone. It is a powerful processor that acts as the "brain" of the device, responsible for running the *operating system* [Samsung's customized android open-source operating system] and *various applications* such as the DoD DTRA Android Tactical Assault Kit (ATAK) software. It is the most important hardware/software component of the Samsung Galaxy S21 5G smartphone as it is responsible for interpreting and executing instructions, managing memory, and managing data and resource allocation. The CPU, or Central Processing Unit, is the heart of any computer system, and this is especially true for smartphones.

This powerful processor is responsible for running the *operating system* [Samsung's customized android open-source operating system] and all of the *applications*, such as the DoD DTRA Android Tactical Assault Kit (ATAK) software, installed on the device. It acts as the brain of the phone, controlling the flow of data and instructions between the various components of the phone.

The CPU is responsible for performing all of the calculations and operations that are necessary for the phone to function properly. This includes tasks such as running the operating system [Samsung's customized android open-source operating system], executing applications, such as the DoD DTRA Android Tactical Assault Kit (ATAK) software, processing user input, and communicating with other devices. In addition, the

36

CPU also performs essential functions such as memory management and power management.

Samsung smartphones are equipped with powerful multi-core processors, such as quad-core or octa-core chips, which provide improved performance and battery life compared to older single-core processors. The CPU is an essential component of any smartphone and is responsible for the phone's performance. The preamble and conclusion for Petitioner's '287 patent claims 4, 5, & 6 are:

4. A communication device comprising: . . . at least one central processing unit (CPU); . . . at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or send signals to detect at least one of a chemical biological, radiological, or explosive agent such that the communication device is capable of communicating, monitoring, detecting, and controlling.

5. A monitoring device comprising: . . . at least one central processing unit (CPU); . . . at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to

37

control components of a building, or send sig-
nals to detect at least one of a chemical biolog-
ical, radiological, or explosive agent such that
the communication device is capable of com-
municating, monitoring, detecting, and con-
trolling.

6.   A monitoring equipment comprising: . . .
at least one central processing unit (CPU); . . .
at least one of a transmitter or a transceiver
in communication with the at least one CPU
configured to send signals to monitor at least
one of a door, a vehicle, or a building, send sig-
nals to lock or unlock doors, send signals to
control components of a vehicle, send signals
to control components of a building, or send
signals to detect at least one of a chemical bi-
ological, radiological, or explosive agent such
that the communication device is capable of
communicating, monitoring, detecting, and
controlling.

If a jury finds that Samsung's alleged infringing
devices, methods or products does not literally meet
one (or more) limitation of the patent's claims, the jury
then inquires whether Samsung's alleged infringing
devices, methods or products incorporates an equiva-
lent of the missing limitation, *Warner-Jenkinson Co. v.
Hilton Davis Chem. Co.*, 520 U.S. 17, 38, 41 USPQ2d
1865, ___ (1997) ("The Federal Circuit held that it was
for the jury to decide whether the accused process was
equivalent to the claimed process . . . ")

Equivalency is established using a "three-way
test" which sets out three questions of fact to be

38

decided by a jury. In the case of Samsung's Chipset/SoC/CPU, the jury must determine whether Samsung's Chipset/SoC/CPU, infringes under the doctrine of equivalents, Petitioner's patented central processing unit (CPU) for smartphones: The jury must decide if Samsung's Chipset/SoC/CPU:

1)   performs substantially the same function as the claimed element;

2)   in substantially the same way; and,

3)   to give substantially the same result, *Machine Co. v. Murphy*, 97 U.S. 120, 125, 24 L. Ed. 935 (1878) ("if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape").

Petitioner was deprived his Seventh Amendment right to a trial by jury, and his procedural due process rights under the rule of law.

The District Court Judge erred for not entering a judgement by default against Samsung. Judgement by default, also known as default judgment, is a judgment entered upon the failure of Samsung to appear before a court or answer Petitioner's claim that Samsung's Chipset/SoC/CPU allegedly infringes Petitioner's patent claims for central processing unit (CPU).

Default judgement against Samsung is for failure to perform a duty in legal proceedings. The default judgment is binding, and the defaulting defendant Samsung may not litigate its case or present any

39

evidence. A civil action default judgment will grant the amount of relief sought in Plaintiff's complaint.

In federal courts, the Federal Rules of Civil Procedure 55 are the basis for default judgment procedures. Entering a default judgment under Rule 55 is based on the assumption that facts in a Golden's well-pleaded complaint are true.

Petitioner raised the issue and provided enough factual allegations of Samsung making, using, offering for sell, and selling, a smartphone central processing unit (CPU) that Petitioner allege infringes his patented claims for a smartphone central processing unit (CPU), but no jury [violation of Petitioner's Seventh Amendment right to a trial by jury] was assigned to hear the allegations; and, the District Court and Federal Circuit *NEVER* adjudicated the allegations.

## V.   THE DISTRICT COURT AND APPELLATE COURTS' NON-INFRINGEMENT THEORY OF "ADD-ONS THAT ARE MODIFIED TO PERFORM" THREATENS THE ENTIRE PATENT GRANT SYSTEM; THUS FAR, THE NON-INFRINGEMENT THEORY HAS ONLY BEEN APPLIED AGAINST THE PETITIONER, A BLACK AND/OR AFRICAN AMERICAN WHO IS SUING A WHITE-OWNED FOREIGN CORPORATION OVER PROPERTY

"Smartphone patents account for just over 16% of all active U.S. patents. One-sixth of all active U.S.

40

patents regulate smartphone development and inno-
vation, using recent estimates from defensive patent
aggregator RPX:

> *Based on our research, we believe there are*
> *more than 250,000 active patents relevant to*
> *today's smartphones. This growth can be at-*
> *tributed to the expanded set of features and*
> *functionality    incorporated    in    today's*
> *smartphones, including touchscreens, internet*
> *access, streaming video, media playback, ap-*
> *plication store readiness and other web-based*
> *services, and WiFi connectivity options.*

If anything illustrates the absurdity of the current
state of affairs in the patent system, it is that the
smartphone handset market – although booming – ac-
counts for less than 1% of the U.S. annual GDP (by U.S.
sales) but encompasses 16% of all active U.S. patents."

> Daniel O'Connor   OCTOBER 17, 2012, *"One*
> *in Six Active U.S. Patents Pertain to the*
> *Smartphone"* https://www.project-disco.org/
> intellectual-property/one-in-six-active-u-s-
> patents-pertain-to-the-smartphone/

Between the years 2007-2018 Samsung is credited
with being the top U.S. patent holder of mobile phone
technology with 4,095 patents, but yet cannot produce
one patent that gives them patent rights to the
smartphone itself. Therefore, the 4,095 patents that
Samsung owns are merely "add-ons that modifies the
patented smartphone of the Petitioner".

41

If Samsung's non-infringement theory of "add-ons that are modified to function" is allowed to stand against the only Black and/or African American inventor who owns the patent rights to the smartphone; under the rule of law Samsung's 4,095 smartphone add-ons patents should be invalidated by this Court. Following is a list of patented smartphone add-ons that are relevant to the functionality of Samsung's smartphones:

*Smartphone Operating System Patent:* Many observers believe the federal grand jury in California verdict could open the door to Apple pursuing litigation against other companies – including Google, maker of the Android operating system used in Samsung phones and tablets.

*Smartphone Door Lock/Unlock Patent:* A smart lock is an electromechanical lock which is designed to perform locking and unlocking operations on a door when it receives instructions from an authorized remote device, such as a smart phone, using a wireless protocol.

*Smartphone Internet of Things Patent:* IoT devices 110 may include a fitness tracker, a smart watch, smart glasses, or another peripheral and/or wearable device that may be used in connection with a user device (e.g., a smart phone). For example, certain types of IoT devices 110, such as smart phones, may include a transceiver . . . In another example, various IoT devices 110 associated with a user, such as wearable devices (e.g., a fitness

tracker, smart glasses, smart watch, head-phones, etc.) and a smartphone, [] at the user's location.

*Smartphone Disabling Lock Mechanism Patent:* It's not like Apple is unaware of the whole texting and driving scenario. In fact, the company is fully aware of all the dangers associated with it as it had previously filed a patent in 2008 that reflected the lock-out mechanism and was published back in 2014.

*Smartphone Fingerprint Identification Patent:* The present invention relates to a contactless fingerprint recognition method using a smartphone and, more particularly, to a contactless fingerprint recognition method using a smartphone . . .

*Smartphone GPS Navigation and Location Patent:* With mobile positioning technologies and the additional capabilities of modern mobile computing devices, the mobile devices are frequently used as mapping and navigational tools. A mobile device such as a smart phone, smart watch, or other wearable computing device may identify its current coordinates using a Global Positioning System (GPS) receiver . . .

*Smartphone Near-Field Communication (NFC) Patent:* The components of mobile device 100 may be a mobile computer-based system, such as, for example, cellular telephone, tablets, hand held computing devices (e.g., smart phones), tablets, laptops, and any other type of mobile computer-based system.

43

*Smartphone Heart-Rate Sensor Patent:*
The International Trade Commission has confirmed its earlier ruling that Apple infringed on AliveCor's heart rate monitoring patents. "Today's ITC ruling is a win for innovation and consumer choice," said Priya Abani, CEO of AliveCor."

*Smartphone Control of Vehicle Patent:*
Smartphone-Based Vehicle Control Methods. This present invention relates to the field of smartphones interfacing and communicating with a desired vehicle, more specifically this invention relates a smartphone storing specific user settings, communicating that to a vehicle and providing an interface to control the vehicle using the smartphone.

*Smartphone Bluetooth Patent:* The data source device 20 may be a suitable electronic device that supports A2DP and provides one or a plurality of audio contents, for example, a smart phone, a tablet computer, an MP3 player, a personal computer, a laptop computer, a personal audio device, a CD player, or any other smart/non-smart terminal device.

*Smartphone-Based Biosensor Patent:* Numerous smartphone-based biosensor developments were published in recent years, some highly effective and sensitive. The ubiquity of smartphones throughout the world has brought about new opportunities to bring point-of-contact (POC) devices near the patients for portable healthcare monitoring, taking advantage of the characteristics of

44

computing power, network connectivity, battery, and cameras of these devices. Current wireless telecommunication infrastructure makes the smartphone a ubiquitous platform worthy of using in order to develop biosensing and diagnostics platforms, especially for point-of-care and telemedicine applications.

*Smartphone Camera Patent:* Canon has submitted a patent application for a smartphone camera system that will enable users to use multiple smartphone camera lenses at once. The main focus of the submitted patent is to make use of the smartphone's many lenses. Most modern phones have several different camera lenses, often of varying focal lengths, but as a rule only one is used at a time.

The Respondents non-infringement theory is hypocritical and two-faced to say the least. Samsung obtains licenses from other patent owners when they realize the "add-ons" to the smartphones as a whole, are the patented inventions of the patent holders.

The only reason Samsung is standing on such an insufficient and inadequate non-infringement theory is because they realize the Patent Owner is a Black and/or African American inventor and the Courts have a long history of systemic and structural racism.

————◆————

45

## CONCLUSION

The Supreme Court must deliver justice in this case, in a manner that inspires public trust and confidence. The Supreme Court must inform the District Court and the Appellate Court that all individuals must be treated fairly and impartially in every interaction with the court system. To achieve public trust and confidence, the existence of systemic racism in Petitioner's case against Samsung must be acknowledged.

Specifically, the Supreme Court must recognize that the Petitioner, a Black and/or African American, who have contact with the legal system through the varies Courts, have often not been treated equitably or with the same dignity and respect as Petitioner's white counterparts.

Systemic and structural racism are forms of racism that are pervasively and deeply embedded in systems, laws, and entrenched practices and beliefs that produce, condone, and perpetuate widespread unfair treatment and oppression of Blacks and/or African Americans. They reflect both ongoing and historical injustices.

For the foregoing reasons, the Court should grant Petitioner's Petition for Writ of Certiorari.

Sincerely,

LARRY GOLDEN, *Petitioner*, *Pro Se*
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
(864) 288-5605
atpg-tech@charter.net

i

## APPENDIX TABLE OF CONTENTS

Page

### INDEX OF APPENDICES

APPENDIX 1 – Decision: United States Court
of Appeals for the Federal Circuit (CAFC)
(02/12/2024) ....................................................... App. 1

APPENDIX 2 – Order on Reconsideration:
United States District Court for the Northern
District of California (NDC) (06/15/2023) ..... App. 11

APPENDIX 3 – Decision: United States District
Court for the Northern District of California
(NDC) (06/08/2023) ......................................... App. 13

App. 1

NOTE: This disposition is nonprecedential.

**United States Court of Appeals
for the Federal Circuit**

_____

**LARRY GOLDEN,**
*Plaintiff-Appellant*

**v.**

**SAMSUNG ELECTRONICS AMERICA, INC.,**
*Defendant-Appellee*

_____

2023-2120

_____

Appeal from the United States District Court for the Northern District of California in No. 3:23-cv-00048-WHO, Judge William H. Orrick, III.

_____

Decided: February 12, 2024

_____

LARRY GOLDEN, Greenville, SC, pro se.

RICHARD L. RAINEY, Covington & Burling LLP, Washington, DC, for defendant-appellee. Also represented by JAY I. ALEXANDER, BRIAN GERARD BIELUCH; HYUN SIK BYUN, Redwood Shores, CA; ROBERT HASLAM, MICHAEL MOREY, Palo Alto, CA.

_____

Before PROST, TARANTO, and CHEN, *Circuit Judges*.

App. 2

PER CURIAM.

Larry Golden filed a complaint against Samsung Electronics America, Inc. in the U.S. District Court for the Northern District of California alleging infringement by Samsung of U.S. Patent Nos. 10,163,287, 9,589,439, and 9,096,189. Samsung moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); Mr. Golden opposed Samsung's motion and cross-moved for summary judgment of infringement. The district court granted Samsung's motion, dismissed the complaint with prejudice, and denied Mr. Golden's motion for summary judgment. *Golden v. Samsung Electronics America, Inc.*, No. 23-cv-00048, 2023 WL 3919466 (N.D. Cal. June 8, 2023). Mr. Golden filed a timely appeal, which we have jurisdiction to decide under 28 U.S.C. § 1295(a)(1). We affirm.

I

Mr. Golden owns a family of patents that describe and claim systems for locking, unlocking, or disabling a lock when a detector or sensor in the system detects a chemical, biological, radiological, or explosive agent. *See generally, e.g.*, Appx13-96.[1] Mr. Golden has previously asserted his patents in a variety of suits and venues against other defendants. *See Golden v. Apple Inc.*, No. 2023-1161, 2023 WL 3400595, at *1 (Fed. Cir. May 12, 2023) (detailing the history of Mr. Golden's

---

[1] "Appx" refers to the appendix that Samsung filed in this court with its brief as appellee.

App. 3

patent-infringement filings); *Golden v. United States*, 955 F.3d 981, 983-86 (Fed. Cir. 2020) (same).

Mr. Golden filed the present action in January 2023, alleging infringement of the '287, '439, and '189 patents based on several of Samsung's smartphone products. Appx97-129. Those patents have materially identical specifications and describe "a chemical/biological/radiological detector unit with a disabling locking system for protecting products . . . and also for preventing unauthorized access to and tampering with the storage and transport of ordnance and weapons." *See, e.g.*, '287 patent, col. 3, lines 36-41. The patents explain that the claimed "multi sensor and lock disabling system" may "include" a plurality of detectors" where each detector may be "adapted for and set up to sample for a specific agent or compound (biological, chemical, or radiological)." *Id.*, col. 8, lines 31-35; *see also, e.g., id.*, col. 18, lines 56-58 (claim 5 reciting the limitation "one or more detectors . . . for detecting at least one of chemical, biological, radiological, or explosive agents").

Mr. Golden's complaint alleged, in part, that Samsung's smartphones possess that claimed detector/sensor functionality on three alternative bases: (1) through the *"Android Team Awareness Kit, ATAK,"* which is "[b]uilt on the Android operating system," involves "plug-ins" and "app specific software," was "[i]nitially created" by the "Air Force Research Laboratory" together with the "Defense Threat Reduction Agency," and is "available to warfighters throughout the DoD," Appx112 ¶ 55; Appx119, 127; (2) through add-on devices or modifications that utilize the smartphone's

App. 4

built-in camera, Appx111 ¶ 54, Appx124-25; and (3) through nine "standard sensors" which "can be used as 'biosensors,'" Appx126.

Samsung moved to dismiss Mr. Golden's complaint, arguing that, among other things, Mr. Golden's complaint failed to plausibly state a patent-infringement claim. Appx146-48. More specifically, Samsung argued that Mr. Golden's complaint stated no alleged facts that went beyond allegations that Samsung was making and selling smartphones that could be modified post-sale by others to perform the accused detector/sensor functionality. On that basis, Samsung said, there are no plausible allegations Samsung was engaged in directly infringing activities. Appx146-47. Nor, said Samsung, did Mr. Golden plausibly allege that Samsung committed inducement or contributory infringement, even if its smartphones were in fact modified by others post-sale to have the accused functionality. Appx147-48.

The district court agreed and dismissed Mr. Golden's complaint with prejudice, concluding, in part, that "[t]he allegations that his patents cover the identified functionalities included in Samsung's products are wholly unsupported and implausible on their face." *Golden*, 2023 WL 3919466, at *2. Mr. Golden filed a motion for reconsideration, which was denied. Appx10. Mr. Golden then timely appealed. Appx10.

App. 5

## II

We apply regional circuit law on the standard for review of a Rule 12(b)(6) dismissal, *In re Bill of Lading Transmission & Processing System Patent Litigation*, 681 F.3d 1323, 1331 (Fed. Cir. 2012), and that standard is review without deference under Ninth Circuit law, *Decker v. Advantage Fund Ltd.*, 362 F.3d 593, 595-96 (9th Cir. 2004). To survive a motion to dismiss under Rule 12(b)(6), a complaint must state "well-pleaded facts, not legal conclusions, that 'plausibly give rise to an entitlement to relief.'" *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (citations omitted) (first citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "[A] pro se complaint . . . must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "However, a *pro se* plaintiff must still meet minimal standards to avoid dismissal under Rule 12(b)(6)." *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141 (Fed. Cir. 2018). We reject Mr. Golden's appeal arguments and therefore affirm the district court's dismissal of his complaint.

Mr. Golden argues that this court's prior holding that a different complaint of his—filed in a separate proceeding against Google in the District of South Carolina but alleging infringement of the same patents—was "not facially frivolous," *Golden v. Apple Inc.*, No. 2022-1229, 2022 WL 4103285, at *2 (Fed. Cir. Sept. 8, 2022), precluded the district court's dismissal of his

App. 6

complaint for failure to state a claim in this proceeding, Golden Informal Opening Br. at 14-22. We disagree.

Although we previously held that Mr. Golden's complaint against Google in a separate proceeding was "not facially frivolous," *Golden*, 2022 WL 4103285, at *2, we also stated that "[o]ur decision does not preclude subsequent motions to dismiss by the defendant for failure to state a claim," and we "express[ed] no opinion as to the adequacy of the complaint." *Id.* Our prior holding that Mr. Golden's complaint—alleging patent-infringement claims against Google, not Samsung, based on Google's products, not Samsung's—was not facially frivolous does not answer the question of the sufficiency of Mr. Golden's complaint against Samsung in this proceeding. The district court did not err by so determining. *Golden*, 2023 WL 3919466, at *2 n.6. *See also Golden v. Qualcomm Inc.*, No. 2023-1818, 2023 WL 6561044, at *2 (Fed. Cir. Oct. 10, 2023) (rejecting a similar contention by Mr. Golden).

On the merits of the district court's infringement-allegation analysis, also challenged by Mr. Golden, *see* Golden Informal Opening Br. at 27; Golden Informal Reply Br. at 9, we also see no reversible error. Mr. Golden's complaint does not plausibly allege that Samsung itself has committed any of the acts specified in 35 U.S.C. § 271(a), as the factual allegations plausibly show, at the most, only that Samsung-made-and-sold smartphones could be modified post-sale by others. There is no plausible allegation that Samsung itself is making, selling (or offering to sell), using, or importing

App. 7

smartphones that have the claimed detector/sensor functionality, either literally or by equivalents. And without such a plausible allegation, Mr. Golden has presented no basis for survival of the complaint.

Mr. Golden's complaint may be understood to allege three ways the accused products practice the detector/sensor functionality, but each is deficient for infringement even at the pleading stage. Regarding ATAK, the complaint itself indicates that plugins and app-specific software, not developed by Samsung and only available "throughout the DoD," are required for the accused detector/sensor functionality. Appx112 ¶ 55; Appx119, 127. Regarding Samsung's built-in cameras, the complaint relies on proof-of-concept articles that support nothing more than that, through post-sale add-on devices or modifications, commercially available smartphones could one day conceivably perform the accused detector/sensor functionality. Appx124-25, 1716-21.

Finally, regarding the complaint's statement, without elaboration, that "standard sensors" "*can be* used as 'biosensors'": That statement on its face does not assert that "standard sensors" can be so used without add-ons; it is not included in Mr. Golden's claim charts; and in any event it is wholly conclusory. Appx126 (emphasis added); *see* Appx119, 124. This lone statement, lacking any concrete specifics, fails to satisfy basic pleading standards for, as relevant here, plausibly alleging that any of Samsung's smartphones, as made and sold by Samsung, *i.e.*, without any addition of hardware or software, contain "biosensors" that

App. 8

perform the claimed sensing/detecting of hazardous agents. *See Bot M8 LLC v. Sony Corp. of America*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) ("[A] plaintiff cannot assert a plausible claim for infringement . . . by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."). The failure is particularly apparent in light of the articles that Mr. Golden's complaint cites for the proposition that cell phone cameras might, one day, be modified to perform the accused detector/sensor functionality, Appx1716-21. *Cf. Bot M8*, 4 F.4th at 1354 ("Where, as here, the factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim.").

In short, Mr. Golden's allegations, even if true, at best establish that Samsung's smartphones might be modified post-sale to perform the accused detector/sensor functionality, which is not enough for direct infringement on the claims here. *See High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995) ("[A] device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim."). And Mr. Golden's complaint does not allege facts plausibly showing that Samsung had the knowledge and intent regarding its customers' activities for Samsung to be liable for inducement under 35 U.S.C. § 271(b). *See Bill of Lading*, 681 F.3d at 1339;

App. 9

Appx108-129. Likewise missing are allegations of facts plausibly showing (contrary to the complaint's own allegations) that Samsung's smartphones have "no substantial noninfringing uses," as required to establish contributory infringement under 35 U.S.C. § 271(c). *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Mr. Golden argues, in his reply brief, that the district court, in conducting its analysis of the complaint, improperly reduced the scope of his inventions to a single, generalized claim limitation. Golden Informal Reply Br. at 13. But this allegation about the district court's analysis is no substitute for Mr. Golden's task on appeal—to focus directly on the complaint and demonstrate its sufficiency, a matter we decide de novo on appeal. In any event, we disagree with Mr. Golden's allegation about what the district court did.

In the district court's statement that Mr. Golden appears to challenge, the court merely summarized, at a high level, the subject matter of Mr. Golden's patents. *Golden*, 2023 WL 3919466, at *1 & n.2. The court then went on to analyze the legal sufficiency of Mr. Golden's specific infringement allegations as stated in his complaint. It was on that basis that the court concluded that "[t]he allegations that his patents cover the identified functionalities included in Samsung's products are wholly unsupported and implausible on their face." *Id.* at *2. There was no improper narrowing.

For the foregoing reasons, we conclude that Mr. Golden has shown no error in the district court's

## App. 10

determination that his complaint insufficiently alleged infringement. That conclusion suffices to affirm the dismissal of the complaint. We need not address the district court's alternative ground for dismissal—that Mr. Golden's suit against Samsung was precluded because Mr. Golden had already unsuccessfully asserted the same patent-infringement claims against the United States based on materially the same Samsung products. *See Golden*, 2023 WL 3919466, at *2 & n.7 (discussing *Golden v. United States*, 156 Fed. Cl. 623 (2021), *aff'd*, No. 2022-1196, 2022 WL 4103287 (Fed. Cir. Sept. 8, 2022)).

## III

The dismissal of Mr. Golden's complaint is affirmed.

The parties shall bear their own costs.

### **AFFIRMED**

_____

App. 11

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

LARRY GOLDEN,

　　　　Plaintiff,

v.

SAMSUNG
ELECTRONICS
AMERICA, INC.,

　　　　Defendant.

Case No.
23-cv-00048-WHO

**ORDER DENYING
MOTION FOR
RECONSIDERATION**

Re: Dkt. No. 38

(Filed Jun. 15, 2023)

　　Plaintiff Larry Golden's motion for reconsideration of my order dismissing this case with prejudice is DENIED. As judgment was entered in this case within the last 28 days, Golden's motion is construed as a motion to amend or alter the judgment under Federal Rule of Civil Procedure 59(e).[1] Golden does not offer any evidence, legal authority, or arguments that were not raised at the motion to dismiss stage. Instead, he argues that I got it wrong when I dismissed this case based on preclusion and because he was unable to plausibly allege his patent infringement claims. Seeing

---

[1] "There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is 'necessary to correct manifest errors of law or fact upon which the judgment is based;' 2) the moving party presents 'newly discovered or previously unavailable evidence;' 3) the motion is necessary to 'prevent manifest injustice;' or 4) there is an 'intervening change in controlling law.'" *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1254 n. 1 (9th Cir.1999)).

App. 12

no manifest error or manifest injustice to Golden, his motion is denied and he may raise his complaints regarding my ruling to the Federal Circuit on appeal.

**IT IS SO ORDERED.**

Dated: June 15, 2023

/s/ <u>William H. Orrick</u>
William H. Orrick
United States District Judge

App. 13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY GOLDEN,<br><br>     Plaintiff,<br><br>v.<br><br>SAMSUNG<br>ELECTRONICS<br>AMERICA, INC.,<br><br>     Defendant. | Case No.<br>23-cv-00048-WHO<br><br>**ORDER GRANTING<br>DEFENDANT'S MO-<br>TION TO DISMISS<br>AND DENYING<br>PLAINTIFF'S CROSS-<br>MOTION TO DIS-<br>MISS AND FOR SUM-<br>MARY JUDGMENT**<br><br>Re: Dkt. Nos. 7, 20<br><br>(Filed Jun. 8, 2023) |

Defendant's Samsung Electronics America, Inc.'s (Samsung) motion to dismiss with prejudice (Dkt. No. 7) is GRANTED. Plaintiffs cross-motion for summary judgment (Dkt. No. 20) is DENIED.[1]

Plaintiff Larry Golden has been pursuing patent infringement claims asserting his "family of patents" for over ten years in multiple jurisdictions. The patents at issue here and in each of these other cases concern "systems for locking, unlocking, or disabling a lock upon the detection of chemical, radiological, or biological hazards." *See, e.g., Golden v. Apple Inc.*, No. 2023-1161, 2023 WL 3400595, at *1 (identifying

---

[1] I find these mattes suitable for determination on the papers and the June 14, 2023 hearing and Case Management Conference are VACATED. Civ. L.R. 7-1(b).

multiple actions dismissed with prejudice concerning the same patent families filed in the District of South Carolina and Northern District of California); *see also Golden v. United States*, 156 Fed. Cl. 623, 625 (2021), *aff'd*, No. 2022-1196, 2022 WL 4103287 (Fed. Cir. Sept. 8, 2022) (Federal Court of Claims dismissing Golden's patent infringement claims that assert his "family of patents concerning a device for detecting chemical, radiological, and biological hazards" brought against the United States, through the Department of Homeland Security, alleging that the government "caused cell phone manufacturers" including Samsung "to produce devices that infringe on one or more of his patents.").[2]

The patent claims in each of his cases, with one exception, have been dismissed with prejudice for failure to state a claim. *See, e.g.*, *Golden v. Apple Inc.*, No. 2023-1161, 2023 WL 3400595 (Fed. Cir. May 12, 2023) (affirming Hon. Vince Chhabria's dismissal with prejudice of Golden's patent infringement claims as frivolous and barred by issue preclusion because "they have been fully litigated and decided"); *Golden v. Intel Corp.*, No. 2023-1257, 2023 WL 3262948 (Fed. Cir. May 5,

---

[2] The patents at issue here are United States Patent Nos. 9,096,189 (the '189 patent"), 9,589,439 (the '439 patent"), and 10,163,287 (the '287 patent"). The patents have the same specification, are each titled "Multi Sensor Detection, Stall to Stop and Lock Disabling System," and address "anti-terrorist detection and prevention systems," specifically, "a chemical/biological/radiological detector unit with a disabling locking system for protecting products that can be grouped into several product groupings, from terrorist activity, and also for preventing unauthorized access to and tampering with the storage and transport of ordnance and weapons." *See, e.g.*, *'189* patent at 1:40-45, 3:16-22.

App. 15

2023) (affirming Hon. Nathanial Cousins' dismissal with prejudice of Golden's patent infringement claims for failure to state a claim); *see also Golden v. Qualcomm, Inc.*, No. 22-CV-03283-HSG, 2023 WL 2530857, at *3 (N.D. Cal. Mar. 15, 2023) (same).

In the most recent decision from this District, in a case Golden himself admits is related to this one,[3] the Hon. Haywood S. Gilliam reviewed Golden's complaint asserting patent infringement against Qualcomm, Inc. (under the '287, '439 and '189 Patents asserted here) and dismissed the patent infringement claims with prejudice for failure to adequately or plausibly plead patent infringement. *Golden v. Qualcomm, Inc.*, No. 22-CV-03283-HSG, 2023 WL 2530857 (N.D. Cal. Mar. 15, 2023). Similarly, Judge Chhabria dismissed Golden's claims of willful patent infringement against Apple, Inc. that attempted to broadly claim that his patents (including the patents asserted here) covered a range of technologies in smartphones including: CPUs, temperature sensors; cameras; connectivity protocols; biometric authentications; and remote access. *See* Dkt. No. 29 in Case No. 22-cv-04152-VC ("The motion to dismiss is granted. The claims asserted in the complaint are frivolous. Even if they were not frivolous, Golden's patent infringement claims against Apple are barred by issue preclusion because they have been fully litigated and decided. *See Golden v. United States*, 156 Fed. Cl. 623 (Fed. Cl. 2021), *aff'd, Golden v. United States*, No. 13-cv-00307, 2022 WL 4103287 (Fed. Cir. Sept. 8, 2022).")." That dismissal was recently affirmed

---

[3] *See* Civil Cover Sheet, Dkt. 1-1, identifying Case No. 22-cv-03283-HSG.

page

App. 16

by the Federal Circuit. Golden v. Apple Inc., No. 2023-1161, 2023 WL 3400595 (Fed. Cir. May 12, 2023). The patent infringement assertions in the Apple case—broad and unspecific claims that Apple's smartphones infringed his patents—are materially similar to the allegations Golden makes against Samsung here. *Compare* Complaint in 22-cv-04152-VC ¶ 85 *with* Complaint in 23-cv-00048-WHO ¶¶ 61-63.[4]

Samsung moves to dismiss this case, arguing that the patent infringement claims asserted against it are barred by issue preclusion and the *Kessler* doctrine[5] because Golden asserted the exact same patent infringement claims against Samsung's customer (the United States) over Samsung's products and lost. *See Golden v. United States*, No. 2022-1196, 2022 WL 4103287, at *2 (Fed. Cir. Sept. 8, 2022) (affirming Court of Claims dismissal of suit against the United States based on

---

[4] Golden objects Samsung's filing of Statements of Recent Decisions, pointing to the Federal Circuit affirmance of Judges Cousins' and Chhabria's dismissals, and the recent opinion of Judge Gilliam in Case No. 22-cv-03283. *See* Dkt. Nos. 30, 32 (arguing noticing the recent decisions is unduly prejudicial to Golden under Federal Rule of Evidence 403). The objections are overruled.

[5] The *Kessler* doctrine is "separate and distinct" from claim or issue preclusion, and "fills the gap" left by those doctrines "allowing an adjudged non-infringer to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action" by providing protection from suits where the challenged devices "in the first and second suits are 'essentially the same,' the 'new' product(s) also acquires the status of a noninfringing device vis-à-vis the same accusing party or its privies." *See Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014).

App. 17

Samsung and other cellphone manufacturers' infringement of Golden's patents). Samsung also argues that the complaint should be dismissed as frivolous, given the failure to allege how Samsung's products satisfy identified, key limitations in the asserted patents for direct infringement and the failure to allege facts regarding induced or contributory infringement. *See generally* Motion to Dismiss, Dkt. No. 7.

Golden opposes dismissal and cross-moves for summary judgment, arguing that because he never got to litigate the infringement claims against Samsung on the merits in his Federal Court of Claims case against the federal government (as the Federal Court of Claims dismissed for failure to plausibly allege infringement), he should be allowed to litigate his claims here. He also argues that the allegations his Complaint here mirror those made against Google in a case where the Federal Circuit reversed the District Court of South Carolina's summary dismissal for failure to adequately plead infringement. *See* Opposition, Dkt. No. 20, at 5-19 (relying on *Golden v. Apple Inc.*, No. 2022-1229, 2022 WL 4103285, at \*2 (Fed. Cir. Sept. 8, 2022).

Golden was given a full opportunity to litigate his claims *regarding Samsung's products* in his Federal Court of Claims case. His complaint was dismissed with prejudice, and that dismissal was affirmed by the Federal Circuit. *See generally Golden v. United States*, 2022 WL 4103287.[6] Traditional principles of preclusion

---

[6] That the Federal Circuit reversed dismissal of another case where Samsung's patents were not at issue, and sent it back to

App. 18

apply to that decision and the *Kessler* doctrine bars Golden's attempt to sweep in newer Samsung products under the identical theories of infringement rejected by the Federal Court of Claims and affirmed by the Federal Circuit.[7] This case is barred by issue preclusion.

Even if preclusion did not apply—and it does—this case must be dismissed for failure to plausibly allege infringement. Golden asserts that his "Multi Sensor Detection, Stall to Stop and Lock Disabling System" patents were infringed by: (i) "CPU's Samsung uses with its Smartphones"; (ii) Samsung's use of Global Position System (GPS) and web browsers; (iii) Samsung's use of camera lenses; (iv) Samsung's use of biometric data to unlock phones; and (v) Samsung's use of remote unlocking technology. *See generally* Complaint ¶ 61 & pgs. 19-26; *see also id.* pgs. 27-31. The allegations that his patents cover the identified functionalities included in Samsung's products are wholly unsupported and implausible on their face.

Similarly broad and unspecific assertions of infringement against Apple, Intel, and Qualcomm have been dismissed without leave to amend by judges in

---

the trial court to allow Golden another opportunity to plead his claims, is not relevant to preclusion under traditional principles or under the *Kessler* doctrine in this case.

[7] Golden did not address the *Kessler* doctrine in his opposition and did not attempt to distinguish the infringing functionalities of the newer Samsung products from those at issue in the case dismissed by the Federal Court of Claims and affirmed by the Federal Circuit.

App. 19

this District. *See, e.g.*, *Golden v. Intel Corp.*, No. 22-CV-03828-NC, 2022 WL 17735388, at *2 (N.D. Cal. Nov. 22, 2022), *aff'd*, No. 2023-1257, 2023 WL 3262948 (Fed. Cir. May 5, 2023) (dismissing with prejudice because "allegations against Intel are conclusory and contain formulaic recitations of the elements of asserted claims. It is nearly impossible to tell which patents he alleges are being infringed and how. As has been the case in past litigation, Golden has 'failed to include factual allegations beyond the identities of the defendants, reference to the alleged infringing devices, and the alleged infringed-upon patents.' (quoting *Golden v. Intel Corp.*, No. 22-CV-03828-NC, 2022 WL 17735388, at *2 (N.D. Cal. Nov. 22, 2022), *aff'd*, No. 2023-1257, 2023 WL 3262948 (Fed. Cir. May 5, 2023)). The same result is appropriate here.

Plaintiff's cross-motion for summary judgment is DENIED. Samsung's motion to dismiss the complaint without leave to amend is GRANTED. This case is DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: June 8, 2023

/s/ William H. Orrick
William H. Orrick
United States District Judge



2311 Douglas Street
Omaha, Nebraska 68102-1214

1-800-225-6964
(402) 342-2831
Fax: (402) 342-4850

E-Mail Address:
contact@cocklelegalbriefs.com

Web Site
www.cocklelegalbriefs.com

No. _____

LARRY GOLDEN,
Petitioner,
v.
SAMSUNG ELECTRONICS AMERICA, INC.,
Respondent.

**AFFIDAVIT OF SERVICE**

I, Renee Goss, of lawful age, being duly sworn, upon my oath state that I did, on the 8th day of March, 2024, send out from Omaha, NE 1 package(s) containing 3 copies of the PETITION FOR WRIT OF CERTIORARI in the above entitled case. All parties required to be served have been served by Priority Mail.  Packages were plainly addressed to the following:

SEE ATTACHED

**To be filed for:**

LARRY GOLDEN, Petitioner, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
(864) 288-5605
atpg-tech@charter.net

Subscribed and sworn to before me this 8th day of March, 2024.
I am duly authorized under the laws of the State of Nebraska to administer oaths.

State of Nebraska – General Notary
ANDREW COCKLE
My Commission Expires
April 9, 2026

_Andrew H. Cockle_
Notary Public

_Renee J. Goss_
Affiant

44932

**Service List**

**Attorney for Respondent:**

Hyun Sik Byun
COVINGTON & BURLING LLP
3000 El Camino Real, 10th Floor
5 Palo Alto Square
Palo Alto, CA 94306
Phone: (650) 632-4707
Email: hbyun@cov.com
**Party name: Samsung Electronics America, Inc.**